**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SHURE INCORPORATED, <br><br>    Plaintiff and <br>    Counterclaim Defendant, <br><br> v. <br><br> CLEARONE, INC., <br><br>    Defendant and <br>    Counterclaim-Plaintiff. | Case No.17-CV-03078 <br><br> Judge Edmond E. Chang <br><br> Magistrate Judge Maria Valdez |

**PLAINTIFF / COUNTERCLAIM DEFENDANT SHURE INCORPORATED'S
<u>FIRST AMENDED COMPLAINT</u>**

Plaintiff / Counterclaim Defendant, Shure Incorporated ("Shure") files this First Amended Complaint against Defendant / Counterclaim Plaintiff, ClearOne, Inc. ("ClearOne"), and respectfully alleges as follows:

<u>**NATURE OF THIS ACTION**</u>

1.      This is a declaratory judgment action for non-infringement, invalidity, and unenforcability of U.S. Patent No. 9,635,186 and non-infringement of U.S. Patent No. 9,264,553.

<u>**PARTIES**</u>

2.      Plaintiff Shure is a corporation organized under the laws of Illinois with a principal place of business at 5800 W. Touhy Avenue, Niles, Illinois 60714.

3.      Defendant ClearOne is a corporation organized under the laws of Utah with a principal place of business at 5225 Wiley Post Way, Suite 500, Salt Lake City, UT 84116.

## JURISDICTION AND VENUE

4.     This action arises under the Patent Laws of the United States, Title 35, United States Code 35 U.S.C. § 1 et seq., and under Title 28, United States Code, Chapter 151, §§ 2201 and 2202, entitled Declaratory Judgments.

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201 and/or 2202.

6.     This Court has personal jurisdiction over ClearOne in this matter. Among other things, ClearOne regularly and systematically ships and sells its products to customers and through numerous of its dealers and installers located in Illinois and in this District. Moreover, ClearOne sent the communications to Shure giving rise to this matter, as described herein, specifically into Illinois and this District. Based on these and other contacts with Illinois and this District, ClearOne is subject to personal jurisdiction in this District.

7.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c), and/or (d), and/or 1400(b).

## BACKGROUND

8.     On March 10, 2017, ClearOne, through its counsel, sent a letter to Shure addressed to Christine Schyvinck, Shure's President and CEO (the "ClearOne Letter"). A true and accurate copy of the ClearOne Letter is attached hereto as Exhibit A, and is incorporated herein in its entirety by reference.

9.     In the ClearOne Letter, ClearOne asserted that it is the owner and assignee of a certain United States Patent Application No. 15/190,424 ("the '424 Application").

10.    Further, in the ClearOne Letter, ClearOne indicated to Shure that the '424 Application has been examined and is allowed for issuance as a patent. The ClearOne Letter

referenced and attached a copy of the Notice of Allowance in the '424 Application, listing the allowed claims.

11.     On April 25, 2017, U.S. Patent 9,635,186 ("the '186 Patent") entitled "Conferencing Apparatus That Combines a Beamforming Microphone Array with an Acoustic Echo Canceller" was issued by the United States Patent and Trademark Office. The '186 Patent is assigned to and is owned by ClearOne.

12.     The '186 Patent issued and came into full force and effect immediately after 12:00 AM E.D.T. on April 25, 2017.

13.     The '186 Patent issued and resulted from the '424 Application.

14.     The allowed and issued claims of the '186 Patent are identical to the allowed claims in the '424 Application referenced by ClearOne in the ClearOne Letter.

15.     The '186 Patent claims priority to U.S. Patent 9,264,553 ("the '553 Patent") entitled "Methods and Apparatuses for Echo Cancelation with Beamforming Microphone Arrays." The '186 Patent and the '553 Patent are in the same patent family. A true and correct copy of the '553 Patent is attached hereto as Exhibit B.

16.     Both the '186 Patent and the '553 Patent claim priority to the same three U.S. provisional patent applications (numbers 61/495,971, 61/495,968 and 61/495,961), all three of which were filed on June 11, 2011.

17.     The '186 Patent and the '553 Patent are directed to the same subject matter of echo cancellation in beam forming microphone arrays. Furthermore, large portions of specification of the '186 Patent are identical to the specification of the '553 Patent.

18.     The claims of the '553 Patent are directed at the same subject matter as the claims of the '186 Patent. However, the claims of the '553 Patent are broader in scope than the claims of the '186 Patent.

19.     In the ClearOne Letter, ClearOne (i) accuses Shure of infringement of the allowed claims of the '424 Application, which are now issued in the '186 Patent, (ii) identifies specific Shure® products which it alleges are the infringing devices, (iii) outlines specific conduct attributable to Shure which forms the basis of its infringement allegations, (iv) demands that Shure cease and desist from activities which would infringe upon ClearOne's patent rights, and (v) threatens prompt seeking of injunctive and other relief if ClearOne's rights are not respected. The ClearOne Letter further includes "litigation hold" language demanding that Shure preserve material relevant to the allegations contained therein.

20.     In the ClearOne Letter, ClearOne specifically alleges infringement of the allowed claims of ClearOne's '424 Application stating that those claims "cover the Shure/Biamp and Shure/QSC integrated systems" identified elsewhere in the ClearOne Letter.

