**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SHURE INCORPORATED, | |
| Plaintiff, | Case No.:   17-cv-03078 |
| v. | Judge Edmond E. Chang |
| CLEARONE, INC., | Magistrate Judge Maria Valdez |
| Defendant. | |
| CLEARONE, INC., | |
| Counter-Plaintiff, | |
| v. | |
| SHURE INCORPORATED, | |
| Counter-Defendant. | |

**<u>SHURE'S REPLY IN SUPPORT OF ITS
MOTION TO AMEND FINAL INVALIDITY CONTENTIONS AS TO THE '186
PATENT</u>**

## I.     Introduction

Shure's opening memorandum laid out strong arguments in support of its proposed amendment to add the MHA Solution to this case, explaining the good cause, showing diligence and explaining the lack of prejudice.  ClearOne's opposition spends little time addressing these points, instead primarily aiming to attack the status of the MHA Solution as prior art.[1]  It essentially ignores Shure's explanation of good faith rooted in judicial efficiency.  Its argument as to diligence is not rooted in any factual basis and relies on conjecture.  And the prejudice ClearOne warns of amounts to complaining about tasks it will need to do regardless of the outcome of this Motion. That is because, as of last Friday, the same MHA prior art sought to be added to this case formally became a component of Shure's Invalidity Contentions as of right in the '553 Case – where fact discovery remains open and expert discovery awaits.[2]

In this unique situation where a second case trails a first case with highly related patents that will be consolidated at trial, Shure's amendment will best promote judicial efficiency. Shure intends to present the MHA Solution as an invalidating reference at trial with respect to the '553 Patent regardless of the outcome of this Motion. Allowing Shure to similarly assert it against the '186 Patent will best promote judicial efficiency and avoids a complicated and confusing scenario where the jury is instructed to consider the MHA Solution with respect to the parent patent, but not with respect to its highly similar continuation.  Shure's proposed amendment will conserve

---

[1]     If ClearOne were right as to priority (which it is not), it would welcome the sought amendment so that it could be easily overcome. Notably absent from ClearOne's Opposition is any dispute that the MHA Solution discloses every limitation of U.S. Patent No. 9,635,186 (the "'186 Patent").  Rather, what the MHA Solution shows is that "the ClearOne method" was developed and sold years before ClearOne purported to invent it.

[2]     Ironically, it is ClearOne's pending Motion to Amend *its* contentions (R. 807) that will cause the prejudice (to Shure) that ClearOne complains of here, because ClearOne's amendment seeks to add issues that have no parallel or relevance in the '553 Case where discovery remains open.

party resources, reduce prior art before the jury, and best serve the interests of justice. ClearOne merely seeks to avoid addressing the MHA Solution because it invalidates the '186 Patent.

## II.    Relevant Facts

In 2007, MH Acoustics previewed a conceptual signal processing solution to ShoreTel and ECI. (R.770.)  This resulted in a contract to develop the solution into executable code for use by ShoreTel. *Id*.  The code was developed by MH Acoustics and delivered to ShoreTel and ECI in 2008 along with specifications as to a 6-microphone array to be used with a particular SHARC DSP processor for Analog Devices. *Id*.  The term "MHA Solution" is used herein to describe that which MH Acoustics developed and specified.  In 2010, ShoreTel packaged the MHA Solution into a commercial conference phone called the IP655.

After learning about the MHA Solution in the ordinary course of fact discovery of the '553 Case, Shure timely included the MHA Solution as a matter of right in its Final Invalidity and Unenforceability Contentions, which it served last Friday. (*See* '553 Case ECF 105; Ex. 1; Ex. 2.) Thus, Shure will present the invalidity theory at issue to the jury at the presumed consolidated trial, which ClearOne advocated for, in part, on the basis of substantial overlap between the '186 and '553 Patents. (*See* R. 742 at 17:20–23:2.)  Fact discovery is not scheduled to close in the '553 Case until September 25, 2020, and expert discovery will follow the claim construction process that extends through October. ('553 Case ECF 105.) ClearOne does not dispute that the Parties will have ample opportunity to take fact discovery related to the MHA Solution and fully address it in expert discovery in the '553 Case.  Nor does ClearOne suggest that, at the presumed consolidated trial, it will be unable to present evidence obtained from these efforts with respect to the '186 Patent.