21.     The ClearOne Letter goes on to provide "a detailed claim chart" comparing allowed claim 1 of the '424 Application (which is claim 1 of the '186 Patent) to the accused devices. At the end of the claim chart, ClearOne alleges that each of the accused devices "similarly meets the other independent claims (claim 7, 13, and 19), as well as the dependent claims."

22.     Therefore, ClearOne has asserted all of the claims of the '186 Patent against the Shure products identified in the ClearOne Letter.

23.     The ClearOne Letter specifically identifies and accuses Shure's Microflex Advance Array Microphone, Shure model MXA910 (the "MXA910") and Shure's IntelliMix P300 signal processor (the "P300") as being infringing devices (the "Accused Shure Products").

24.     The ClearOne Letter further accuses Shure of certain other activities which it alleges infringe the '186 Patent, including but not limited to "advertis[ing], and encourag[ing] and instruct[ing] its customers to make and use, integrated systems" (the "Accused Practices") which allegedly infringe the '186 Patent.

25.      The ClearOne Letter further accuses Shure of infringement based on (i) the combination of its MXA910 with "acoustic echo cancellation products" from third parties (such as QSC's Q-SYS platform and Biamp's Tesira/TesiraFORTE audio processors and software) ("Accused Third Party Products"), and (ii) activities by Shure, including the Accused Practices, which ClearOne alleges to be instructing, encouraging, partnering and/or otherwise collaborating with third parties in violation of the '186 Patent.

26.     The claim charts provided in the ClearOne Letter expressly accuse the Accused Products, Accused Third Party Products and the Accused Practices of infringing the claims by outlining each claim limitation allegedly present.

27.     All of the claim limitations of the independent claims of the '553 Patent comprise the same claim limitations of the independent claims of the '186 Patent, such that the '553 Patent claims contain claim limitations that are effectively a subset of the claim limitations of the '186 Patent claims.

28.     The parties have a clear conflict of asserted rights against one another, and an actual controversy exists between Shure and ClearOne with respect to '186 Patent and the '553 Patent.

29.     As a result of ClearOne's actions, Shure had a reasonable apprehension of enforcement of the '186 and '553 Patents against it. Therefore, Shure filed this action in order to resolve an actual and justiciable controversy between the parties hereto.

30.     On May 30, 2017, ClearOne filed its Answer and Counterclaim of Infringement of the '186 and '553 Patents. (*See* ECF 28.)

## CLEARONE'S INEQUITABLE CONDUCT AT THE USPTO

31.     Over the course of ensuing discovery, Shure has learned that ClearOne failed to disclose material information to the Patent Office, and made several material misrepresentations to the Patent Office during the prosecution of the '553 Patent, the '186 Patent, and related patents within the same family (collectively, "the '553 Family").

## ClearOne's Failure to Disclose

32.     ClearOne's '186 Patent claims, such as in representative claim 7, can generally be broken down into three main functions: (1) creation of multiple fixed beams from a beamforming microphone array, (2) performing acoustic echo cancellation on each resultant signal (referred to as "Distributed Echo Cancellation" by ClearOne), and (3) selection of a signal for transmission. ClearOne interprets the selection function as being met by the standard operations of a device known within teleconferencing as a "Gating Automixer." The selection function is further limited by a requirement that the far end is used as information to inhibit a change of the selection when "the far end only is active." ClearOne interprets this further requirement to be met by a teleconferencing feature commonly known as "Last Mic On."

33.     Any prior art embodiments of the Distributed Echo Cancellation, Gating Auto Mixers, and Last Mic On features are material to patentability of the '186 Patent. Particularly relevant are prior art references that include the process of performing Distributed Echo

Cancellation on multiple signals prior to submission to a Gating Automixer, with Last Mic On functionality. Indeed, according to ClearOne's own contentions, such a process meets every claim limitation other than the beamforming operation aspect of the claims. Thus, known prior art which performed Distributed Echo Cancellation prior to submission to a Gating Automixer and Last Mic On, particularly when performed in that order, should have been disclosed to the Patent Office.

34.    ClearOne contends that it was the first to introduce a beamforming microphone array in what it refers to as the "installed audio conferencing market." It considers the beamforming function to be critical to the '553 Family, and distinguished prior art as teaching away from the "fixed beams" that it claims.

35.    ClearOne's Senior Vice President of Research and Development, Derek Graham, was on ClearOne's patent review board, and was involved in the decision to seek patents on the subject matter claimed in the '553 Family. Mr. Graham was also involved with design reviews, and oversaw development and testing of the technology described in the '553 Family applications. At that time, Mr. Graham was aware that echo cancellation was used by many others in the audio conferencing industry. He also was then aware of speakerphones used in professional audio conferencing that had beamforming microphone arrays. Specifically, Mr. Graham was aware of at least two prior-art products that were offered and sold in the professional conference space that conducted beamforming. These devices were made by Lifesize and Mitel, respectively. Moreover, Mr Graham understood that these products formed multiple fixed beams, that which is claimed in the '186 Patent.

36.    In addition to Mr. Graham, at least two other individuals at ClearOne – both named inventors on the '186 Patent - were also aware of these two prior art beamforming

teleconference products: Ashutosh Pandey and Darrin Thurston. Mr. Graham testified that he believed Mr. Pandey was aware, and Mr. Thurston testified personally that he was aware, of these devices as prior art.