## III.    Argument

### A.    ClearOne's Conclusory Attorney Argument Does Not Negate Shure's Diligence

What ClearOne's arguments as to diligence completely miss is that Shure discovered the MHA Solution in the regular course of fact discovery in the '553 Case.  During a properly noticed third-party deposition taken May 12, 2020 in that case, Shure learned how the MHA Solution practices each limitation of the asserted claims of the '553 and '186 Patents.  Shure then moved for leave to add this ground in the present case just 14 days later, just after receiving the signed errata from the witnesses. (R. 770.) Shure did not learn this information prior to the deposition because no publicly available document reveals the operation of the MHA Solution in sufficient detail. Accordingly, no prior art search performed with respect to the '186 Patent revealed the MHA Solution. Thus, Shure was indeed diligent in responding to what it learned in the regular course of discovery, realized the efficiencies in asserting the defense in both cases, and promptly sought leave to amend where necessary.

ClearOne misses the point, and criticizes Shure for not having discovered the MHA Solution in the course of '186 fact discovery.  This is despite its later argument that "the Shoretel IP655 [] does not trigger the public knowledge bar because the specifics of its operations were concealed from the public." (*Compare* R. 820 at 5, *with id.* at 8, n. 9.)  Inexplicably, ClearOne shows that Shure was aware of two unrelated products – the Eigenmike sold by MH Acoustics, and a different conference phone sold by Mitel years earlier. (*Id.* at 2, 5).  Neither of these would lead to the IP655, much less the MHA Solution, without the benefit of hindsight. First, there are no public references that might be found through a diligent search that connect MH Acoustics with the IP655, so there is no reason that awareness of MH Acoustics would lead to the IP655 and its operating software. (*See, e.g.,* Ex. 3.) With respect to the Mitel phone, Mitel did not acquire

ShoreTel until 7 years after the IP655 was first offered for sale by ShoreTel. (*See e.g.*, R. 771-1 at 90; R 820-12 at 3.) The notion that mere knowledge of an unrelated Mitel phone would warrant investigation into technology developed and sold by an acquired company no longer in existence is nonsensical.

ClearOne's attempt to distinguish *Olesky* is not persuasive. ClearOne notes that the *Olesky* movant sought to amend within 3 months of the close of fact discovery. (R. 820 at 5–6.) But that argument is not at all based on the concept of diligence. As ClearOne argues, diligence considers both (1) when the moving party should have discovered the grounds for amendment; and (2) how promptly the moving party sought leave to amend upon the discovery. (*Id.* at 4.) ClearOne does not argue that *Olesky* is distinguishable on either of these grounds and instead attempts to distinguish it on the basis of the time of the amendment relative to the case schedule. That is irrelevant to diligence.

Meanwhile, ClearOne's case law relating to its diligence argument is easily distinguishable. In *Kolcraft Enters., Inc. v. Artsana USA, Inc.*, the movant sought leave to supplement its already asserted invalidity grounds based on prior art devices with documents and deposition testimony obtained from the third-party manufacturers of the devices not obtained until after the deadline for final contentions passed. (Ex. 4 at 1–2, 6–7.) The movant did not deny that it became aware of the basis for this discovery six months prior to the deadline for final contentions. (R. 820-2 at 1.) In contrast, here, Shure discovered an entirely new ground for invalidity during open discovery in a later-filed case and, as noted above, ClearOne makes no credible argument as to why knowledge of the Eigenmike would have led Shure to the unrelated MHA Solution.[3]

---

[3] ClearOne argues Shure was aware of the Eigenmike based on one slide of a 2012 presentation made by a Shure intern. (*See* R. 820-4 at SHURE282874, entitled "Internship Presentation.")