37.     These prior art devices would have been material to patentability during prosecution of the '553 Family because they embody formation of multiple fixed beams on a device used in the very market in which ClearOne operates. As described in greater detail below, these products are highly material to the '553 Family because they include a primary feature of the '553 patent claims that ClearOne represented to the Patent Office differs from another prior art reference, Kajala. This representation by ClearOne was used to obtain allowance of the '553 Patent.

38.     Nevertheless, Mr. Graham, Mr. Pandey, and Mr. Thurston, despite all having a duty to disclose material references relating to the '553 Family applications to the Patent Office, and despite at least Mr. Pandey signing and submitting an oath under penalty of perjury acknowledging said duty, all failed to disclose these prior art devices, or any literature describing them, to the Patent Office.

39.     In addition, persons with a duty to the patent office with respect to the '553 Family (including Mr. Graham and Mr. Thurston, and on information and belief Mr. Pandey) were also aware of installed teleconferencing products that used Last Mic On. In fact, ClearOne's own prior art digital signal processors performed Distributed Echo Cancellation prior to routing echo cancelled signals to a Gating Automixer, which included a Last Mic On feature. Both Mr. Graham and Mr. Thurston have testified that they were aware the ConvergePro Digital Signal Processor (DSP) had these features and was publicly sold by the mid-2000s. Indeed, Mr. Thurston, who was involved in the development of the ConvergePro DSP, testified that it was

"pretty similar" to its predecessor, the XAP 800, which dates back to at least 2001. He was aware that it also had these same features which ClearOne asserts satisfy the majority of the limitations of the '186 Patent. Based on this assertion, the prior art ClearOne DSP devices would have been material to patentability.

40.     Once again, despite their obligation to do so, both Mr. Graham and Mr. Thurston (and ClearOne) failed to disclose to the Patent Office their knowledge of the public availability of these DSP devices that ClearOne itself had manufactured for a decade before prosecution of the '553 Family began.

41.     ClearOne also failed to disclose two key prior art references to the Patent Office during prosecution of the '553 Patent. The first is a 1997 article by Walter Kellermann called "Strategies for Combining Acoustic Echo Cancellation and Adaptive Beamforming Microphone Arrays" ("K-97"), and the second is a 2001 book chapter written by Dr. Kellermann called "Acoustic Echo Cancellation for Beamforming Microphone Arrays" ("K-01"). Both the K-97 and the K-01 are material references related to the combination of beamforming microphone arrays and acoustic echo cancellation.

42.     Upon information and belief, persons involved with prosecution of the patent, including Mr. Pandey, were well aware of these references before the '553 Patent Application was filed. For example, a paper written by Mr. Pandey in 2010 is attached as an "Appendix" to Provisional Application No. 61/495,968 ("the '968 Provisional Application"). A true and correct copy of this Appendix is attached hereto as Exhibit C. K-97 was listed in this Appendix. (Exhibit C, at 15 N2.) Indeed, that 2010 paper appears to incorporate the description of the problem to be solved from K-97, and then proceeds to propose the solution K-97 proposed, albeit in a more specific and limited form.

43.     The '553 Patent is the first patent in this chain of patents that was examined at the Patent Office. However, ClearOne did not cite either K-97 or K-01 until after the '553 Patent issued on Feb. 16, 2016. ClearOne first cited K-01 on June 29, 2016, and K-97 on July 1, 2016, both in the '186 Patent prosecution. Accordingly, ClearOne's belated citation of the references pertinent to the '553-limitations constitute a failure to disclose material prior art references during the prosecution of the '553 Patent, as it was significant for the Examiner to be aware of such prior art.

**ClearOne's Material Misrepresentations**

**A.      Addition of New Matter in the Parent '135 Application**

44.     The '186 Patent is a continuation of, U.S. Patent Application No. 15/040,135 ("the '135 Application"), which depends directly from the '553 Patent. All three patent applications are collectively referred to hereinafter as the "the '186 Patent Chain." The '186 Patent issued much more quickly than the '135 Application because it was filed "track one," but the '135 Application was filed roughly five months earlier, on Feb. 10, 2016. At that time, however, it was "filed by reference." In other words, no specification was filed, and instead the filing simply referenced the '553 Patent's application (the '921 Application), to which it claimed to be a continuation. Filing by reference, which is disfavored by the Patent office, resulted in the Office issuing a requirement that ClearOne "must submit a copy of the specification and drawings from the previously filed application," as required by 35 U.S.C. § 111(c) and 37 CFR 1.57(a)(3).

45.     MPEP 601.01(a)(III) requires that:

> "In response to a notice requiring a copy of the specification and drawings from the previously filed application, **applicants must submit an actual copy of the specification and any drawings of the previously filed application without any modifications**. If

the specification and drawings submitted in response to the notice are modified, i.e., updated, corrected, or reformatted in any manner, such modified specification and any modified drawings would not satisfy the copy requirement of 35 U.S.C. 111(c) and 37 CFR 1.57(a). Any desired changes to the copy of the previously filed application must be made by way of an amendment under 37 CFR 1.121 without adding new matter." (emphasis added).

46. Yet, when ClearOne responded to the Notice on April 20, 2016 (by and through its attorney of record Mr. Matthew Booth), it did not file a copy specification from the '921 Application. Rather, Mr. Booth submitted a modified specification to the Patent Office, without any identification of the various changes made to the application text. This impropriety, though concealed in a manner that it went unnoticed by the Patent Office, should have resulted in rejection of the amendment and abandonment of the application under the rules. On information and belief, this was done by ClearOne in an effort to deceive the Patent Office to introduce new matter into the application in a concealed manner. And, had such actions been identified by the Patent Office, the new application would have been ruled to be abandoned, and the '186 Patent would never have existed.