In *British Telecomms. PLC v. IAC/InteractiveCorp*, the "change in legal strategy" was the appearance of new legal counsel on behalf of the accused infringer, which purportedly found the new prior art publication after the deadline for final infringement contentions. No. 18-366-WCB, 2020 U.S. Dist. LEXIS 99888, at *2–*4 (June 8, 2020). Nearly all of the collected cases in *British Telecomms*, similarly addressed change in counsel as the relevant change in legal strategy. *Id* at *7-10. Shure has had no change in legal strategy. It continues to assert that Kellerman-01 invalidates the '186 Patent. (*See, e.g.*, R. 771-1 at 35–64.) If anything, ClearOne's litigation strategy may have backfired. The impetus for this Motion was discovery in a related case, which is on a delayed schedule because ClearOne placed the '553 Patent into re-issue only to withdraw it unchanged and assert it later. (*See* R. 1 at ¶¶ 43–50; R. 280; '553 Case ECF 1.) ClearOne then advocated for a consolidated trial (R. 742 at 17:20–23:2), and now cries foul that Shure discovered prior art it wishes to assert at that trial in the ordinary course of discovery in the '553 Case. Importantly, none of ClearOne's cases involve such a fact pattern. Diligence here should be measured based on Shure's acts in the '553 Case, which speak for themselves. Further, as reiterated below, granting Shure's Motion will not cause any delay in the case schedule.

## B.    Good Cause Exists for This Amendment

Good cause exists for this amendment because it serves the interests of judicial economy by conserving resources of both the Parties and the Court. Shure has included the MHA Solution in its Invalidity Contentions in the '553 Case, definitively making it a ground of invalidity that will be subject to fact and expert discovery in that case, and eventually presented at trial. ClearOne has chosen to assert very similar claims from the '553 and '186 Patents. In this Court's words, "[asserted] Claim 1 of the '553 patent has all the same elements as [asserted] Claim 7 of the '186 patent, except for the last mic on limitation." (R. 278 at 28 and n. 18.) Thus, the fact discovery the

Parties obtain with respect to the '553 Patent will be similarly relevant to the '186 Patent. The Parties will also be able to present expert testimony and cross-examine opposing experts regarding the MHA Solution in the '553 Case, and apply that testimony as to both the '553 and '186 Patents. Ultimately, any admissible evidence the Parties obtain with respect to the MHA Solution could be presented interchangeably as to both patents at trial.

Indeed, because the similarity of the asserted claims of the '553 and '186 Patents, the arguments relating to their invalidity in light of the MHA Solution will also be very similar. The Court and likely the jury will hear these arguments at least with respect to the '553 Patent regardless of the outcome of this Motion. Thus, it is judicially efficient that the Court and jury consider these arguments as to the reciprocal claims in the '186 Patent in lieu of the unrelated prior art ground Shure is offering to forego.[4] This also nullifies ClearOne's argument that this amendment will delay the case schedule. The aforementioned discovery, trial efforts, and time necessary to complete the same shall occur with respect to the '553 Case regardless of the outcome of this motion, on the timeline of the '553 Case schedule set by the Court. And due to the Court's strong presumption for a consolidated trial, these efforts will take place prior to trial regarding the '186 Patent. Thus, because any additional effort ClearOne alleges to be necessitated by this amendment will track the case schedule of the '553 Case, Shure's proposed amendment will cause no delay.

### C.     The Merits of the MHA Solutions Ground

Shure noted the strength of the new ground in the opening brief simply to provide context

---

[4]     As explained below, ClearOne's assertion that Shure seeks to add two grounds of invalidity is incorrect. But in any event, the math here is simple. There are presently five prior art invalidity grounds asserted against the '186 Patent and three (or four if one accepts ClearOne's position) against the '553 Patent. Shure's Motion eliminates one as to the '186 Patent and asserts one (or two, per ClearOne) presently asserted against the '553 Patent. No matter how you count it, the net effect is reduction of prior art grounds before the Court and jury by one.

for the Court to understand how the requested amendment relates to the asserted claims of the '186 Patent in the same manner as those of the '553 Patent, and thus how it furthers the interests of judicial economy to assert it in both cases. ClearOne does not dispute that the MHA Solution practices the asserted claims of the '186 Patent. Instead it disputes whether the MHA Solution is prior art.[5] This is not proper argument for a motion to amend. However, it is easily rebutted.