**B.    Misrepresentation of Inventor Oaths**

47. Another example of inequitable conduct stems from ClearOne's submission of the oath associated with at least inventor Darrin Thurston. Mr. Thurston left ClearOne's employment before he signed any oaths relating to the '553 Family. ClearOne sent an oath to Mr. Thurston for his signature in association with the '553 Patent (the '921 Application), ClearOne did not present him with a copy of the application or claims. The oath requires that each inventor "review[] and understand the content…including the claims" of the application before signing the oath, a sworn statement subject to penalty of perjury. Mr. Thurston specifically requested the specification and claims from ClearOne so that he could review them prior to signing the oath,

which would attest to his belief that he was an inventor and that the claims properly applied to something ClearOne invented. ClearOne did not respond, or provide the documents to him. Mr. Thurston eventually signed the oath without ever having received the specification or claims, and ClearOne submitted the oath to the Patent Office, though aware that Mr. Thurston's oath was untruthful as he had not reviewed the patent application.

48.     A new oath was subsequently required for the '186 Patent application, but this time Mr. Thurston was not provided an oath to sign. Instead of contacting Mr. Thurston and presenting him with the new patent application claims and an oath for signature, ClearOne submitted a substitute statement under penalty of perjury, signed by its Chief Financial Officer, Narsi Narayanan, claiming that Mr. Thurston had refused to sign the oath for the '186 Patent." A true and accurate copy of the substitute statement is attached hereto as Exhibit C. This statement was known by ClearOne to be false. Mr. Thurston has acknowledged under oath that ClearOne's filed statement was untrue, and that he had not been contacted by ClearOne for years prior to the filing of the '186 Patent.

49.     Had Mr. Thurston reviewed the claims submitted with the '186 Patent, he would have had the opportunity to identify the subject matter of the application that is not supported by the invention of those associated with ClearOne, or supported by the original specification, and could have raised the issue with either ClearOne or the Patent Office. By concealing the claims and specification of the patent application from Mr. Thurston, ClearOne purposefully prevented this opportunity to reveal the new subject matter inserted into the patent application which eventually resulted in the '186 patent claim scope.

C.     **Manipulation of Material "Fixed Beam" Definition**

50.     In addition to the above misrepresentations, ClearOne has consistently and repeatedly made material misrepresentations to the Patent Office regarding the '186 Patent claimed subject matter and the subject matter of the applications in the '186 Patent Chain.

51.     The '186 Patent is a continuation of, the '135 Application, which is a continuation of the '553 Patent, which indicates to the Patent Office that the '186 Patent and the '135 Application should include the same specification and scope as the '553 Patent. Each of the '186 Patent Chain applications include the limitation "each of the plurality of combined signals corresponding to a different fixed beam." The term "fixed beam" is particularly relevant because ClearOne argued a narrow definition of the term during prosecution of the '553 Patent to obtain patentability, and subsequently sought to expand the definition of fixed beams in all of the family of pending patents. Upon information and belief, this has been done as part of a coordinated effort by ClearOne upon its realization (believed to have involved its litigation and prosecution counsel, agents, and advisors) that the narrow definition of "fixed beam" used by ClearOne to obtain the patent, excluded Shure's ceiling microphone array beamforming product.

52.     The '553 Patent specification, as originally filed, does not include any definition of the term "fixed beam." Rather, the '553 Patent's only definitional support appears to be found in an attachment of one of the provisional applications to which the '553 Patent claims priority. In fact, none of the specifications of those provisional applications include a definition for "fixed beam" either. However, Mr. Pandey's 2010 paper that is attached as an "Appendix" to the '968 Provisional Application does provide a definition. (Exhibit C, at 4.)

53.     The definition of fixed beam as it appears in the Appendix (Exhibit C) is referred to hereinafter as Definition 1, and is reproduced below:

> "[a] fixed beam is defined as a beam that does not attenuate sounds coming from certain directions in space, whereas attenuates sounds coming from other directions in space." (Exhibit C, at 4.)

54.    During the prosecution of the '553 Patent, the USPTO rejected the claims over a combination of prior art that included U.S. Patent Application Publication No. 2004/0013038 to Kajala ("Kajala"). To overcome this rejection, ClearOne amended the claims to require that each signal produced by its beamformer "correspond[] to a different fixed beam," and argued that Kajala was different because it disclosed beams having adjustable filter coefficients, while ClearOne's alleged invention claimed "fixed beams." (ECF 168-2, at 4**.**)

55.    Specifically, in its April 30, 2015 response, ClearOne made the following comments regarding the newly-added "fixed beam" limitation:

> Kajala teaches "echo cancelling outputs of a plurality of beamformers corresponding to ***steered*** beams." (Emphasis original).

> "Kajala did not teach or suggest echo cancellation on a plurality of combined signals wherein "each of the combined signals correspond[s] to a different ***fixed*** beam." (Emphasis original)

> Kajala's teachings pertain to beams that are "***not fixed but adjustable***." (Emphasis original)

> Kajala appears to teach away from the use of ***fixed*** beams. For example, Kajala teaches that only suboptimal receipt and restoration of signals being emitted in a target signal source direction ... which does not exactly coincide with any of the predetermined look directions ... of the beamformer, defined by the ***fixed*** coefficients," are possible. Kajala. Furthermore, the Kajala teaches that "[i]t is the main advantage of the system that the filter coefficients of the beamformer are ***not fixed but adjustable***." (Emphasis original)

> (*Id.*, at 9-10.)