### i. Shure's Motion Seeks Leave to Add Only One Prior Art Solution

The MHA Solution is the technology Shure seeks to assert. It is audio signal processing software for use in conferencing that specifies use with a six element beamforming microphone array to generate five fixed beams, followed by acoustic echo cancellation and noise suppression on each of the five fixed beams, followed by a "Vote" function that uses voice activity detection to select one or more signals for transmission. (R. 771-8 at 45:20–47:4, 50:13–54:3, 77:15–78:16 (beamforming), 49:1–50:9, 61:4–64:20 (acoustic echo cancellation and "Vote" function); R. 771-10 at Fig. 1.) It further uses information about the far end to inhibit the selection of different echo-cancelled signals during periods of far end dominance. (R. 771-8 at 65:14–66:22; R. 771-10 at Fig. 1.) The software obviously cannot operate without hardware, but becomes operative when combined with the specified and readily available microphones and processor. (R. 771-8 at 90:20–91:6.) This software was demonstrated as early as 2007, transferred to ShoreTel in 2008 and paid for in 2009, and later sold to the public via the IP655 in 2010. (*Id.* at 21:13–22:4, 24:8–21 (2007 demonstration); R. 771-9 (invoice reflecting 2009 transaction); R. 771-6 at 95:19–96:3; R. 771-8 at 39:11–42:8, 70:14–17, 73:3–9, 96:8–24 (IP655 sale in 2010).) Whether the MHA Solution is viewed as code and hardware specifications in 2008 or as a phone that incorporated that code and hardware in 2010, any differences in these formats of the MHA Solution related only to *when* and

---

[5]    ClearOne's argument about the lack of strength is transparent. If the MHA Solution were easy to knock out, ClearOne would welcome it.

*how* the MHA Solution became prior art, not what the relevant underlying technology entailed or how it practiced the asserted claims. To the extent it presents different legal or fact questions in these two formats, it is certainly not the same level of difference that would be caused by the assertion of two unrelated technologies.

### ii. ClearOne Has Failed to Establish The Priority Date of The '186 Patent

The dispute as to whether the '186 Patent can claim priority to the '553 Patent is well documented. (R. 230 at ¶¶ 44–45, 50–70, 92–98; R. 771-1 at 27–29.) The '186 Patent adds new subject matter beyond that disclosed in the '553 Patent, such that it cannot claim priority to the '553 Patent. (R. 230 at ¶¶ 44–45, 50–70, 92–98; R. 771-1 at 27–29.) But even assuming *arguendo* that it could, the earliest priority date the '553 Patent can claim is its filing date of June 11, 2012, because this is when it first added the unsupported yet claimed concept of selecting more than one signal. (*See, e.g.*, R. 771-1 at 22).) Yet, ClearOne goes even further than that. Instead of suggesting a priority date coinciding with the filing date of the unsupporting provisional applications (June 11, 2011), ClearOne suggests both the '186 and '553 Patents should receive a priority date of August 18, 2010 – presumably based on the fact that this date appears on an "appendix" filed with one of the provisional applications. (*See, e.g.*, Ex. 5 at 3; R. 820-9 at ECF pages 24–40.) Indeed, ClearOne asserts this date as if it is an established fact. (R. 820 at 8.) ClearOne further suggests a conception date of "October, 2009" based on a much more thin version of the same "appendix." (*Id.*) But as revealed in his deposition, these are dates arbitrarily selected by Dr. Ashutosh Pandey that the facts (and his memory) do not support.[6]

Setting aside ClearOne's contested priority claim with the USPTO, if ClearOne wishes to

---

[6]  ClearOne represents that Dr. Pandey "testified that his invention was complete by 'mid-2010,' but Dr. Pandey was responding to a question asking when he had developed a definite and permanent *idea* of his invention. (Ex. 8 at 155:5–22.) Aside from the misrepresentation of this testimony, it completely undercuts ClearOne's argument for a conception date of October 2009.

swear behind the date of its filings, it is ClearOne's burden to establish an earlier date. *See, e.g.*, *Apator Miitors ApS v. Kamstrup A/S*, 887 F.3d 1293 (Fed. Cir. 2018) (affirming holding that inventor failed to prove entitlement to an earlier priority date.) There is strong evidence that ClearOne will not be able to satisfy this burden. First, the "invention disclosure" ClearOne represents as showing conception in October 2009 and reduction to practice by August 18, 2010 does not provide any indication that ClearOne had actually created a working embodiment of the claimed invention. Indeed, Tracy Bathurst (Pandey's co-inventor) testified that, at the time he left ClearOne, the solution they were working on performed AEC on a single beam after selection.