56.     Although this claim amendment and these arguments helped ClearOne gain allowance for the '553 Patent, the narrow definition of "fixed beam" it relied upon to obtain allowance excludes Shure's accused products, which have adjustable filter coefficients.

57.     On information and belief, after ClearOne recognized this, ClearOne, by and through its patent counsel, Mr. Matthew Booth, intentionally misled the Patent Office with regard to the definition of fixed beam, through a series of amendments to continuation applications (both pending and newly filed) shortly after the '553 Patent issued on February 16, 2016.

58.     Through various amendments in these continuation applications of the '186 Patent Chain, ClearOne created ***three*** new definitions of "fixed beam" and methodically transformed the definition of "fixed beam" across the entire '553 Family to reflect the most recent definition. Definition 1 appeared in the white paper attached to the '968 Provisional Application. Definitions 2 and 3 were created during the pendency of the '186 Patent, and Definition 4 appears in the '135 Application and '553 Patent reissue patent application No. 15/488,492 ("the '492 Reissue Application")[1] after the '186 Patent had already issued. Each of these definitions is reproduced below with emphasis showing the changes of each definition from the prior definition:

> **Definition 1 (original):** "[a] fixed beam is defined as a beam that does not attenuate sounds coming from certain directions in space, whereas attenuates sounds coming from other directions in space."
>
> **Definition 2:** "[a] fixed beam is defined as a beam that is defined with pre-computed parameters rather than being adaptively steered to look in different directions in real time or having its pickup pattern change in response to the input signal properties or other considerations."

---

[1] The '492 Reissue Application concerning the '553 Patent is still pending and is not presently directly at issue in this litigation.

**Definition 3:** A fixed beam is defined as a beam that is defined with pre-computed parameters rather than being adaptively steered to look in different directions in real time ~~or having its pickup pattern change in response to the input signal properties or other considerations~~. The pre-computed parameters are configured prior to use of the beamforming microphone array in a conference. A spatial direction where a beam does not attenuate sound is called the look-direction of that beam.

**Definition 4:** A fixed beam is defined as a beam that is defined with pre-computed parameters rather than being adaptively ~~steered~~ pointed to look in different directions in ~~real time~~ on-the-fly. The pre-computed parameters are configured prior to use of the beamforming microphone array in a conference. A ~~The~~ spatial direction ~~where~~ in which a beam does not attenuate sound, or alternatively, the spatial direction in which the beam has maximum gain, is called the look-direction of that beam.

59.     The only portion of the original Definition 1 of fixed beam that appears in the subsequent definitions of fixed beam is "[a] fixed beam is defined as a beam that."

60.     Tables 1 and 2 below summarize the amendments across the '186 Patent Chain. As indicated in Table 1, and described in greater detail below, ClearOne made multiple amendments in each application to repeatedly revise and expand the definition of "fixed beam" even within the same application.

**Table 1: Summary of Amendments to the '186 Patent Chain**

| Application | Fixed Beam Definition | Date | Prosecution Tool |
|---|---|---|---|
| '186 Patent Application | Definition 2 | Jun. 23, 2016 | Added to specification for Initial Filing as a Continuation of the '553 Patent |
| | Definition 3 | Feb. 9, 2017 | Amendment After receiving a Notice of Allowance of the patent claims |
| '135 Application | Definition 2 | Jul. 31, 2016 | Changed in a Preliminary Amendment |
| | Definition 3 | Apr. 21, 2017 | Changed in a Response to an Office Action OA |

16

| | Definition 4 | Oct. 19, 2017 | Amendment After receiving a Notice of Allowance of the patent claims |
|---|---|---|---|
| '492 Reissue Application | Definition 3 | Apr. 15, 2017 | Changed in a Preliminary Amendment |
| | Definition 4 | Oct. 16, 2017 | Changed in a Preliminary Amendment |

61.     Table 2 below rearranges the same data of Table 1 in chronological order of amendments. Table 2 presents a road map of ClearOne's intentional campaign to expand the definition of fixed beam in stages across the '186 Patent Chain.

**Table 2: Chronological Progression of Definition of "Fixed Beam"**

| Date | Fixed Beam Definition | Application | Prosecution Tool |
|---|---|---|---|
| Feb. 16, 2016 | Definition 1 | '553 Patent Application | '553 Patent Issues |
| Jun. 23, 2016 | Definition 2 | '186 Patent Application | Added to specification for Initial Filing as **Continuation** of the '553 Patent |
| Jul. 31, 2016 | Definition 2 | '135 Application | Preliminary Amendment |
| Feb. 9, 2017 | Definition 3 | '186 Patent | Amendment After Notice of Allowance |
| Apr. 15, 2017 | Definition 3 | '492 Reissue Application | Preliminary Amendment |
| Apr. 21, 2017 | Definition 3 | '135 Application | Response to OA |
| Oct. 16, 2017 | Definition 4 | '492 Reissue Application | Preliminary Amendment |
| Oct. 19, 2017 | Definition 4 | '135 Application | Amendment After Notice of Allowance |