> Q. And again, did the BMA project that you were working on use per channel echo cancellation or echo cancellation after the selection?
>
> MS. MORROW:       Objection; form.
>
> A. So we explored both scenarios because of the cost factor. So we were looking could we create a -- could we create an algorithm that could take post beam or on a -- on a per beam basis. And I believe we -- at the time I left, the decision was made that we were not going to invoke the cost of putting an echo canceler on every beam and that it would be post the beamforming process.

(Ex. 6 (Bathurst Tr.) at 54:15 – 55:1.)

> A. I'm not sure that it settled by the time I left; in fact, I know it hadn't been settled. But we had something implemented where a beam was selected and then it was fed into the echo canceler. So the selection was ahead of the echo canceler.

(*Id*. at 56:7–11.) Mr. Bathurst left ClearOne in June of 2011 (*see* Ex. 7), and the solution he describes above would *not* have practiced the asserted claims, which all require per beam AEC prior to selection.

Second, Dr. Pandey, could not confirm when he wrote the "appendix," and several versions of it have been produced showing it expanding to its filed form over time. (*See, e.g.*, Ex. 8 at 62:10–64:13.) The metadata accompanying a version close to that which was filed in June, 2011,

9

indicates that it was not even created until March 18, 2011. (*Compare* Ex. 9, *with* Ex. 12.) Indeed, Dr. Pandey's status reports corroborates that he was working on this "invention disclosure" in March of 2011. (Ex. 10; Ex. 8 at 64:14–66:6.) Thus, the facts *already* available show that ClearOne cannot support its claimed priority date. And ClearOne does not even *attempt* to suggest a priority date that would affect the status of MH Acoustics' sale of its Solution to ShoreTel in 2008 as prior art.

### iii. ClearOne Misstates The Law Regarding The Applicability of The On-sale Bar to Third-Party Sales

The Federal Circuit and district courts have recognized that transactions just like the one between MH Acoustics and ShoreTel may trigger the on-sale bar. In *Special Devices, Inc. v. OEA, Inc.*, the patentee ordered products from a third-party manufacturer prior to the critical date. 270 F.3d 1353, 1354 (Fed. Cir. 2001). The manufacturer built and began delivering the units to the patentee prior to the critical date. *Id.* After the patentee sued the defendant for patent infringement, the district court granted summary judgment that the sales by the third-party manufacturer triggered the on-sale bar. *Id.* In affirming the application of the on-sale bar the Federal Circuit reasoned that the text of section 102(b) makes no exception for sales by third parties, noting the court had previously held that "even if a thief 'stole' the claimed invention and passed it on to an innocent buyer, the innocent buyer's subsequent offer to sell still triggered the plain language of the on-sale bar." *Id.* at 1355.

In *Abbott Labs. v. Geneva Pharms., Inc.*, an accused infringer asserted the on-sale bar on the basis that a non-party to the lawsuit made three sales of the patented compound to pharmaceutical companies other than the patentee prior to the critical date. 183 F.3d 1315, 1317 (Fed. Cir. 1999). These transactions did not even specify the specific crystalline form of the anhydrous compound sold, and the parties did not discover it was the patented compound until

they did their own independent testing years later. *Id.* The Northern District of Illinois (Judge Gottschall) held these sales triggered the on-sale bar and the Federal Circuit affirmed. *Id.* at 1316, 1319. On appeal, Abbott argued the on-sale bar could not apply because the purchasers did not know the subject matter of what they were buying. *Id.* at 1318. The Federal Circuit disagreed and affirmed the district court's invalidity finding. *Id.*

Similarly, in *Zacharin v. United States*, an Army engineer designed, created, and tested an invention for the Army on his own time. 213 F.3d 1366, 1368 (Fed. Cir. 2000). The Army later contracted with a third-party to manufacture the invention more than one year prior to the critical date. *Id.* Following a royalty dispute with the Army, the inventor obtained private counsel to prosecute the patent, and once the patent issued, the inventor brought an action against the United States seeking compensation for use of his patented invention. *Id.* at 1368–69. The trial court found that the contract between the Army and the third-party manufacturer was a commercial sale sufficient to trigger the on-sale bar and the Federal Circuit affirmed. *Id.* at 1370.