62.     **The '186 Patent.** On June 23, 2016, ClearOne filed the application that ultimately issued as the '186 Patent. ClearOne inserted new language into the '186 Patent, which included

the new, broader Definition 2 of "fixed beam." (ECF 163-20, at 3.) It did so without identifying the change as a preliminary amendment to the Patent Office—instead, simply calling the application a "continuation," which implies the specification has not changed. Indeed, despite calling the '186 patent a "continuation" of the '135 Application and the '553 Patent, the application added a huge amount of other new matter as well, including numerous new figures and pages of new specification disclosure. Definition 2 of fixed beam is reproduced below with strike through text indicating what was deleted from Definition 1 and underlined text indicating what was added to Definition 1:

> **Definition 2:** "[a] fixed beam is defined as a beam that ~~does not attenuate sounds coming from certain directions in space, whereas attenuates sounds coming from other directions in space~~ is defined with pre-computed parameters rather than being adaptively steered to look in different directions in real time or having its pickup pattern change in response to the input signal properties or other considerations." (ECF 163-20, at 3)

63. Definition 2 does not appear in the specification of the '553 Patent or the '968 Provisional Application, and it is contrary to the definition that ClearOne limited "fixed beam" to in order to obtain allowance of the claims of the '553 Patent. On information and belief, ClearOne inserted this definition into the application that became the '186 Patent purposefully to induce a broader scope of claims than it knew to be considered allowable by the Patent Office.

64. The Patent Office issued a Notice of Allowance for the '186 Patent Application with Definition 2 on February 2, 2017. However, ClearOne filed an Amendment After Notice of Allowance on February 9, 2017 to further revise the definition of fixed beam from Definition 2 to Definition 3. (ECF 163-21, at 7.) Definition 3 is reproduced below with the strike through text indicating text that is removed from Definition 2 and the underlined text indicating what has been added:

**Definition 3:** A fixed beam is defined as a beam that is defined with pre-computed parameters rather than being adaptively steered to look in different directions in real time ~~or having its pickup pattern change in response to the input signal properties or other considerations~~. <u>The pre-computed parameters are configured prior to use of the beamforming microphone array in a conference. A spatial direction where a beam does not attenuate sound is called the look-direction of that beam</u>.

65.     ClearOne characterized these changes as "ministerial changes, grammatical changes, organization changes, changes by incorporation, and conformance changes" and "conforming . . . the specification to the drawings and both to the underlying provisional application." (*Id*. at 4.) Although ClearOne further stated that it purportedly was "not adding new matter with these amendments," the change from Definition 2 to Definition 3 is not a ministerial or grammatical change, and is in conflict with the representations that had been made by ClearOne in obtaining allowance of the parent application, distinguishing its alleged invention from the prior art cited by the Patent Office. Furthermore, neither Definition 2 nor Definition 3 is supported by the drawings or the underlying provisional application, which only provides Definition 1.

66.     **The '135 Application.** The '135 Application, like the '553 Application, was originally filed with no explicit definition of "fixed beam" and relied on the definition from the '968 Provisional Application on which it claims priority. (Definition 1).

67.     On July 31, 2016, approximately one month after filing the '186 Patent Application, ClearOne filed a preliminary amendment to add Definition 2 of fixed beam to the '135 Application specification. *(ECF 163-26, at 8-9).* ClearOne provided the same generic paragraph to explain the amendment characterizing these changes as "ministerial changes, grammatical changes, organization changes, changes by incorporation, and conformance changes" and "conforming . . . the specification to the drawings and both to the underlying

provisional application," and stating that it purportedly was "not adding new matter with these amendments." (*Id.* at 4.) Given that these amendments were made to the '135 Application *after* the '186 Patent Application had already been filed with Definition 2, the scope of the '186 Patent Application disclosure is not supported by such amendments of the '135 Application.

68.     On April 21, 2017, in a Response to Office Action for the '135 Application, Clear One revised the definition of Fixed Beam from Definition 2 to Definition 3. (ECF 163-27, at 8). Once again, ClearOne did not make any claim amendments related to "fixed beams" and simply provided the same generic justification for all changes to the specification.

69.     On October 16, 2017, the Patent Office allowed the '135 Application with Definition 3 of fixed beam. Despite being granted this allowance, on October 19, 2017, ClearOne filed an Amendment After Notice of Allowance to change the definition of fixed beam yet again to Definition 4 without any new rational for the change. (ECF 163-28, at 7).

70.     As detailed herein, ClearOne made multiple amendments in each application to continuously revise and expand the definition of "fixed beam." Matthew Booth is the sole attorney of record for each of these applications, and Mr. Booth signed each of the amendments for the Fixed Beam Patents. Mr. Booth, on behalf of ClearOne, misused tools at the Patent Office such as preliminary amendments, responses to office actions, amendments after notices of allowance, to change and broaden its definition of "fixed beams" without ever providing any explanation for the revisions.

## FIRST CAUSE OF ACTION

### (Declaratory Judgment of Non-Infringement of the '186 Patent)

71.     Shure hereby incorporates by reference its allegations contained in the preceding paragraphs of this First Amended Complaint.

72.     Shure does not make, use, offer for sale, sell, import, or export, and has never made, used, offered to sell, sold, imported, or exported, a device or apparatus that infringes, either directly or indirectly, any valid and enforceable claim of the '186 Patent.