These cases not only establish that third-party sales may trigger the on-sale bar under 102(b), but that they do not have to be public as ClearOne seems to allege. In each of *Special Devices*, *Abbott*, and *Zacharin,* sophisticated parties made an invalidating sale pursuant to a commercial transaction to which the public was not privy. In similar fashion, MH Acoustics sold the invalidating Solution to ShoreTel pursuant to a commercial transaction that was no more secret than the invalidating sales in *Special Devices*, *Abbott*, or *Zacharin*. Even if MH Acoustics' sale was subject to strictly followed non-disclosure agreement, it would not matter. In *Abbott*, sophisticated drug manufacturers purchased the anticipatory material without even knowing what they purchased. *Id.* at 1317. If the purchasers of the products did not know the contents of the invalidating sale, surely *the public* was not aware of what was sold. Nevertheless, the Federal

Circuit still held that the third-party sale triggered the on-sale bar. *Id.* at 1318.

In opposition, ClearOne mistakenly cites prior dicta of the Federal Circuit as conclusively establishing that third-party sales implicate the public use prong rather than the on-sale bar. Contrary to ClearOne's argument, *ResQNet* and *Caveney* did not so hold.

In *In re Caveney*, similar to the aforementioned cases, the Federal Circuit held that a prior sale by a third party barred patentability. 761 F.2d 671 (Fed. Cir. 1985). In *Caveney*, an applicant filed an interference against a competitor's patent, and the competitor then petitioned for a public use proceeding with respect to the applicant's claimed invention. *Id.* at 673. The Patent Office issued a decision holding the applicant's invention anticipated because it was previously offered for sale by a subsidiary of the competitor. *Id.* The decision was affirmed (*id.* at 674) and the applicant appealed, in part, on the basis that an exception to the on sale bar exists where the sale is kept secret. *Id.* at 675. The Federal Circuit rejected this argument and affirmed. In so concluding, the court did note an exception where a *patented method* is kept secret and remains secret after sale of an *unpatented product* made by the method where the sale is by someone other than the patentee.[7] *Id.* (emphasis added). The court indicated in a footnote that such a sale would implicate the public use bar rather than the on-sale bar. *Id.* The court noted this public use exception did not apply in *Caveney*, however, because the claimed invention had been disclosed to the purchaser. *Id.* In any event, this dicta is irrelevant because MH Acoustics did reveal its method to ShoreTel and ECI. (Ex. 11 at 78:17–79:9.)

---

[7]  *Caveney* references *W.L. Gore* and *D.L. Auld* for this exception – both of which ClearOne reference in its opposition. *W.L Gore* does hold that third-party sale of an unpatented product by a patented method which is kept secret does not trigger the on-sale bar. *W.L. Gore & Assoc., Inc. v. Garlock*, 721 F.2d 1540 (Fed. Cir. 1983). Like *Caveney*, however, *D.L. Auld* actually held the sale at issue to trigger the on-sale bar. *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144 (Fed. Cir. 1983). None of these cases broadly hold that secret sales by third parties can never trigger the on-sale bar as ClearOne seems to represent.

Later, in *ResQNet.com, Inc. v. Lansa, Inc.*, the defendant claimed that an earlier version of its allegedly infringing product was for sale prior to the critical date, and that this earlier version triggered the on-sale bar. 594 F.3d 860, 866 (Fed. Cir. 2010). The district court found that this earlier version sold by the defendant did not include all of the limitations of the claimed invention, and therefore was not an invaliding reference. *Id*. at 866–67. Finding no clear error, the Federal Circuit affirmed. In dicta, it cited *Caveney* for the notion that third-party sales implicate the public use bar rather than the on sale bar. *Id.*

In the cases cited by ClearOne as following the "rule" of *ResQNet* and *Caveney*, the district courts unfortunately appear to have blindly followed the soundbite of *ResQNet* and *Caveney* as opposed to their holdings. In contrast, district courts that carefully considered *ResQNet* and its predecessors have recognized their colleagues error. *See, e.g., FMC Techs., Inc. v. Onesubsea IP UK Ltd.*, 412 F. Supp. 3d 706, 712–13 (S.D. Tex. 2019) ("The statement in *ResQNet* regarding the 'public use' provision of § 102(a)(1), like the statement in *Caveney*'s footnote was *dicta*. . . . The Court has carefully considered the parties' arguments, the language of § 102, and the holdings by the Federal Circuit. The Court concludes, as the Federal Circuit has repeatedly, that the on-sale bar is not limited to sales or offers for sale by the inventor or one under his control, but may result from sales or offers for sale by an unrelated third party.") Thus, ClearOne simply misstates the law – the 2007-08 transaction between MH Acoustics and Shoretel indeed triggers the on-sale bar.