73.     Furthermore, Shure does not practice or perform, and has never practiced or performed, any method that infringes, either directly or indirectly, or performed any acts constituting contributory infringement of, or inducement to infringe any valid and enforceable claim of the '186 Patent.

74.     Neither the Accused Shure Products, alone or in combination with the Accused Third Party Products, infringe, either directly or indirectly, any valid and enforceable claim of the '186 Patent.

75.     Specifically, each of the Accused Shure Products (alone or in combination with each other, or in any combination with any of the Accused Third Party Products), and all of the Accused Practices fail to include or satisfy at least the claim limitation of "each of the plurality of combined signals corresponding to a different fixed beam" and the limitation "select[ing] with a signal module, one or more of the combined echo cancelled signals for transmission to the far end, wherein said signal selection module uses the far end signal as information to inhibit said signal selection module from changing the selection of the combined echo cancelled signals while only the far end is active," which are each claim limitations required of each of the independent claims (claims 1, 7, 13 and 19) of the '186 Patent, and therefore, is a claim limitation required by each and every claim of the '186 Patent.

76.     Because each of the Accused Shure Products (alone or in combination with each other or in any combination with the Accused Third Party Products), and all of the Accused

Practices do not include or satisfy at least the above recited limitations, such products and practices do not infringe any claims of the '186 Patent.

77.    As set forth in detail above, an actual controversy exists between Shure and ClearOne concerning the non-infringement of the '186 Patent.

78.    Accordingly, Shure seeks and is entitled to a judgment against ClearOne that all of the Accused Shure Products (alone or in combination with the Accused Third Party Products), and other Shure products incorporating microphone arrays and/or acoustic echo cancellation, as well as Shure's activities and undertakings in selling, marketing and distributing its products, including but not limited to the Accused Practices, have not infringed and do not infringe (directly, indirectly, contributorily, or by inducement) any valid claim of the '186 Patent.

## SECOND CAUSE OF ACTION

### (Declaratory Judgment of Invalidity of the '186 Patent)

79.    Shure hereby incorporates by reference its allegations contained in the preceding paragraphs of this First Amended Complaint.

80.    The '186 Patent is invalid for failure to meet one or more of the conditions of patentability specified in Title 35 of the United States Code. Specifically, the '186 Patent does not satisfy at least the requirements of 35 U.S.C. §§ 102, 103, and/or 112.

81.    Specifically, the '186 Patent is invalid under 35 U.S.C. § 102, as being anticipated by prior art. The '186 Patent is further invalid under 35 U.S.C. § 103 as being obvious in light of prior art. The '186 Patent is further invalid under 35 U.S.C. § 112 as being indefinite, for at least the reason that one or more of its claim terms fail to particularly point out and distinctly claim the invention, rendering the claims indefinite.

82. As set forth in detail above, an actual controversy exists between Shure and ClearOne as to whether the '186 Patent is invalid.

83. Accordingly, Shure seeks and is entitled to a judgment against ClearOne that the '186 Patent is invalid.

## THIRD CAUSE OF ACTION

### (Declaratory Judgment of Non-Infringement of the '553 Patent)

84. Shure hereby incorporates by reference its allegations contained in the preceding paragraphs of this First Amended Complaint.

85. Shure does not make, use, offer for sale, sell, import, or export, and has never made, used, offered to sell, sold, imported, or exported, a device or apparatus that infringes, either directly or indirectly, any valid and enforceable claim of the '553 Patent.

86. Furthermore, Shure does not practice or perform, and has never practiced or performed, any method that infringes, either directly or indirectly, or performed any acts constituting contributory infringement of, or inducement to infringe any valid and enforceable claim of the '553 Patent.

87. Neither the Accused Shure Products, alone or in combination with the Accused Third Party Products, infringe, either directly or indirectly, any valid and enforceable claim of the '186 Patent.

88. Specifically, each of the Accused Shure Products (alone or in combination with each other, or in any combination with any of the Accused Third Party Products), and all of the Accused Practices fail to include or satisfy at least the claim limitation of "perform[ing] a beamforming operation to combine the plurality of microphone signals to a plurality of combined signals that is greater in number than one and less in number than the plurality of

microphone signals, each of the plurality of combined signals corresponding to a different fixed beam," which is a claim limitation required of each of the independent claims (claims 1, 8 and 15) of the '553 Patent, and therefore, is a claim limitation required by each and every claim of the '553 Patent.

89.     Because each of the Accused Shure Products, alone or in combination with each other or in any combination with the Accused Third Party Products, and all of the Accused Practices do not include at least the above recited limitation, such products and practices do not infringe any claims of the '553 Patent.

90.     As set forth in detail above, an actual controversy exists between Shure and ClearOne concerning the non-infringement of the '553 Patent.

91.     Accordingly, Shure seeks and is entitled to a judgment against ClearOne that all of the Accused Shure Products (alone or in combination with the Accused Third Party Products), and other Shure products incorporating microphone arrays and/or acoustic echo cancellation, as well as Shure's activities and undertakings in selling, marketing and distributing its products, including but not limited to the Accused Practices, have not infringed and do not infringe (directly, indirectly, contributorily, or by inducement) any valid claim of the '553 Patent.

## FOURTH CAUSE OF ACTION

### (Declaratory Judgment of Unenforceability of the '186 Patent)

92.     Shure hereby incorporates by reference its allegations contained in the preceding paragraphs of this First Amended Complaint.