### D. The Tasks ClearOne Equates to "Prejudice" Must Be Done Regardless of Whether The Court Grants This Motion, Not Because of It

Due to the unique scenario whereby the '553 Case trails this one yet deals with very similar asserted claims, the traditional arguments as to prejudice are unavailing. In fact, granting the Motion leads to the most efficient result for both Parties and the Court, and each of the prejudices alleged by ClearOne are either manufactured and unrealistic, or impending regardless of the

outcome of this Motion.

As discussed above, ClearOne's argument that the MHA Solution constitutes two separate prior art grounds is without merit. Its manufactured prejudice about lost resources based on this assumption is therefore similarly meritless. ClearOne's next argument that it will be prejudiced by the re-opening of fact and expert discovery necessitated by this amendment is equally meritless. Here, ClearOne relies on statements by Shure about the differences between the '553 and '186 Patents. (R. 820-8.) Shure made these statements when requesting additional discovery to address enablement and written description defenses, where the significant differences in the specification, figures and unasserted claims are relevant. In contrast, Shure's present motion deals with prior art invalidity that focuses directly on the asserted claims, which are highly similar. As explained above, the Parties will undergo all discovery efforts that they would undergo with the '186 Patent during the '553 Case. Any discovery related to the incremental "last mic on limitation" of the '186 Patent could be seamlessly conducted and would add little, if any, additional effort. ClearOne will be able to present any admissible evidence from this discovery with respect to the '186 Patent at the consolidated trial, and it provides no factual basis to disagree. ClearOne's argument that this amendment will delay the case fails for the same reason. The schedule of the '553 Case will control.

ClearOne next suggests that "additional claim terms unique to the '186 Patent may need to be construed" (R. 820 at 12, 14), but provides absolutely no explanation to support this. Instead, ClearOne tosses up a few terms that have already been extensively litigated in the course of this case, and which the Court has already commented on, without providing any rationale as to how assertion of the MHA Solution to the asserted '186 Patent claims would call these terms back into question. (*See, e.g.*, R. 508 at 19–22; R. 520 at 17–20; R. 535 at 6–7; R. 613 at 13–14.) The Parties'

positions on "inhibit" and "while only the far end is active" are as clear as they are likely to get, and assertion of the MHA Solution should not be used as a basis to change such positions. Additionally, construction of "information" is unnecessary. Beyond the fact that the parties have extensively argued what "information" means in the context of the far end (*id.*), ClearOne has failed to identify anything in the MHA Solution that calls into question the meaning of this common term.

In sum, and unlike the situation with ClearOne's co-pending Motion to Amend contentions where it seeks new expert discovery that has no relation to the '553 Case, ClearOne has failed to identify any true prejudice here, or any reason that Shure's Motion does anything other than work toward streamlining prior art defenses for trial.

## IV.  Conclusion

Because this amendment was made diligently, will best promote the interests of judicial economy, and will cause no undue prejudice to ClearOne, Shure respectfully request the Court grant its Motion for Leave to Amend its Invalidity and Unenforceability Contentions, and deem the version submitted with its Motion as active in this case.

Dated:  June 22, 2020        Respectfully Submitted,

By:  /s/  Mike R. Turner      
     One of the Attorneys for Defendant,
     SHURE INCORPORATED

     Bradley F. Rademaker
     Mike R. Turner
     Tanvi Patel
     Charles K. Shih
     Andrew Wood
     **NEAL, GERBER & EISENBERG LLP**
     Two North LaSalle Street
     Suite 1700
     Chicago, Illinois  60602
     Telephone:  (312) 269-8000
     Email:  Shure_ClearOneLit@nge.com

     Vladimir I. Arezina
     VIA Legal, LLC
     1237 W. Madison St.
     Chicago, IL  60607
     (312) 574-3050
     vladimir@arezina.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on June 22, 2020, a copy of the foregoing document was filed electronically through the Court's Electronic Case Filing System, and service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issued through the Court's ECF System, on this date.

/s/ Andrew C. Wood
***Counsel for Plaintiff / CounterDefendant***
***Shure Incorporated***