93.     Mr. Graham, as ClearOne's Senior Vice President of Research and Development, and inventors Mr. Pandey and Mr. Thurston were all aware that ClearOne was pursuing a U.S. patent on material disclosed within the '186 Patent. All three individuals had a duty to bring to the attention of the patent examiner and the PTO any prior art of which they were aware and

knew to be material to patentability. At least Mr. Pandey and Mr. Thurston signed an oath to that effect.

94.     The prior art products sold by Mitel, LifeSize and ClearOne itself were known by Mr. Graham, Mr. Pandey and Mr. Thurston well prior to the filing of the application for the '186 Patent. These products are all material to patentability under 37 C.F.R. §1.56 at least because, either when combined with one another or with other references, they establishes a prima facie case of unpatentability of one or more claims of the '186 Patent.  Specifically, they collectively disclose features that ClearOne now claims meet each limitation of at least claim 7 of the '186 Patent. Thus, if the Examiner would have been aware of this information, the Examiner would not have issued the '186 Patent.

95.     The prior art references K-97 and K-01 were known at least to Mr. Pandey, and others at ClearOne involved with filing of the patent application that became the '553 Patent, well prior to the filing of the application for the '553 Patent, yet he and ClearOne failed to disclose them. These references are material under 37 C.F.R. §1.56 at least because they establishes a prima facie case of unpatentability of one or more claims of the '553 Patent. Accordingly, if the Examiner would have been aware of these references as they relate to the '553 Patent, the Examiner would not have issued the '186 Patent. Unenforceability as to the '553 Patent taints those patents, including the '186 Patent, that claim priority to it, and thus also rendered unenforceable.

96.     Further, material misrepresentations to the Patent Office with respect to addition of new matter related to the definition of "fixed beam" under the guise of minor amendments in the '186 Patent chain, and the misrepresentation regarding the filing of Mr. Thurston's oath, were intentional acts that violated ClearOne's duty of candor and due care owed to the PTO and

the public. They have resulted in the issuance of patent claims with breadth unsupported by the priority claim and in conflict with the representations made by ClearOne relative to the new matter added by each amendment, which had resulted in allowance of the claims. If the Examiner would have been aware of this addition of new matter unsupported by the priority claim, the Examiner would not have issued the '186 Patent.

97.     After relying on its own definition of fixed beams to gain allowance of the '553 Patent, ClearOne misused the various tools of prosecution at the Patent Office to insert and subsequently expand its new definition of fixed beam to impermissibly broaden the scope of its patents. Matthew Booth is the same attorney that made each of these amendments across the '186 Patent Chain. This conduct reveals an intent to defraud the Patent Office and the public.

98.     ClearOne's intentional failure to disclose to the Patent Office material information, and its making of misrepresentations to secure the allowance of claims while impermissibly broadening specifications, constitute inequitable conduct. As a result of such inequitable conduct, the '186 Patent is unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Shure requests that this Court enter judgment in its favor and against ClearOne as follows:

A.     Declaring that Shure does not infringe, and has not infringed, any valid claim of any of the '186 Patent;

B.     Declaring that the '186 Patent is invalid under one or more of 35 U.S.C. §§ 102 103, and/or 112;

C.     Declaring that Shure does not infringe, and has not infringed, any valid claim of any of the '553 Patent;

26

D.      Enjoining ClearOne, its officers, agents, employees, representatives, counsel and all parties acting in concert with it, permanently and preliminarily during the pendency of this action, from directly or indirectly asserting or charging infringement of the '186 Patent and/or the '553 Patent against Shure, its representatives, agents, distributors, customers, or contractors, present and prospective;

E.      Declaring that the '186 Patent is unenforceable for inequitable conduct before the United States Patent and Trademark Office;

F.      Declaring this case exceptional under 35 U.S.C. § 285 at least as a result of ClearOne's assertion of the '186 and '553 Patents despite ClearOne's inequitable conduct and unclean hands relating to their procurement, and ordering ClearOne to pay Shure's reasonable attorneys' fees and expenses in this action;

F.      Ordering ClearOne to pay Shure's costs pursuant to 28 U.S.C. § 1920; and,

G.      Ordering such other and future relief as this Court deems just and proper.

### JURY DEMAND

Shure respectfully requests a trial by jury.

Dated: January 29, 2018                 Respectfully Submitted,

                                        By: s/ Bradley F. Rademaker
                                        One of the Attorneys for Plaintiff,
                                        **SHURE INCORPORATED**

                                        Bradley F. Rademaker
                                        Mike R. Turner
                                        Olivia Luk Bedi
                                        Tanvi B. Patel
                                        NEAL, GERBER & EISENBERG LLP
                                        Two North LaSalle Street
                                        Suite 1700
                                        Chicago, Illinois 60602
                                        Telephone: (312) 269-8000
                                        Email: Shure_ClearOneLit@nge.com

Vladimir I Arezina
LATHROP GAGE LLP
155 North Wacker Drive, Suite 3000
Chicago, IL 60606
Telephone: (312) 920-3300
Email: varezina@lathropgage.com

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned attorney hereby certifies that on January 29, 2018, a copy of the foregoing document, ***Plaintiff / Counterclaim Defendant Shure Incorporated's First Amended Complaint***, was served via email to ClearOne counsel of record at the following email address: ClearOne186Patent@hueston.com.


/s/Mike R. Turner
Mike R. Turner