**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

SHURE INCORPORATED,
    Plaintiff,

    v.

CLEARONE, INC.,
    Defendant.

Case No.: 17-cv-03078

Judge Edmond E. Chang

Magistrate Judge Maria Valdez

CLEARONE, INC.,
    Counter-Plaintiff,

    v.

SHURE INCORPORATED,
    Counter-Defendant.

**SHURE'S COMBINED OPPOSITION TO CLEARONE'S MOTION
FOR SUMMARY JUDGMENT ON INFRINGEMENT
AND CROSS-MOTION FOR SUMMARY JUDGMENT ON CERTAIN ISSUES
FOR WHICH CLEARONE BEARS THE BURDEN OF PROOF**

i

## <u>TABLE OF CONTENTS</u>

Table of Authorities ................................................................................................ vi

Table of Abbreviations ......................................................................................... xiii

I.    Opening Statement ............................................................................................ 1

II.   Shure's MXA910-A Does Not Infringe the '806 Patent .................................. 2

    A.    **CROSS MOTION**: Shure's Cross MSJ of Non-Infringement by the 910-A Should Be Granted Based on the Court's Claim Constructions ...................... 2

        1.    There can be no literal infringement by the 910-A ................................... 3

        2.    ClearOne is estopped from arguing the 910-A practices limitation 5 under the Doctrine of Equivalents (DOE) ............................................. 3

        3.    No direct infringement based on incorrect installation ............................. 4

    B.    ClearOne's Motion as to Infringement by the 910-A is Based on Legal Error ......................................................................................................... 5

        1.    The Court's construction unambiguously confirmed that BFMA is the array of microphones ......................................................................... 6

        2.    The Court's analysis of Limitation 5 confirms that the claimed BFMA refers to microphones .................................................................. 6

        3.    ClearOne's reliance on the Court's preliminary analysis of Limitation 2 is misplaced ...................................................................... 7

    C.    Infringement Cannot Be Based on ClearOne's Attempt to Rewrite the Claims ......................................................................................................... 8

        1.    ClearOne's infringement argument ignores explicit claim language ........ 8

        2.    ClearOne's rewrite of limitation 5 does not establish infringement ....... 10

    D.    **CROSS MOTION**: ClearOne's Claim for Induced Infringement by the MXA910-A Should be Dismissed as a Matter of Law ....................................... 12

    E.    **CROSS MOTION**: Should the Court Consider the MXA910-US, It Should Find Non-Infringement as a Matter of Law ........................................... 14

III.  ClearOne's Motion for Summary Judgment of Infringement By Shure's MXA910 Should be Denied Due to Material Factual Disputes as to the Infringement ................. 15

A.    Disputes Exist as to ClearOne's Application of the Plain Meaning of "Ceiling Tile" in the Context of Patent and the Accused Devices ...................... 15

B.    ClearOne's Failure to Address the Dispute as to Whether It Must Identify a Ceiling Tile Distinct from a BFMA Precludes Summary Judgment ............... 17

C.    ClearOne's Motion cannot be Granted Based on Its DOE Contentions ............. 18

D.    **CROSS MOTION**: ClearOne's Claim for Induced Infringement by the MXA910 Should Be Dismissed as a Matter of Law ........................................... 19

IV.   **CROSS MOTION**: ClearOne's Claim for Willful Infringement of the '806 Patent Should Be Dismissed as a Matter of Law ........................................... 21

A.    ClearOne's Willfulness Allegations are Insufficient to Support Its Motion ........ 21

B.    The Evidence Also Shows That No Reasonable Jury Could Find Shure Acted Willfully ...................................................................................... 23

C.    The *Read* Factors Support Summary Judgment of No Willfulness and No Enhanced Damages ........................................................................... 26

V.    **CROSS MOTION**: The Court Should Grant Summary Judgment Denying ClearOne's Joint Enterprise Theory ........................................................ 29

A.    No Reasonable Jury Could Find Direct Infringement by the Alleged Joint Enterprise ...................................................................................... 30

B.    ClearOne's Joint Enterprise Theory also Fails as an Indirect Infringement Allegation ...................................................................................... 33

C.    ClearOne's Joint Enterprise Theory is Factually Unsupported .......................... 34

VI.   **CROSS MOTION**: The MXA910's Substantial Non-Infringing Uses Require Dismissal of all Contributory Infringement Theories from this Case ............................ 36

VII.  Significant Questions of Fact Prevent a Summary Determination that Shure Infringes the '186 Patent Under Each of ClearOne's Various Theories ........................ 39

A.    ClearOne's '186 Patent Infringement Theories are Complex and Reliant on Factual Findings Far Beyond Whether the Claims are Practiced ................. 39

B.    Numerous Material Questions of Fact Remain as to Whether the Accused Combinations Practice any Asserted Claims ........................................ 40

1.    ClearOne cannot convert questions of fact involving plain and ordinary terms into questions of law ...................................................... 41

2. On the evidence available, a reasonable jury could find that the MXA910's beams are not "fixed" under the Court's construction.......... 42

3. There is a material question of fact as to whether any of the accused DSPs "select" given the parameters set by ClearOne's own technical expert ...................................................................... 43

4. Whether the "Last Mic On" feature practices limitation 6 is a heavily disputed question of fact ............................................ 45

C. The Jury Should be Allowed to Hear the Evidence Before Making Any Determination as to Alleged Inducement ........................................... 47

VIII. **<u>CROSS MOTION</u>**: ClearOne's Bid for Willful Infringement of the '186 Patent Should be Denied as a Matter of Law ................................................................ 50

A. Shure Did Not Copy Anything from ClearOne in Designing the MXA910........ 50

B. Shure Obtained Opinions of Counsel that Its Accused Products Do Not Infringe the '186 Patent, and that the Patent is Invalid......................... 52

C. Shure has, at All Times, had a Strong Basis to Believe It Will Prevail in this Lawsuit........................................................................... 53

IX. **<u>CROSS MOTION</u>**: The Court Should Grant Summary Judgment that the MXA910 with AutoFocus Does Not Infringe the '186 Patent, Regardless of Whether It Is Connected to a DSP ................................................................ 56

X. **<u>CROSS MOTION</u>**: ClearOne is not Entitled to Lost Profits as a Matter of Law .......... 58

A. ClearOne is not Entitled to Lost Profits Under Panduit..................... 59

1. ClearOne cannot show the absence of non-infringing alternatives for the BMA as required for lost profit damages under *Panduit* ............ 59

2. ClearOne cannot show the requisite capacity required by *Panduit* ........ 64

B. ClearOne is not Entitled to Lost Profits Under *Mor-Flo* .................... 66

1. ClearOne cannot satisfy the relevant *Panduit* factors............................ 66

2. ClearOne fails to provide reliable market share data as required for Lost Profits under *Mor-Flo*........................................................ 66

C. ClearOne is Not Entitled to Lost Profits for Converge Pro Sales...................... 67

1. ClearOne is not entitled to Lost Profits based on convoyed sales .......... 67

2.      The BMA Products alone allegedly practice the claims of the '186 and '806 Patent .......................................................................... 70

XI.     Conclusion ............................................................................................................... 70

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ACCO Brands Inc. v. ABA Locks Mfr. Co.,*
  501 F.3d 1307 (Fed. Cir. 2007)..................................................................4, 5, 13

*Akamai Techs, Inc. v. Limelight Networks, Inc.,*
  786 F.3d 899 (Fed. Cir. 2015)........................................................................33, 34

*Akamai Techs, Inc. v. Limelight Networks, Inc.,*
  797 F.3d 1020 (Fed. Cir. 2015) (*en banc*) ...............................................31, 33, 34

*Am. Seating Co. v. USSC Group, Inc.,*
  514 F3d 1262 (Fed Cir. 2008)..................................................................................70

*Bai v. L&L Wings, Inc.,*
  160 F.3d 1350 (Fed. Cir. 1998).................................................................................3

*Barry v. Medtronic, Inc.,*
  250 F. Supp. 3d 107 (E.D. Tex. 2017).....................................................................28

*Bioverativ Inc. v. CSL Behring LLC,*
  17-cv-914, 2020 U.S. Dist. LEXIS 49602 (D. Del. Mar. 23, 2020)...........24, 52, 70

*Braun Inc. v. Dynamics Corp. of Am.,*
  975 F.2d 815 (Fed. Cir. 1992)..........................................................................22, 52

*Cascades Computer Innovation, LLC v. Samsung Elecs. Co.,*
  77 F. Supp. 3d 756 (N.D. Ill. 2015) ..................................................................12, 13

*Cook Biotech, Inc. v. Acell, Inc.,*
  460 F.3d 1365 (Fed. Cir. 2006)...............................................................................39

*Creagri, Inc. v. Pinnaclife, Inc.,*
  11-cv-6635, 2013 U.S. Dist. LEXIS 179253 (N.D. Cal. 2013).................................6

*Creative Compounds, LLC v. Starmark Labs., Inc.,*
  07-cv-22814, 2010 U.S. Dist. LEXIS 69795 (S.D. Fla. July 13, 2010) ...........22, 55

*Deere & Co. v. Int'l Harvester Co.*,
    76-cv-20, 1982 U.S. Dist. LEXIS 10155 (C.D. Ill. Oct. 8, 1982) ...........................................65

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006) (*en banc*) ..............................................................48

*Ecolab, Inc. v. FMC Corp.*,
    569 F.3d 1335 (Fed. Cir. 2009)...............................................................................49

*Eko Brands, LLC v. Adrian Rivera Maynez Enters.*,
    946 F.3d 1367 (Fed. Cir. 2020)........................................................................21, 24

*Eon Corp. IP Holdings v. Silver Spring Networks, Inc.*,
    815 F.3d 1314 (Fed. Cir. 2016)..............................................................................16

*Ericsson, Inc. v. D-Link Sys.*,
    773 F.3d 1201 (Fed. Cir. 2014)..............................................................................32

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
    93 F.3d 1572 (Fed. Cir. 1996)..................................................................................8

*Fractus, S.A. v. Samsung*,
    09-cv-203, 2011 U.S. Dist. LEXIS 154697 (E.D. Tex. Apr. 29, 2011)...................................64

*Fujifilm Corp. v. Benun*,
    05-cv-1863, 2008 U.S. Dist. LEXIS 49719 (D.N.J. June 30, 2008).......................................49

*Gargoyles, Inc. v. U.S.*,
    113 F.3d 1572 (Fed. Cir. 1997)..............................................................................65

*Georgetown Rail Equip. Co. v. Holland L.P.*,
    13-cv-366, 2016 U.S. Dist. LEXIS 78365 (E.D. Tex. Jun. 16, 2016) ....................................29

*Go Med. Indus. Pty, Ltd. v. Inmed Corp.*,
    300 F. Supp. 2d 1297 (N.D. Ga. 2003) .................................................................64

*Graco, Inc. v. Binks Mfg. Co.*,
    60 F.3d 785 (Fed. Cir. 1995)..................................................................................25

*Grecia v. Walgreen Co.*,
   18-cv-1848, 2018 U.S. Dist. LEXIS 224790 (N.D. Ill. 2018) .................................... 31, 32, 33

*Grunenthal GmbH v. Alkem Labs, Ltd.*,
   919 F.3d 1333 (Fed. Cir. 2019) .................................................................................. 37

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016) ......................................................................................... 21, 50

*Innovention Toys, Inc. v. MGA Entm't, Inc.*,
   07-cv-6510, 2011 U.S. Dist. LEXIS 163631 (E.D. La. February 3, 2011) ........................... 64

*Intellectual Ventures I LLC v. Symantec Corp.*,
   234 F. Supp. 3d 601 (D. Del. 2017) ................................................................................ 54

*J&M Indus., Inc. v. Raven Indus., Inc.*,
   16-cv-2723, 2020 U.S. Dist. LEXIS 76881 (D. Kan. May 1, 2020) ......................... 23, 53, 54

*Judkins v. HT Window Fashions Corp.*,
   704 F. Supp. 470 (W.D. Penn. 2010) ............................................................................. 29

*Kearns v. Chrysler Corp.*,
   32 F.3d 1541 (Fed. Cir. 1991) ....................................................................................... 64

*Kolcraft Enters. v. Chicco USA, Inc.*,
   09-cv-3339, 2019 U.S. Dist. LEXIS 151958 (N.D. Ill. Sep. 6, 2019) ................................... 22

*Kranos IP Corp. v. Riddell, Inc.*,
   17-cv-6802, 2019 U.S. Dist. LEXIS 69311 (N.D. Ill. Apr. 24, 2019) ................................... 16

*Limelight Networks Inc. v. Akamai Techs, Inc.*,
   134 S. Ct. 2111 (2014) .................................................................................................. 47

*LoggerHead Tools, LLC v. Sears Holding Corp.*,
   328 F. Supp. 3d 885 (N.D. Ill. 2018) ............................................................................... 2

*Lyda v. CBS Corp.*,
   38 F.3d 1331 (Fed. Cir. 2016) ....................................................................................... 31

*Manville Sales Corp. v. Paramount Sys.*,
  917 F.2d 544 (Fed. Cir. 1990)................................................................................48

*Mars, Inc. v. Coin Acceptors, Inc.*,
  527 F.3d 1359 (Fed. Cir. 2008)..............................................................................58

*Masimo Corp. v. Philips Elecs. N. Am. Corp.*,
  09-cv-80, 2013 U.S. Dist. LEXIS 70745 (D. Del. May 20, 2013) ..........................64

*Mass. Inst. of Tech. v. Shire Pharms., Inc.*,
  839 F.3d 1111 (Fed. Cir. 2016)..............................................................................50

*Medtronic Sofamore Danek USA, Inc. v. NuVasive, Inc.*,
  136 S. Ct. 893 (2016).............................................................................................68

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
  851 F.3d 1275 (Fed. Cir. 2017)..............................................................................59

*Micro Chem., Inc. v. Lextron, Inc.*,
  318 F.3d 1119 (Fed. Cir. 2003)..............................................................................67

*Nat'l. Presto Indus. v. West Bend Co.*,
  76 F.3d 1185 (Fed. Cir. 1996)................................................................................49

*Nox Med. Ehf v. Natus Neurology Inc.*,
  15-cv-709, 2018 U.S. Dist. LEXIS 206844 (D. Del. Dec. 7, 2018) ........................29

*Oak Indus. v. Zenith Elecs.*,
  697 F. Supp. 988 (N.D. Ill. 1988) ..........................................................................13

*Oiness v. Walgreen Co.*,
  88 F.3d 1025 (Fed. Cir. 1996)...........................................................................64, 67

*Omega Patents, LLC v. CalAmp Corp.*,
  920 F.3d 1337 (Fed. Cir. 2019)..............................................................................52

*Ormco Corp. v. Align Tech., Inc.*,
  463 F.3d 1299 (Fed. Cir. 2006)..............................................................................32

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
   575 F.2d 1152 (6th Cir. 1978) ............................................................................58

*Power Integrations Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   09-cv-5235, 2017 U.S. Dist. LEXIS 5561 (N.D. Cal. Jan. 13, 2017).....................27

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
   875 F.3d 1369 (Fed. Cir. 2017)......................................................................59, 63

*R2 Med. Sys., Inc. v. Katecho, Inc.*,
   931 F. Supp. 1397 (N.D. Ill. 1996) ......................................................................14

*Read Corp. v. Portec, Inc.*,
   970 F.2d 816 (Fed. Cir. 1992)..............................................................................27

*Ricoh Co., Ltd. v. Quanta Comput. Inc.*,
   550 F.3d 1325 (Fed. Cir. 2008).............................................................................32

*Rite-Hite Corp. v. Kelley Co.*,
   56 F.3d 1538 (Fed. Cir. 1995)........................................................................56, 68

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc*,
   242 F.3d 1337 (Fed. Cir. 2001)..............................................................................4

*Scott v. Harris*,
   550 U.S. 372 (2007)..............................................................................................15

*Scholle Corp. v. Rapak*,
   13-cv-3976, 2014 U.S. Dist. LEXIS 100830 (N.D. Ill. Jul. 14, 2014) ...................22

*Sensonics, Inc. v. Aerosonic Corp.*,
   81 F.3d 1566 (Fed. Cir. 1996)...............................................................................26

*Sextant Avionique S.A. v. Analog Devices Inc.*,
   172 F.3d 817 (Fed. Cir. 1999)................................................................................4

*Slimfold Mfg. Co. v. Kinkead Indus.*,
   932 F.2d 1453 (Fed. Cir. 1991)..............................................................................64

*Southwall Techs., Inc. v. Cardinal IG Co.*,
54 F.3d 1570 (Fed. Cir. 1995)..............................................................................10

*SRI Int'l, Inc. v. Cisco Sys.*,
930 F.3d 1295 (Fed. Cir. 2019).......................................................24, 29, 50, 52

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
883 F.2d 1573 (Fed. Cir. 1989).) ...............................................................58, 65

*Studiengesellschaft Kohle, m.b.H. v. Dart Industries, Inc.*,
862 F.2d 1564 (Fed. Cir. 1988)..............................................................................25

*Sulzer Textil A.G. v. Picanol N.V.*,
358 F.3d 1356 (Fed. Cir. 2004)..............................................................................5

*Takeda Pharms. U.S.A. Inc. v. West-Ward Pharm Corp.*,
785 F.3d 625 (Fed. Cir. 2015).........................................................................13, 21

*Taruus IP v. DaimlerChrysler Corp.*,
726 F.3d 1306 (Fed. Cir. 2013)..............................................................................8

*Toshiba Corp. v. Imation Corp.*,
681 F.3d 1358 (Fed. Cir. 2012)..............................................................................37

*Transmatic, Inc. v. Gulton Indus., Inc.*
53 F.3d 1270 (Fed. Cir. 1995)..................................................................25, 26, 52

*United States Gypsum Co. v. Lafarge N. Am. Inc.*,
670 F. Supp. 2d 748 (N.D. Ill. 2009) ...............................................................59

*Universal Elecs. Inc. v. Roku, Inc..*,
18-cv-1580, 2019 U.S. Dist. LEXIS 74623 (C.D. Cal. Mar. 5, 2019)..............................29, 54

*US Surgical Corp. v. Ethicon, Inc.*,
103 F.3d 1554 (Fed. Cir. 1997)..................................................................5, 6

*Vaporstream, Inc. v. Snap Inc.*,
17-cv-220, 2020 U.S. Dist. LEXIS 5642 (C.D. Cal. Jan. 13, 2020)......................................23

*Vas-Cath Inc. v. Mahurkar*,
935 F.2d 1555 (Fed. Cir. 1991).........................................................................................12

*Velocity Patent LLC v. FCA US LLC*,
319 F. Supp. 3d. 950 (N.D. Ill. 2018)...............................................................................54

*Vita-Mix Corp. v. Basic Holding, Inc.*,
581 F.3d 1317 (Fed. Cir. 2009).............................................................................13, 14, 37

*Wahpeton Canvas Co. v. Frontier, Inc.*,
860 F.2d 1546 (Fed. Cir. 1989)...........................................................................................3

*Warner-Jenkinson Co. v. Hilton Davis Chem.*,
117 S. Ct. 1040 (1997)........................................................................................................4

*Warner-Lambert Co. v. Apotex Corp.*,
316 F.3d 1348 (Fed. Cir. 2003).............................................................................12, 14, 20

*Warsaw Orthopedic, Inc. v. NuVasive, Inc.*,
778 F.3d 1365 (Fed. Cir. 2015)...................................................................................68, 69

*Water Techs. Corp. v. Calco, Ltd.*,
85 F.2d 660 (Fed. Cir. 1988).............................................................................................49

*Weber-Stephen Prods. LLC v. Sears Holding Corp.*,
13-cv-1686, 2015 U.S. Dist. LEXIS 170989 (N.D. Ill. Dec. 22, 2015)...........................40-41

*Wechsler v. Macke Int'l Trade, Inc.*,
486 F.3d 1286 (Fed. Cir. 2007).........................................................................................58

*Westvaco Corp. v. Int'l Paper Co.*,
991 F.2d 735 (Fed. Cir. 1993)...........................................................................................22

35 U.S.C. § 271 .................................................................................................. passim

35 U.S.C. § 298 ...........................................................................................................52

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| **910-A** | Shure's MXA910-A Ceiling Array Microphone |
| **AVI** | AVI Systems, Inc. |
| **BFMA** | Beamforming microphone array |
| **BMA** | ClearOne's Beamforming Microphone Array |
| **CMA** | ClearOne's Ceiling Microphone Array |
| **CTBFMA** | Ceiling tile beamforming microphone array |
| **DOE** | Doctrine of Equivalents |
| **Ex.** | Shure Exhibits |
| **IAEC** | Installed Audio Conferencing Market |
| **MSJ** | Motion for Summary Judgment |
| **RSOF** | Shure's Response to ClearOne's Rule 56.1 Statement of Facts, filed concurrently herewith |
| **SOF** | Shure's Rule 56.1 Statement of Facts[1] |
| **C1-Ex.** | ClearOne's Exhibits |

---

[1] Cites to SOF Nos. 1-80 are to Shure's Statement in support of its Opening Motion for Summary Judgment (R. 855). Cites to SOF Nos. 81-220 are to Shure's Statement in support of this Cross-Motion and Opposition to ClearOne's Opening Motion.

## I.      Opening Statement

ClearOne's tale of alleged invention and success, and of Shure's supposed "late entry" to the audio conferencing market is intended to give purpose to its infringement claims, but is both irrelevant and inaccurate. The "statement of *facts*" that ClearOne submits as undisputed in its Rule 56.1 Statement <u>are</u> disputed, and in many instances are not facts at all, but instead are heavily disputed characterizations or argument. *See generally*, RSOF.[2] The '186 Patent claims known concepts combined in known manners, and was not even <u>*filed*</u> until after Shure fully developed and announced the sale of its MXA910. The '806 Patent claims simply are not practiced by manufacture, sale or use of the MXA910, or the redesigned product, MXA910-A ("910-A"), and ClearOne's arguments defy the clear language of the patent claims. The successes of Shure's MXA910, and the recent market failures of ClearOne, are impossible to dispute. But these two phenomena are mostly unconnected—the MXA910 successes stem from features not enabled by ClearOne's patents or by its products, and the evidence showing reasons for ClearOne's failures unrelated to Shure could fill a separate brief. But Shure's purpose here is merely to show that ClearOne's motions for summary judgment of infringement as to any of ClearOne's allegations is inappropriate, and that certain of ClearOne's theories should be rejected as a matter of law. Specifically, Shure cross-moves for summary judgment that:

1. Shure's 910-A (nor the 910-US, if considered) does not infringe the '806 Patent;

2. Shure has not induced infringement of the '806 Patent by either the MXA910 or the 910-A;

3. Shure's MXA910 does not infringe the '186 Patent when using version 4.x firmware;

4. Shure is not now, and has never been, in a joint enterprise with either of Biamp or QSC;

---

[2] "RSOF" is used in citations throughout this brief to refer to Shure's Response to ClearOne's Rule 56.1 Statement of Facts (R. 862) submitted with its Opening Brief (R. 863). A key to all such abbreviations used herein is included in the Table on page xiv above.

5. Shure has never willfully or contributorily infringed either the '806 or '186 Patent; and

6. Any possible damages should not extend to ClearOne's non-practicing and unnecessary Converge Pro DSP.

Shure also responds to explain – in addition to the reasons set forth in Shure's cross-motions – why all aspects of ClearOne's Opening Motion for Summary Judgment, should be denied.

## II. Shure's MXA910-A Does Not Infringe the '806 Patent

In light of the Court's claim construction of "beamforming microphone array" (BFMA) and "drop space," there can be no dispute that the 910-A does not practice at least Limitation 5 of the '806 Patent claims. The 910-A product was purposefully designed to avoid Limitation 5 by placing the entire BFMA (*i.e.*, the plurality of microphones) below the drop space. SOF, ¶82. ClearOne contends that having the array of microphones below the drop space is not enough, and that the BFMA can be something other than what the Court has defined. ClearOne's contention is contrary to the law and warrants summary judgment in Shure's favor. Even when the facts are viewed in light most favorable to ClearOne, no reasonable jury could find infringement in light of the Court's constructions. *LoggerHead Tools, LLC v. Sears Holding Corp.*, 328 F. Supp. 3d 885 (N.D. Ill. 2018). Accordingly, this Court should grant summary judgment of non-infringement as to the 910-A, and deny ClearOne's corresponding motion.

### A. <u>CROSS MOTION</u>: Shure's Cross MSJ of Non-Infringement by the 910-A Should Be Granted Based on the Court's Claim Constructions

Applying the Court's claim constructions, the 910-A does not practice at least Limitation 5 of the '806 Patent, which requires that "said [BFMA] is coupled to the back side of said ceiling tile*, and all or part of said [BFMA] is in the drop space of the drop ceiling*." Ex. 2. This Court construed the BFMA to be "a plurality of microphones in predetermined locations that produce audio signals to be used to form a directional pickup pattern." R. 550 at 20. The Court further construed "drop space" to be above "the plane defined by the drop ceiling support beams." *Id*. at

2

22. Therefore, to infringe, a device must be configured so that "all or part of said [*plurality of microphones* in predetermined locations that produce audio signals to be used to form a directional pickup pattern] are above the [the plane defined by the drop ceiling support beams]."

### 1. There can be no literal infringement by the 910-A

It is uncontested that when the 910-A is installed as its designed to be, the "plurality of microphones" are entirely below the "drop space." SOF, ¶84; Ex. 235 at ¶8; Ex. 247 at ¶27. To accomplish this, the 910-A includes an outer flange to engage with the ceiling grid T-bars so the majority of the device hangs below the T-bars and into the room. SOF, ¶84; Ex. 247 at ¶26-28.[3] The plurality of microphones are mounted on a substrate that likewise lies below the T-bars (below the "drop space") and the upper most surface of the microphones are at least 6.0 mm *below* the drop space. *Id.* Based on the Court's constructions, it is indisputable that the 910-A does not practice Limitation 5 of the claims, and thus cannot literally infringe the '806 Patent as a matter of law. *See Bai v. L&L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998). Since no reasonable jury guided by this Court's claim constructions could find otherwise, summary judgment of no literal infringement should be granted.[4]

### 2. ClearOne is estopped from arguing the 910-A practices Limitation 5 under the Doctrine of Equivalents (DOE)

Given the claim construction, there can be no infringement under the doctrine of equivalents (DOE). It is black letter law that the DOE cannot be used to do away with a claim limitation. *Warner-Jenkinson Co. v. Hilton Davis Chem.*, 117 S. Ct. 1040, 1049 (1997). Yet here,

---

[3] The 910-A design conforms with ClearOne's own description of a non-practicing design in its proposed order for the preliminary injunction. R. 300 at 2 (requesting that the Court enjoin that which "lies flush with the surrounding drop ceiling," and underline permit products in which "the bottom side of the beamforming microphone (the side facing the room interior) underline does not lie flush with the surrounding drop ceiling,"

[4] Since the independent claims are not infringed, each of the dependent claims are also not infringed - Claims 4-6, 10-12, 17-19. *Wahpeton Canvas Co. v. Frontier, Inc.*, 860 F.2d 1546, 1552 (Fed. Cir. 1989).

that would be the exact result of accepting ClearOne's contention that Limitation 5 could purportedly be satisfied by a microphone array that is "so close thereto," (*but still entirely below*) the drop space. Ex. 257 at 129; Ex. 247 at ¶¶52-54. Further, during prosecution, and indeed to gain allowance of the '806 Patent, ClearOne added that "all or part" of the BFMA ***must*** be in the drop space, to distinguish the claimed invention over prior art showing microphones only *below* the drop space. SOF, ¶¶23-24, 95-97; Ex. 225 at ¶44-47, 81-94. Thus, ClearOne cannot now claim, through DOE, what was explicitly surrendered to gain allowance of the '806 Patent. *See, e.g., Sextant Avionique S.A. v. Analog Devices Inc.*, 172 F.3d 817, 826 (Fed. Cir. 1999) (estopping patentee from claiming, through DOE, matter surrendered during prosecution); *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1346 (Fed. Cir. 2001) ("[B]y defining the claim in a way that clearly excluded certain subject matter, the patent implicitly disclaimed the excluded subject matter and thereby barred the patentee from asserting infringement under the [DOE]."). Thus, the 910-A, when installed correctly, does not infringe literally or under the DOE.

### 3. There can be no direct infringement based on incorrect installation

The undisputed facts further confirm that, as a matter of law, there can be no liability based on any alleged *possible* incorrect installation of the 910-A in 15/16" ceiling grids. "[T]o prove direct infringement, [ClearOne] must either point to specific instances of direct infringement [by Shure] or show that the [910-A] necessarily infringes the patent in suit," but ClearOne does neither. *See ACCO Brands Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007). ClearOne admits that Shure instructs correct installation of the 910-A (SOF, ¶85), yet <u>speculates</u> that Shure's customers ("professional installers, AV integrators and consultants,") may install the 910-A contrary to Shure's instructions. Ex. 246 at ¶37.[5] To the contrary, installation of the 910-A in the

---

[5] ClearOne has no basis for this speculation because its expert is unqualified to support this argument (SOF, ¶94), and there is no supporting evidence in the record. *See* RSOF, ¶¶46, 71; *c.f.,* SOF ¶92.

15/16" grid is simple (Ex. 247 at ¶¶72-76), and proven (SOF, ¶89). The <u>single</u> instance of a *temporary* incorrect installation in the record is by a third party –not Shure –and thus is insufficient. SOF, ¶¶90-91. Further, it is well-settled that where a device is capable of being used in both an infringing *and* non-infringing manner, the mere manufacture or sale of that device is insufficient to demonstrate direct infringement by the maker or seller. *See ACCO*, 501 F.3d at 1313. Thus, because Shure does not install the 910-A in an infringing manner, and the 910-A is not limited to use only in an infringing manner, Shure cannot directly infringe by making and selling its 910-A.

### B.    ClearOne's Motion as to Infringement by the 910-A is Based on Legal Error

ClearOne's MSJ of infringement by the 910-A is premised on its rejection of the Court's construction for BFMA, and its new argument that the claimed BFMA can now be satisfied by components other than the array of microphones. R. 863 at 23-25. ClearOne now contends that the claimed BFMA "is the entirety of the MXA910-A device, other than the beamforming hardware on the back." Ex. 257 at 124. ClearOne thus acknowledges that the Court's construction excludes beamforming hardware, but ClearOne absurdly asserts that the claimed BFMA can be satisfied by something that is neither the *plurality of microphones* nor the *beamforming hardware*.[6] This argument defeats the purpose of having construed BFMA in the first place – to resolve disputes as to meaning and scope of the claims before assessing infringement. *See Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004); *US Surgical Corp. v. Ethicon, Inc.,* 103 F.3d 1554, 1568 (Fed. Cir. 1997). The Court defined what *must* be present as the claimed BFMA – the plurality of microphones. ClearOne's argument that the BFMA can instead be *other parts* of the device is contrary to the construction, and an improper attempt to re-litigate claim construction.

---

[6] ClearOne acknowledges that if the BFMA is properly limited to the microphone array, the 910-A does not literally meet Limitation 5. Ex. 257 at 129 ("to the extent Shure succeeds in arguing that some portion of the MXA910-A constitutes the claimed '[BFMA],' rather than the complete structure, the MXA910-A meets this claim limitation under the doctrine of equivalents")

*See Creagri, Inc. v. Pinnaclife, Inc.*, 11-cv-6635, 2013 U.S. Dist. LEXIS 179253, at *21 (N.D. Cal. 2013) (rejecting attempts to re-litigate claim construction at summary judgment). Thus, ClearOne's claim of infringement is unsupportable, and no reasonable jury could find that the 910-A infringes the '806 Patent.

### 1. The Court's construction unambiguously confirmed that BFMA is the array of microphones

ClearOne's contentions were rejected during claim construction when the Court resolved "exactly what comprises a [BFMA]." R. 550 at 11. There, ClearOne argued BFMA includes *other hardware*, not just the Array; however, each of these arguments failed. R 369 at 8–10; R. 413 at 12–13; R. 508 at 23–27; R. 522 at 22–27; R. 535 at 8–11. Based on the '806 Patent disclosure, the Court determined it would be ***inappropriate to read in a requirement of*** a digital signal processor ***or any other hardware at all***." R. 550 at 14. Indeed, ClearOne argued that the claimed system includes "a [BFMA] system; a [BFMA] algorithm that uses the [BFMA] system; and a mounting method for the [BFMA] system." The Court determined: "the '[BFMA]' is just *part* of the 'system'…[t]he 'algorithm' in turn, is a separate part…so, the definition of 'system' from the '524 provisional is simply further evidence that the algorithm need not be built into the array." R. 550 at 17-18. It thus follows that the "mounting method for the [BFMA]" (*i.e.*, what supports the array in a grid), is also a separate part of the system, and cannot be the BFMA as ClearOne now argues.

### 2. The Court's analysis of Limitation 5 confirms that the claimed BFMA refers to microphones

While construing "drop space," to ensure that its construction would jibe with the language in Limitation 5, the Court contemplated scenarios where only *part* of the BFMA is in the drop space, and focused on the location of the "microphones" relative to the drop space. SOF, ¶98; R. 550 at 24-25. Further, when reconciling Limitation 5 with the prior art, the Court explained that "a BFMA that is not in the drop space at all—and is instead located *totally* beneath it, like

Chhetri—would not practice Limitation 5." R. 550 at 25. ClearOne's argument thus directly conflicts with the Court's ruling and reasoning. Indeed, the Patent Office found that Chhetri teaches microphones *on the* ceiling, and that the Chhetri device is "transitively connected to the back side of the ceiling." (SOF, ¶95). Thus, part of the Chhetri device (*i.e.*, wires, bolts, etc.) may extend into the drop space. The Patent Office only allowed the '806 Patent over a Chhetri combination, noting that the prior art "does not teach having *microphones* in the drop space." SOF, ¶97; Ex. 225 at ¶¶81-83. The relevant question therefore, is not whether part of the overall device is in the drop space, but whether the microphone array is in the drop space. ClearOne's assertion that the claimed BFMA is the entirety of the 910-A device cannot be accepted, because this would result in a claimed invention that is not sufficiently distinguishable from Chhetri. ClearOne's infringement theory thus cannot be the basis of a reasonable jury verdict.

### 3. ClearOne's reliance on the Court's preliminary analysis of Limitation 2 is misplaced

ClearOne purports to find support for its misinterpretation of BFMA by taking out of context a statement in the Court's preliminary infringement analysis. There, the Court assessed whether Limitation 2 of Claim 1 ("said beamforming microphone array integrated into said ceiling tile as a single unit") requires that "the [claimed] apparatus must ***start with*** both a standalone ceiling tile and a standalone BFMA, and then fastening them together.") R. 550 at 29-33. Regarding that *integration* aspect of Limitation 2, the Court found that "ClearOne does not have to point to one particular component of the MXA910 as the ceiling tile, distinct and separate from the [BFMA]. That is the point of the invention: they are *integrated* together." *Id.* at 30. However, the Court did not state or even suggest that its express construction for BFMA is modified in any way. *See id.* at 29-33. The Court's statement regarding Limitation 2 cannot support ClearOne's assertion that the BFMA in Limitation 5 may be met by *any part* of the entire device in the drop

space when *no* microphones are in the drop space, such as with the 910-A. Ex. 257 at 123 (citing R. 550 at 30). Notably, when applying *Limitation 5*, the Court's analysis was titled, "Whether the MXA910 Includes *Microphones* in the Drop Space" *Id.* at 33 (emphasis), which confirms the *microphones* are the relevant BFMA hardware. Thus, this Court's PI Order does not support ClearOne's infringement allegations.

### C. Infringement Cannot Be Based on ClearOne's Attempt to Rewrite the Claims

To support its argument that the 910-A infringes by having a BFMA in the drop space, ClearOne improperly seeks to re-litigate claim construction – and worse yet, seeks to re-write the claims altogether. *Taruus IP v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1321 (Fed. Cir. 2013) (rejecting patentee's argument, which "would have effectively re-written the claim language."). ClearOne's reconstruction and re-writes, however, would effectively eviscerate Limitation 5—the key limitation that was added to the '806 Patent to distinguish the claimed invention from prior art. As a result, ClearOne's argument that any part of the 910-A device could satisfy the claimed BFMA of Limitation 5 must be rejected, as should its motion.

#### 1. ClearOne's infringement argument ignores explicit claim language

ClearOne first alleges that it need not delineate a "ceiling tile" portion and a "BFMA" portion of the accused product so that it can improperly argue that *both* the claimed "BFMA" and the claimed "ceiling tile" are the entirety of the device. R. 863 at 22-25. This argument violates basic principles of patent law that different claim terms are to be given different meanings. *See, e.g., Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1579 (Fed. Cir. 1996).

As illustrated below, it is indisputable that the '806 Patent Claims recite three *different* claim terms: (1) BFMA (yellow); (2) ceiling tile (blue); and (3) "ceiling tile beamforming microphone array" ("CTBFMA") (green) – each identifying *different* aspects of the overall

claimed invention. The claim terms make clear that the entire device is the CTBFMA, and the "BFMA" and the "ceiling tile" are portions of that overall device.[7]

| Claim 1 Preamble | A ceiling tile beamforming microphone array that integrates a ceiling tile with a beamforming microphone array into a single unit where the ceiling tile is used in a drop ceiling mounting configuration, comprising: |
|---|---|
| Lim 1 | a beamforming microphone array that includes a plurality of microphones that picks up audio input signals; and |
| Lim 2 | a ceiling tile with an outer surface on the front side of said ceiling tile wherein said outer surface is acoustically transparent, said beamforming microphone array integrated into said ceiling tile as a single unit, |
| Lim 3 | said beamforming microphone array picks up said audio input signals through said outer surface of said ceiling tile; |
| Lim 4 | wherein the ceiling tile beamforming microphone array is used in a drop ceiling mounting configuration |
| Lim 5 | wherein said beamforming microphone array is coupled to the back side of said ceiling tile and all or part of said beamforming microphone array is in the drop space of the drop ceiling. |

In the context of the claims, the terms "ceiling tile" and "BFMA" unambiguously refer to two different portions of the structure. For example, Limitations 3 and 5 specify where the BFMA must be relative to the ceiling tile: the *BFMA* must *pick up audio through the outer surface of the ceiling tile*, and be *coupled to the back side of the ceiling tile*. Without two distinct portions of the product, it is impossible for a jury to determine whether these limitations are met. Moreover, Limitation 5 makes clear exactly which part of the CTBFMA must be in the drop space to practice the claims. Limitation 5 first requires that the "[BFMA] is coupled to the back side of said ceiling tile," *and then* that "all or part of said [*BFMA*] is in the drop space." Importantly, the latter part of Limitation

---

[7] Notably, both parties' experts have stated that a POSA would understand the '806 Patent claims to require physical integration of two structures – a ceiling tile and a BFMA, and ClearOne's expert stated that without such integration, certain limitations would not make sense. SOF, ¶¶104, 105. ClearOne also previously argued that "claim 1 does not require that the microphone are *on or in* the ceiling tile," which indicates that the BFMA (i.e., microphones) is distinct from the ceiling tile and the entire device. SOF, ¶106.

5 does not refer to the "ceiling tile" or to the combined "CTBFMA," but states that the **BFMA** must be in the drop space. Thus, the plain language of the claims, and particularly Limitation 5, unquestionably precludes ClearOne's infringement allegation that any portion of the accused device may be considered the BFMA. Infringement requires a showing that "every limitation set forth in a claim" be "found in an accused product <u>exactly</u>." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995) (emphasis added). And here there is no such showing.

### 2. ClearOne's rewrite of Limitation 5 does not establish infringement

The impropriety of ClearOne's argument is further evinced by the fact that ClearOne can only allege that Limitation 5 is met by Shure's 910-A by re-writing it as follows: the "[BFMA] is coupled to the backside of the ceiling tile ***frame*** and the ***'806 Accused Products*** either partially or entirely reside in the drop space as construed by the Court." R. 863 at 23 (emphasis added). Patent claims define the scope of a monopoly, which is not open ended – ClearOne cannot establish infringement by rearranging claim terms in an attempt to match them up to an accused product.

First, ClearOne inserts the word "frame" into Limitation 5 to avoid identifying the "ceiling tile" portion of the accused device, apparently because ClearOne needs that "portion" of the device to be the BFMA. A "frame," however, is not claimed or described in the patent, nor does ClearOne identify what the "frame" is in its infringement analysis. R. 862 at ¶51. Indeed, instead of responding to Shure's contentions that the 910-A has no BFMA coupled to the backside, *and* in the drop space, (Ex. 235 at ¶44), ClearOne tries to shift its burden to Shure. R. 863 at 23-24. Thus, no reasonable jury could find that the 910-A practices Limitation 5 as actually written, or even as improperly rewritten by ClearOne.

Next, ClearOne substitutes the phrase "'806 Accused Products" for "BFMA" *but only in the latter portion of Limitation 5*. This is because if ClearOne were to substitute "'806 Accused

Product" for "BFMA" consistently throughout Limitation 5, it would result in a nonsensical claim: "[*the '806 Accused Product*] is coupled to the backside of the ceiling tile ***frame*** and the ***'806 Accused Product*** either partially or entirely reside in the drop space as construed by the Court." ClearOne's application of the "Accused Product" as the BFMA not only contradicts its argument that the BFMA is the entire device *excluding the beamforming hardware on the back*, but it also fails to establish infringement. While ClearOne refuses to delineate the "BFMA" of the 910-A device, ClearOne and its expert do point to what *could be* the BFMA in the drop space by drawing a yellow box around a portion of the product above the T-bar. SOF, ¶¶ 27, 28, 100. The boxed portion includes the back plate and various bolts (*Id.*), which provides no clarity as to how the 910-A practices the claim. For example, if the back plate is part of the BFMA, ClearOne still cannot show that the BFMA (*i.e.*, the back plate) is coupled to the backside of any ceiling tile as Limitation 5 requires. The fact that neither ClearOne nor its expert can articulate how the 910-A satisfies Limitation 5 shows that no reasonable jury could conclude the 910-A practices Limitation 5.

Finally, ClearOne's claim that the '806 Patent allegedly "treat[s] the [BFMA] as a structure that contains microphones and potentially ***other things***" provides no further clarity on how Shure's 910-A allegedly practices Limitation 5. R. 863, 25. Not only is this statement inaccurate (*see* SOF, ¶99; R. 862 at ¶44) and contrary to what was resolved in claim construction, it is ambiguous. Catch-all phrases such as "other things" and "something different" (SOF, ¶5) improperly cast a broad net beyond what is recited in the claims, and cannot be the basis of liability. This would defy the very purpose of patents – to promote clear disclosure to encourage innovation in exchange for a limited monopoly. *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991).

In sum, ClearOne cannot identify, with clarity or consistency, how Shure's 910-A allegedly practices Limitation 5, and, to the contrary, the evidence shows that the 910-A, as intended, avoids

the '806 Patent claims as they have been construed by this Court. Shure's cross MSJ of no infringement by the 910-A should thus be granted, and ClearOne's motion should be denied.

### D. <u>CROSS MOTION</u>: ClearOne's Claim for Induced Infringement by the MXA910-A Should be Dismissed as a Matter of Law

Because the 910-A does not infringe the '806 Patent, ClearOne's only remaining allegation of infringement regarding this product is that Shure induced infringement by making and selling its 910-A, which is *capable* of being installed *incorrectly* in an allegedly infringing manner in 15/16" ceiling grids. R. 863 at 29-30. Even if ClearOne's allegations are taken as true, no reasonable jury could find in ClearOne's favor because there is simply no evidence that Shure knew of any such installations, let alone took *specific, affirmative steps to encourage such installations*, as is required for a showing of inducement. *See Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1365 (Fed. Cir. 2003) ("[A]n actual intent to cause the acts which constitute the infringement is a necessary prerequisite to finding active inducement."). To the contrary, Shure's affirmative steps to discourage infringement by third parties (SOF, ¶¶81-89) warrant a denial of ClearOne's motion, and a grant of Shure's cross MSJ of no inducement.

First, ClearOne's claim that the structure of the 910-A induces infringement because it is allegedly easier to install the 910-A in an infringing manner in 15/16" ceiling grids is unsupported (SOF ¶¶85, 89; RSOF, ¶¶70-72), and, even if true, is insufficient as a matter of law. Inducement cannot be inferred based on the structure of the 910-A because the 910-A is not configured such that it can *only be* used in an infringing manner. (SOF, ¶ 82-85, 90) *See Cascades Computer Innovation, LLC v. Samsung Elecs. Co.*, 77 F. Supp. 3d 756, 769 (N.D. Ill. 2015); *Oak Indus. v. Zenith Elecs.,* 697 F. Supp. 988, 992 (N.D. Ill. 1988) (where an accused device is capable of infringing and non-infringing use, the mere production and sale is not enough to find inducement). To the contrary, the 910-A was specifically designed to be *non-infringing* (SOF, ¶82), and the

evidence supports the conclusion that customers mount it in a correct, non-infringing manner (SOF, ¶89). At least one third party confirmed that the correct installation of the 910-A was immediately apparent due to the mounting flange. SOF ¶90. *Vita-Mix Corp.*, 581 F.3d at 1329 (rejecting plaintiff's claim that the device's configuration encouraged infringement because "the product design naturally encourages non-infringing use"). In light of the evidence, inducement cannot be inferred based on the structure of the 910-A, even if it is easier to install it incorrectly. *See, e.g.*, *ACCO Brands, Inc.*, 501 F.3d at 1312.

Next, ClearOne claims that Shure did not provide "adequate" instructions on how to *avoid* using the 910-A in this allegedly infringing manner in 15/16" ceiling grids. The evidence shows that this allegation is absurd. However, even if true, this allegation is insufficient to prove inducement, which requires more than mere inadequate instructions of how to avoid infringement. *Cascades Computer Innovation, LLC*, 77 F. Supp. 3d at 769 (for inducement, a patentee must show defendant's instructions specifically teach an infringing use, or that the device can only be used in an infringing manner); *Takeda Pharms. U.S.A. Inc. v. West-Ward Pharm Corp.*, 785 F.3d 625, 630-31 (Fed. Cir. 2015) ("[m]erely describ[ing] an infringing mode is not the same as recommend[ing], encourag[ing], or promot[ing] an infringing use, or suggesting that an infringing use should be performed"). Indeed, ClearOne must satisfy Section 271(b)'s intent requirement by showing that Shure instructed or encouraged its customers to use the 910-A in the allegedly infringing "flush" manner. *See Warner-Lambert Co.*, 316 F.3d at 1365. ClearOne makes no such showing or allegation, and the record shows the opposite. (SOF, ¶¶85-89.)

Further, even if an integrator had installed a 910-A in an allegedly infringing manner, ClearOne points to no evidence that Shure intended, instructed, or encouraged such allegedly infringing use. *See Warner-Lambert Co.*, 316 F.3d at 1365 ("[I]ntent to induce infringement cannot

be inferred even when the defendant has actual knowledge that some users of its product may be infringing the patent."); *R2 Med. Sys., Inc. v. Katecho, Inc.*, 931 F. Supp. 1397, 1440 (N.D. Ill. Jul. 19, 1996) ("[M]ere knowledge that its customers use its products in an infringing manner does not demonstrate the requisite intent."). To the contrary, evidence shows that Shure specifically modified the design of the 910-A to fit in a 15/16" grid (SOF, ¶83; RSOF, ¶70; Ex. 137), that before, during, and after shipping the 910-A, Shure took significant efforts to notify customers of the prohibited installation (SOF, ¶81), to instruct and train its customers on how to correctly install the product (SOF ¶85-86), and to create adverse consequences for those who did not (SOF, ¶87). *See Vita-Mix Corp.*, 581 F.3d at 1329 (no inducement where defendant's instructions and photos "teach an undisputedly non-infringing use, evidencing intent to discourage infringement"). Feedback from Shure customers confirmed that integrators properly installed the product in 15/16" grids without issue. SOF, ¶89.

In light of ClearOne's failure to satisfy the necessary elements of its inducement claim, and the indisputable evidence showing that Shure actually *discouraged* infringing use of the 910-A, no reasonable juror could find in ClearOne's favor. Summary judgment of no induced infringement of the 910-A should therefore be granted.

E.     **CROSS MOTION: Should the Court Consider the MXA910-US, It Should Find Non-Infringement as a Matter of Law**

Because the Court has yet to rule on ClearOne's motion for leave to add the MXA910-US to the case, ClearOne's summary judgment motion as to the 910-US should be denied as premature.[8] If the Court is inclined to consider the 910-US at this time, Shure incorporates the 910-US into this cross-motion for the same reasons explained above as to the 910-A. It is undisputed

---

[8] By ClearOne's own assertions, its Motion as to the MXA910-US should be denied as premature. If this Court should grant ClearOne's Motion to Amend its Infringement Contentions related to the 910-US, Shure agrees with ClearOne's proposed short supplemental briefing as to the 910-US.

that, like the 910-A, the plurality of microphones of the 910-US are below the drop space, and that the 910-US is not capable of being installed flush in either (15/16" or 9/16") ceiling grid. SOF, ¶93; R. 862 at ¶40-41. Accordingly, if this Court addresses the 910-US on the merits ClearOne's MSJ should be denied, and Shure's cross MSJ should be granted.

### III. ClearOne's Motion for Summary Judgment of Infringement By Shure's MXA910 Should be Denied Due to Material Factual Disputes as to the Infringement

ClearOne's MSJ of infringement by the MXA910 should be denied because disputes of material facts exist regarding whether the MXA910 meets the plain meaning of "ceiling tile," which appears in three out of five claim limitations. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### A. Disputes Exist as to ClearOne's Application of the Plain Meaning of "Ceiling Tile" in the Context of the Patent and the Accused Devices

The Court held that the claim term "ceiling tile" has its plain and ordinary meaning (R. 550 at 28). Whether the MXA910 fits that plain meaning is a question of fact for the jury. ClearOne cannot avoid questions of fact by claiming that they are attempts to re-litigate claim construction. R. 863 at 22. ClearOne relies only on its expert Dr. Schonfeld, (who admits his opinions in this context are that of a lay person (SOF, ¶94)) in support of its contention that the MXA910 is a ceiling tile merely because it is sized and shaped to fit in a ceiling grid. Ex. 257 at 78. The jury should assess the credibility of Dr. Schonfeld as compared to Shure's expert, Dr. Roy, who has over 30 years' experience working with ceiling systems. Ex. 235 at ¶¶1-8, 47. The jury should decide if, as Dr. Roy, and '806 Patent inventor, Mr. Braithwaite, contend, the term "ceiling tile" has a specific meaning and commonly understood attributes (not limited to the material from which the tile is made), and whether these attributes are present in the MXA910. This question does not involve claim construction, but involves a term that has a plain meaning (R. 550 at 28), and while

15

the parties unsurprisingly dispute the plain meaning, the jury should resolve this dispute by applying its understanding of the term "ceiling tile" to the MXA910.

ClearOne has not shown the absence of factual dispute, nor has it even addressed, Shure's evidence that the MXA910 does not fit the plain meaning of the claimed "ceiling tile," which is supported by at least the following:

- the '806 Patent describes "ceiling tile 264" in conformance with its ordinary understanding – a singular structure that can be arranged in a pattern on a ceiling grid to form a drop ceiling and which may be *combined with* an Array 116 (Ex. 1 ('806 Pat.) at 8:30-36; SOF, ¶4) – in contrast to the *wall-mounted* embodiment that is described as having multiple components (inner surface, an outer surface, and a frame) (Ex. 1 at 10:13-19);

- the '806 Patent claims do not specify any "size" or "shape" of a ceiling tile (instead the patent states a ceiling tile may be of "various sizes and shapes" to fit a variety of openings and made of a variety of materials (Ex. 1 at 8:40-47), and thus, the shape, size, construction and/or mounting of the MXA910 are insufficient to render the device a ceiling tile; and,

- during prosecution, ClearOne stated the primary stated objective of the claimed invention is to disguise the BFMA behind a ceiling tile such that it is *indistinguishable* from the surrounding ceiling tile as evidenced by the patent, prosecution history, and ClearOne documents (SOF, ¶¶96, 101; Ex. 235, ¶¶ 48-53), the claimed ceiling tile is intended to refer to a structure that resembles the surrounding ceiling tile.[9]

ClearOne similarly fails to address that Mr. Braithwaite: (1) rejected that any product sized to fit in a ceiling grid is a ceiling tile (SOF, ¶102); and (2) explained that a ceiling tile resembles the surrounding ceiling tiles, and is distinct from other structures that form part of the boundary of the drop ceiling like a light fixture or an air duct covered by a metal grill which may be sized to fit in that space, but that may be distinguishable from the surrounding tiles (SOF, ¶103).

---

[9] *Kranos IP Corp. v. Riddell, Inc.*, 17-cv-6802, 2019 U.S. Dist. LEXIS 69311, at *5 (N.D. Ill. Apr. 24, 2019) (Kennelly, J.) (rejecting plaintiff's expert's construction of "inner shell" as overly expansive, and unfitting with what a POSA would have understood the term to mean); *Eon Corp.*, 815 F.3d at 1321 (rejecting plaintiff's expert's construction of "portable" as referring to "essentially anything theoretically capable of being moved," such as "a house, perhaps, but not a mountain," as overly broad, "completely untethered" to the patent, and not aligned with what a POSA would have understood the term to mean).

Mr. Braithwaite further confirms, and ClearOne fails to rebut, that since the 1990s microphones could either be (1) installed into the ceiling tile itself, or (2) by replacing the tile altogether. SOF, ¶108. This is consistent with Shure's evidence, which shows that a POSA in 2012 would understand the '806 Patent to claim a BFMA combined with a passive ceiling tile structure, *not* an active-electrical piece of audio equipment sized and shaped to *replace* a ceiling tile. Ex. 235 at ¶¶56, 61-65. Indeed, ClearOne differentiates these two categories of products in its own development documents. SOF, ¶107. It is undisputed that the '806 Patent discloses *combining* an always-passive ceiling tile with a BFMA (SOF, ¶4 (*citing* Ex. 1 at 9:6-9, which describes Fig. 2H); Ex. 235 at ¶56), and ClearOne identified this "combination embodiment" as the "claimed invention" during prosecution of the '806 Patent. SOF, ¶16. By contrast, the '806 Patent does *not* describe the "ceiling tile 264" as having any active electrical capabilities like the MXA910.

Based on the above unrebutted evidence, a reasonable jury could find that the plain meaning, indeed the *intended* meaning, of "ceiling tile" is not as ClearOne asserts. Instead, based on the '806 Patent, the recitation of "ceiling tile" in the claims (not "chassis," "frame" or "housing"), and the state of the prior art, a reasonable jury may agree with Shure that the MXA910 device is not, and does not include, any ceiling tile. Because ClearOne fails to sufficiently address Shure's evidence, at the very least factual disputes exists as to a whether the MXA910 practices the limitations that recite "ceiling tile," and thus ClearOne's MSJ should be denied.

## B. ClearOne's Failure to Address the Dispute as to Whether It Must Identify a Ceiling Tile Distinct from a BFMA Precludes Summary Judgment

ClearOne further contends that it need not delineate the "ceiling tile" from the "BFMA" (R. 863 at 20),[10] which is itself a basis for denying ClearOne's motion. This Court held that the

---

[10] ClearOne also contends that the entirety of the product is both the "ceiling tile" and the "BFMA" (R. 863, 21, 23), and thus ClearOne's allegations of infringement are based on its incorrect position that it need not identify the claimed "ceiling tile" as distinct from the claimed "BFMA." *Id.*, 23.

phrase "said beamforming microphone array integrated into said ceiling tile as a single unit" is to have its plain and ordinary meaning (R. 550 at 31), thus, ClearOne cannot meet its burden by merely citing to the court's preliminary PI findings while ignoring factual disputes based on the claim construction.[11] As discussed above *supra* §II(C)(1), because the claims recite three different terms – "CTBFMA," a "ceiling tile," and a "BFMA," – ClearOne's failure to identify each claim term precludes finding summary judgment of infringement. ClearOne's allegations are further contradicted by (i) its own expert's statement that the '806 Patent claims require physical integration of two structures – a ceiling tile and a BFMA – and without such integration, certain claim limitations would have no meaning (SOF, ¶¶ 104, 105), and (ii) by its own arguments that "claim 1 does not require that the microphones are *on or in* the ceiling tile" – which itself shows that the entirety of the device cannot be both the BFMA and the ceiling tile. SOF, ¶106. Given ClearOne's contradictory use of the claim terms in its contentions, ClearOne has not met its burden to show that the MXA910 practices each limitation or the claims, and a jury may find otherwise. Thus, ClearOne's motion should be denied.

### C. ClearOne's Motion cannot be Granted Based on Its DOE Contentions

ClearOne's DOE contentions (Ex. 257, 28-29; R. 863 at n.8), also cannot be a basis for granting its motion because these contentions would vitiate the claimed "ceiling tile" altogether. The '806 Patent did *not* describe *or claim* a product that is sized, shaped, or made to look in a certain way, nor did it require the product to fit in any specific grid, thus signifying that those are not the defining elements of the claimed invention. ClearOne's DOE contentions (Ex. 257 at 28-

---

[11] The question of whether the claims require two separate standalone structures *prior to integration*, is different from the question of whether, in order to establish infringement, ClearOne must identify which aspects of the accused product satisfy the claimed "ceiling tile" and which aspects satisfy the claimed "BFMA." Since the claims refer to both terms separately in multiple limitations, ClearOne cannot point to the same structure as satisfying both claim terms.

29) therefore do not render the MXA910 a ceiling tile. Further, such arguments are, by their very nature, subjective statements rife with factual dispute for a jury. And Shure's evidence described above supports that a reasonable jury could find the differences between the claimed "ceiling tile" and the MXA910 to be substantial. The term "ceiling tile" defines the very *type* of structure and integration required by the claims, and, at the very least, Shure has raised a genuine dispute as to whether the MXA910 fits that definition.

Even under its DOE theory, ClearOne has not met its burden because it fails to identify which parts of the MXA910 (or the 910-A) constitute the ceiling tile. While this is perhaps intentional – because ClearOne is forced to take inconsistent infringement positions between the MXA910 and the 910-A to show infringement – the result is a failure to show infringement under the DOE. Thus, ClearOne fails to establish a lack of factual dispute regarding whether the MXA910 product practices the claims under DOE as well.

### D. CROSS MOTION: ClearOne's Claim for Induced Infringement by the MXA910 Should Be Dismissed as a Matter of Law

Even when all the factual allegations are viewed in a light most favorable to ClearOne, no reasonable jury could find that Shure induced infringement of the '806 Patent because the undisputed evidence shows that Shure did not take *specific, affirmative steps to encourage* any infringement by selling the MXA910. *Warner-Lambert Co.*, 316 F.3d at 1365. Thus, Shure's cross MSJ of no induced infringement should be granted.

It is undisputed that Shure began selling the MXA910 in 2016 – long before the '806 Patent issued. R. 863 at 3. When ClearOne accused the MXA910 of infringing the '806 Patent, Shure sought and followed advice from an experienced patent lawyer not involved with the litigation, who also concluded that the MXA910 does not infringe the patent claims. SOF, ¶110. ClearOne

has not shown, and the evidence does not support, that Shure acted with a specific intent to induce infringement by its sales of the MXA910.

Instead, ClearOne focuses on sales of the MXA910 in the two days following the PI Order as allegedly inducing infringement. (R. 863 at 29-30.)[12] Even if taken as true, ClearOne's allegation is insufficient for a jury to find induced infringement because the alleged MXA910 sales from August 6-8 were not prohibited. The PI Order made clear that (i) the MXA910 is capable of four mounting options, but only the drop ceiling mounting configuration would be enjoined, (*see* R. 550 at 61 (stating any injunction "would not impede Shure's ability to sell the MXA910 for use in other configurations")), and (ii) the PI would not go into effect until ClearOne posted the required bond (*Id.* at 64), which was not until August 23, 2019 (R. 616). Indeed, on August 14, 2019 the Court stated that Shure need not recall sales that were already out, (R. 590 at 3), and again confirmed the PI was not yet in effect (R. 591). ClearOne acknowledges that Shure advised customers that "MXA910 Ceiling Arrays purchased after August 23, 2019 cannot lawfully be used in a drop-ceiling mounted configuration within the United States." *Id.* at ¶69; SOF, ¶81. In addition, ClearOne offers no evidence that any of Shure's post-August 5, 2019 sales resulted in direct infringement by third parties, or that Shure encouraged such infringement. When the PI went into effect, Shure had already ceased selling the MXA910, had notified its customers of the scope of the PI, and had sought guidance from the Court as to its marketing of its 60cm MXA910 product in the U.S. SOF, ¶81. These indisputable facts show that ClearOne cannot succeed in proving that Shure had the requisite intent for a finding of inducement by any sales of the MXA910.

---

[12] ClearOne alleges that Shure made no sales of the MXA910 after August 8, 2019 (R. 862, ¶75), thus the relevant sales were not for 18 days as ClearOne alleges (R. 863 at 29).

20

## IV.    <u>CROSS MOTION</u>:   ClearOne's Claim for Willful Infringement of the '806 Patent Should be Dismissed as a Matter of Law

Willful infringement is reserved for culpable, intentional behavior described as "willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016); *Eko Brands, LLC v. Adrian Rivera Maynez Enters.*, 946 F.3d 1367 (Fed. Cir. 2020). Even viewing the facts in a light most favorable to ClearOne, Shure's conduct during this litigation and during time in which the '806 Patent has been in effect plainly does not rise to that level. Because ClearOne has not shown that Shure acted in an "egregious" manner, and because the undisputed facts show the opposite, ClearOne's request for a finding of willfulness and an award of enhanced damages should be denied,[13] and Shure's motion for summary judgment of no willfulness should be granted.

### A.    ClearOne's Willfulness Allegations are Insufficient to Support Its Motion

ClearOne makes just two allegations regarding Shure's allegedly willful behavior, but even if those allegations were presumed true, neither are sufficient to support a finding of willfulness. ClearOne's first allegation – that Shure sold MXA910s for two days after the Court's PI Order but *before* ClearOne paid its bond to commence the injunction (R. 863 at 31) – has been addressed *supra* §III(D). As described, Shure's MXA910 sales were permissible under the PI Order before August 23, 2019,[14] and were made while Shure maintained its non-infringement claims in the litigation. *See, e.g.*, *Creative Compounds, LLC v. Starmark Labs., Inc.*, 07-cv-22814, 2010 U.S. Dist. LEXIS 69795, *21 (S.D. Fla. July 13, 2010) ("A court cannot fault an infringer…for

---

[13] ClearOne purports to seek summary judgment of "enhanced damages." This is inappropriate. Willfulness is a fact question for the jury, and appropriate for analysis at summary judgment. Enhanced damages requires a finding of willfulness, but is "committed to the discretion" of the Court, and requires consideration of the "particular circumstances of each case," including those which have not occurred and cannot be assessed until after trial. *Halo*, 136 S. Ct. at 1933-34.

[14] ClearOne cites no evidence demonstrating that the MXA910s sold during these two days were to be used in a drop ceiling mounting configuration, which was the only configuration to be enjoined.

continuing to sell its product in the absence of a preliminary injunction."). Under the law, no reasonable jury would find willfulness based on Shure's pre-August 23, 2019 sales.

ClearOne's only other argument, that Shure allegedly "rushed" to market its 910-A, which requires more labor to install in certain ceiling grids, even if true, is also insufficient for finding willful infringement. R. 863 at 31-32. It is indisputable that the 910-A is purposefully designed to avoid the '806 patent (SOF, ¶82), and that Shure has not encouraged incorrect installation. SOF, ¶¶83-89. Shure's efforts demonstrate good faith, and weigh heavily against a finding of willfulness. *See Kolcraft Enters. v. Chicco USA, Inc.*, 09-cv-3339, 2019 U.S. Dist. LEXIS 151958, *21 (N.D. Ill. Sep. 6, 2019) ("A redesign undertaken in good faith will not support a finding of willful infringement."); *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 745 (Fed. Cir. 1993) (design-arounds are encouraged and bear on the accused's subjective intent). Moreover, Shure designed its 910-A in consultation with counsel. SOF ¶81; R. 731, 3. *See Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 822 (Fed. Cir. 1992) ("On-going consultation with a patent lawyer is highly probative evidence of good faith."). Before Shure released the 910-A, Shure presented the design to ClearOne's counsel and sought clarification from this Court that the 910-A would not practice Limitation 5 or violate the PI Order. R. 660. *See Scholle Corp. v. Rapak*, 13-cv-3976, 2014 U.S. Dist. LEXIS 100830, *11 (N.D. Ill. Jul. 14, 2014) (encouraging litigants to seek clarification of a PI order to avoid violations of the same). Further, Shure undertook efforts to warn and instruct *against* such installation (SOF, ¶81), and when ClearOne deemed Shure's warnings insufficient (which is untrue), Shure revised its customer-facing notice to address that allegation. R. 731 at 2, n4. Shure also continued working to improve its product, resulting in the 910-US, which was designed to make installation even easier. SOF, ¶93.

The allegation that Shure should have refrained from "rushing" to release the 910-A, and instead should have waited to release its 910-US, is factually baseless and contrary to Shure's obligation to mitigate harm by the PI Order, and it is insufficient to support willfulness even if true. *See Vaporstream, Inc. v. Snap Inc.*, 17-cv-220, 2020 U.S. Dist. LEXIS 5642, *57 (C.D. Cal. Jan. 13, 2020) (rejecting plaintiff's willfulness argument based on evidence that defendant had a non-infringing alternative that it could have implemented quickly and cheaply, but did not); *J&M Indus., Inc. v. Raven Indus., Inc.*, 16-cv-2723, 2020 U.S. Dist. LEXIS 76881, *106 (D. Kan. May 1, 2020) (granting MSJ of no willful infringement where there is evidence of substantial non-infringing uses and "[t]he decision to continue sales…and to litigate an allegation made by [p]laintiff is hardly evidence of subjective bad faith," under *Halo*).[15] Even taken together, ClearOne's allegations fail to rise to the level of showing willful and wanton behavior necessary for a finding of willfulness, and as such, ClearOne's motion should be denied.

### B.     The Evidence Also Shows that No Reasonable Jury Could Find Shure Acted Willfully

In addition to the deficiencies of ClearOne's arguments addressed above, the ample, undisputed evidence shows that Shure's conduct reflected a good faith intent to avoid infringement, and that Shure's motion for summary judgment of no willfulness should be granted. The Federal Circuit has recognized that a jury may consider the following factors in assessing whether infringement was intentional and deliberate – here, ClearOne fails to establish even one of these factors, and all four factors objectively favor Shure because: (1) Shure cannot be said to have copied the '806 Patent or a ClearOne product that practices the patent; (2) at no point has

---

[15] ClearOne's argument is perplexing, as it is founded on the premise that the 910-US is, in fact, a non-infringing design around – and yet, ClearOne contends that *both* the 910-A and the 910-US infringe the '806 Patent. Thus, inherent in its willfulness argument is the admission by ClearOne that the 910-US does not infringe the '806 Patent.

Shure attempted to conceal its alleged infringement; (3) Shure reasonably, and consistently, believed it did not infringe and that the '806 Patent is invalid; and (4) Shure made good faith efforts to avoid infringing the '806 Patent by creating re-designs. *See Eko Brands,* 946 F.3d at 1377. ClearOne makes no allegations that either of the first two factors are met – and asserts that Factor 3 favors an award of enhanced damages (but not a finding of willfulness). The allegations by ClearOne cannot establish either willfulness or enhanced damages, applying the four factors or otherwise.

First, Shure could not have copied ClearOne or concealed alleged infringement because by the time the '806 Patent issued in November 2017, Shure had already independently developed and been selling the MXA910 for over a year. R. 863 at 3.[16] At that time (and for many years after), ClearOne neither made nor offered any product that allegedly practiced the '806 Patent. SOF, ¶24. *See SRI Int'l, Inc. v. Cisco Sys.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019) (no willful infringement where notice letter was sent after defendant independently developed and sold the accused system); *Bioverativ Inc. v. CSL Behring LLC*, 17-cv-914, 2020 U.S. Dist. LEXIS 49602, *9 (D. Del. Mar. 23, 2020) (summary judgment of no willful infringement where accused product was launched *over a year before* the patent issued). Contrary to any concealment, ███████████ ████████████████████████████████████████████████████████████. R. 660 at 2; R. 755 at 2. These two factors show no bad faith and favor granting Shure's cross motion.

Additionally, Shure's good faith belief that its MXA910 (and 910-A and 910-US) did not infringe the '806 Patent is evident by Shure's consistent claim of non-infringement in this

---

[16] Indeed, on the same day that Shure released its product, ClearOne (improperly) changed the entire direction of the '806 Patent claims to focus on Shure's MXA910 product through its February 9, 2016 Preliminary Amendment. SOF, ¶24; Ex. 7. In light of ClearOne's amendments to the pending application, it is more accurate to observe that ClearOne copied Shure – by drafting claims with the accused product in hand – which ClearOne's employees did not deny. R. 413 at 4.

litigation, its reliance on the Court's claim constructions, and by its reliance on advice of independent outside counsel that the MXA910 does not infringe SOF, ¶110. *See Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1279 (Fed. Cir. 1995). It is undisputed that Shure obtained a non-infringement opinion from outside counsel by September 28, 2018. R. 863 at 33. The fact that Shure did not seek an *invalidity* opinion in addition to the non-infringement opinion (*Id.*), is not a basis for willfulness. Here, it was unnecessary, particularly where Shure reasonably relied on its litigation counsel's assessment of invalidity in the litigation. *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 792 (Fed. Cir. 1995) (reversing willfulness finding where accused infringer had obtained competent non-infringement opinions, even though accused infringer had not obtained an invalidity opinion). Indeed, because Shure's invalidity claims were more than viable, the Court scheduled several months of discovery on ClearOne's Preliminary Injunction Motion, at least in part to address Shure's invalidity contentions. R. 285; R. 286.

Similarly, Shure's decision to retain Mr. Nykaza does not demonstrate bad faith or malicious conduct. The irrelevant fact that Mr. Nykaza was a former partner of Shure's litigation counsel, is not evidence of willfulness, and is unsupported. *Studiengesellschaft Kohle, m.b.H. v. Dart Industries, Inc.*, 862 F.2d 1564, 1573–79 (Fed. Cir. 1988) (affirming no willful infringement where invalidity opinion was given by in-house counsel). Mr. Nykaza, a seasoned patent attorney with over 25 years of experience, was retained directly by Shure's in-house counsel (SOF, ¶110), and there is no question that Mr. Nykaza acted independent from litigation counsel in performing his analysis and rendering his opinions. SOF, ¶110; Ex. 220. ClearOne's allegations do not establish that Mr. Nykaza's opinion is incompetent or that Shure's reliance on it could be deemed bad faith, and thus do not support a finding of willfulness. *See Transmatic*, 53 F.3d at 1279.

25

Similarly inconsequential is any alleged *delay* in obtaining the *written* opinion that followed verbal opinions given by Mr. Nykaza. SOF, ¶110; Ex. 220. To the contrary, Shure sought and obtained its non-infringement opinion with diligence. By February 28, 2018, soon after ClearOne amended its Counterclaims to add the '806 patent to the case, ███████████████████ ████████████████████████████████████████████████ SOF, ¶110. ███████████ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ ███████████████████████████████████████████. Ex. 220; *see Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1571 (Fed. Cir. 1996) (affirming no willfulness even though infringer *delayed for 8 months* before *seeking* an opinion of counsel, the opinion contained flaws, the infringer copied patentee's product, and continued infringing the patent-at-issue until the patent expired).

In sum, there is no basis for finding that Shure acted with bad faith intent when it manufactured, offered, and sold its MXA910, 910-A, and 910-US products. *See, e.g., Westvaco*, 991 F.2d at 744–45 (reversing willfulness finding where infringer did not copy, attempted to design around the patents, and outside counsel deemed the design around adequate to avoid infringement). Accordingly, Shure's MSJ of no willfulness should be granted, and ClearOne should not be permitted to confuse the jury with its baseless and prejudicial accusations.

C.    **The *Read* Factors Support Summary Judgment of No Willfulness and No Enhanced Damages**

Faced with the lack of evidence of willfulness, ClearOne attempts, in vain, to support its Motion by applying the *Read* factors of enhanced damages. Shure submits that many of the *Read* factors have nothing to do with willfulness, and are typically used in assessing enhanced

damages—a question expressly reserved for the Court and not something put forth where there has been no finding of liability. Nevertheless, ClearOne's allegations still favor Shure and show that no reasonable jury would find Shure's conduct egregious to warrant a finding of willfulness or an enhanced damages award. The *Read* Factors consider: (1) if the infringer deliberately copied the ideas or design of another; (2) if the infringer, once made aware of the patent, investigated its scope and formed a good-faith belief that it was invalid or not infringed; (3) the infringer's litigation conduct; (4) the infringer's size and financial condition; (5) closeness of the case; (6) duration of the infringer's misconduct; (7) the infringer's remedial actions; (8) the infringer's motivation for harm; and (9) if the infringer attempted to conceal its misconduct. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992). Factors (1), (2), (7) and (9) overlap with the four intent-focused factors suggested by the *Eko* Court above. As noted *supra*, ClearOne has made no allegations about *Read* factors (1) and (9), and Factors (1), (2), (7) and (9) favor Shure.

As for *Read* Factor 3 (litigation conduct), Shure has conducted itself appropriately by advancing reasonable and justified positions and not unnecessarily prolonging the litigation; however, the same cannot be said for ClearOne. SOF, ¶109. *See Power Integrations Inc. v. Fairchild Semiconductor Int'l, Inc.*, 09-cv-5235, 2017 U.S. Dist. LEXIS 5561, *12-15 (N.D. Cal. Jan. 13, 2017). In addition, ClearOne's allegations, even if taken as true, do not rise to the level of malicious conduct reserved for enhanced damages. For example, regarding the 910-A development discovery, R. 863 at 33, Shure followed the scope of 910-A discovery mandated by the Court after fact discovery had closed, which did not include discovery regarding "development." R. 670.[17]

---

[17] In response, ClearOne raised no objections to Shure's scope of discovery production, and instead stated it would only need a two hour deposition to confirm the structure of 910-A. Ex. 160 at 15. Thus, Shure agreed to add the 910-A to the case and to an expedited discovery schedule that could be completed just before summary judgment briefing was to begin. *Id*. at 15-16. It was *ClearOne* that changed course to broaden its requests, demanding "full, unrestricted discovery" on the 910-A. *Id*. at 23. While Shure sought to resolve the dispute, ClearOne refused, forcing Court intervention. *Id.; see also* Ex. 159 at 3-4.

Moreover, ClearOne's argument that the Court "ordered Shure to provide *some* of that discovery" does not show improper conduct by Shure. Instead it shows that Shure was right to resist ClearOne's overbroad requests. Shure's disagreement as to the permissible scope of supplemental discovery sought by ClearOne (after fact discovery closed) cannot be considered unjustified, let alone evidence of malicious or bad faith behavior.

Additionally, Shure's voluntary and proactive disclosure of the 910-US to ClearOne's counsel over a month *before* the product was to be publicly released, (R. 755 at 2), and Shure's justified and *temporary* confidentiality designation of that information, prior to product release, is not "concealment," nor did it cause harm to ClearOne. *See Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 117 (E.D. Tex. 2017). ClearOne's resistance to Shure's *temporary* designation was particularly disingenuous because ClearOne's CEO testified that ClearOne does not even inform its *internal sales team* about products before they are publicly launched because information about products that have not yet been released is "top secret." Ex. 218 at 53:15-54:14. Similarly irrelevant is Shure's decision to oppose ClearOne's motion for leave to amend infringement contentions to add the 910-US (R. 829), which was based on Shure's belief that simple clarification of the Court's BFMA construction would avoid needless expense and confusion. R. 826. Advocacy, especially that aimed at conserving judicial and party resources, is not misconduct. *See, e.g.*, *Barry,* 250 F. Supp. 3d at 117 ("enhancement analysis is not an opportunity for this court to penalize a zealous trial team that engaged in hard-fought battles" but ultimately lost the war.").

The remaining factors also favor Shure. For example, Shure's size and financial condition relative to ClearOne has nothing to do with Shure's alleged willfulness. Second, the closeness of the case also weighs against enhanced damages because Shure has asserted credible positions on non-infringement and invalidity. Third, while ClearOne alleges that the duration of Shure's

28

allegedly willful conduct began by January 2018 (R. 863 at 35), (i) the parties were already actively litigating then and have been since; (ii) ClearOne's alleged evidence of willfulness only refers to Shure's August 5-8, 2019 pre-injunction sales of the MXA910 (R. 863 at 31-32), which cannot warrant enhanced damages,[18] *see* §III(D) *supra*; and (iii) Shure's redesign 910-A sales demonstrate the opposite of willful conduct.[19] Finally, that Shure and ClearOne are direct competitors cannot alone show a "motivation for harm," or justify a finding of willfulness. *See* u.g, *Nox Med. Ehf v. Natus Neurology Inc*., 15-cv-709, 2018 U.S. Dist. LEXIS 206844, *10 (D. Del. Dec. 7, 2018) ("[H]arm incidental to direct business competition" does not show "motivation for harm"); *Georgetown Rail Equip. Co. v. Holland L.P.*, 13-cv-366, 2016 U.S. Dist. LEXIS 78365, *64 (E.D. Tex. Jun. 16, 2016). In sum, each of the suggested *Eko* factors, and the *Read* factors shows that such a finding or award would be inappropriate in this case. ClearOne's motion for summary judgment on willfulness and enhanced damages should thus be denied, and Shure's cross motion for summary judgment of no willfulness should be granted.

## V.   CROSS MOTION: The Court Should Grant Summary Judgment Denying ClearOne's Joint Enterprise Theory

ClearOne's "joint enterprise" basis of alleged '186 Patent infringement is fundamentally flawed – no reasonable jury could find that all of the claim limitations are performed by the parties of the alleged joint enterprise, Shure and third-parties Biamp or QSC ("Biamp/QSC"). Thus direct infringement of the method claims cannot be found. Further, ClearOne's joint enterprise theory as an indirect infringement allegation fails because it is legally and factually untenable. Lastly, even

---

[18] See u.g., *Judkins v. HT Window Fashions Corp*., 704 F. Supp. 470, 482 (W.D. Penn. 2010); *Creative Compounds*, 2010 U.S. Dist. LEXIS 69795 at *21.

[19] See u.g., *SRI*, 930 F.3d at 1309 ("proof that [the defendant] directly infringed and induced others to infringe the patents-in-suit" insufficient to support jury's finding of willful infringement); *Universal Elecs. Inc. v. Roku, Inc*., 2019 U.S. Dist. LEXIS 74623, at *40 (C.D. Cal. Mar. 5, 2019) ("knowledge and continued infringement alone" are insufficient to support a claim for willful infringement).

if these fundamental flaws of ClearOne's legal theory were improperly overlooked, its summary judgment motion for alleged joint enterprise infringement would still necessarily fail because no joint enterprise was formed.

### A. No Reasonable Jury Could Find Direct Infringement by the Alleged Joint Enterprise

ClearOne's joint enterprise infringement theory cannot succeed as a matter of law. An allegation of infringement under a joint enterprise theory is limited to method claims – here, claims 7, 8, 13 and 15 of the '186 Patent. It is also a *direct infringement* liability theory, thus each step of the claimed methods must be performed by the accused parties. Because no reasonable jury could find that every step of the asserted method claims is performed by the parties of the alleged joint enterprise, there can be no finding of infringement under this theory. Specifically, each claim requires the step of "operably coupling" the accused devices – *i.e.*, operably coupling Shure's MXA910 (allegedly used to create multiple beamform signals) and the Biamp/QSC DSPs (allegedly used to perform per-signal AEC, "select" the signal(s) to transmit and "inhibit" a change of the selection).[20] A jury could only find, at most, that this required step is practiced by a third party, not any members of the alleged enterprise. Thus, direct infringement cannot be found.

Joint enterprise infringement is a divided infringement theory of direct infringement under § 271(a), and applies only to method claims. *See Lyda v. CBS Corp.,* 838 F.3d 1331, 1339 (Fed. Cir. 2016). Indeed, in its motion for summary judgment, ClearOne acknowledged that its joint enterprise allegations are a direct infringement theory and were limited to the asserted method

---

[20] ClearOne's infringement allegation requires the functionality of both devices together – the MXA910 and either a Biamp or QSC DSP device. SOF, ¶143. Shure's original MXA910 did not even include acoustic echo cancellation (AEC) functionality, thus under the joint enterprise theory ClearOne asserts this step is achieved by connecting the MXA910 with a Biamp/QSC DSP. SOF, ¶¶143, 146. And the subsequent version of MXA910 is only capable of performing AEC on the combination of the signals – not individual lobes (alleged beams).

claims. R. 859 at 1 ("Shure directly infringed *claims 7, 8, 13, and 15* of the '186 Patent through joint enterprises[.]"). As a theory of "direct infringement," joint enterprise infringement requires that all of the steps of the claims be performed by the parties of the joint enterprise. *See Akamai Techs, Inc. v. Limelight Networks, Inc.,* 797 F.3d 1020, 1022 (Fed. Cir. 2015) (*en banc*) (explaining that joint enterprise is where the acts of one actor "are attributable to the other such that a single entity is responsible" for *direct infringement* under § 271(a)); *Grecia v. Walgreen Co.*, 18-cv-1848, 2018 U.S. Dist. LEXIS 224790, at *9 (N.D. Ill. 2018) (dismissing infringement of method claim when a third-party who performed two of the claimed steps was not alleged to be part of a joint enterprise with defendant). This is the fatal flaw of ClearOne's allegations. No reasonable jury could find that *all of the claimed steps* are performed by the alleged joint enterprise parties.

Claims 7 and 8 of the '186 Patent recite claim limitations as steps of a method-of-manufacture, including "operably coupling a processor, memory, and storage to said beamforming microphone array" where the processor is configured to "perform an acoustic echo cancellation operation with an acoustic echo canceller on the plurality of combined signals to generate a plurality of combined echo cancelled signals." R. 28-1 at 19:48–20:7. Claims 13 and 15 are method-of-use claims, reciting similar elements to claim 7, including the combination step of "operably coupling a processor, memory, and storage" to a "beamforming microphone array" where the processor is "configured to . . . perform an acoustic echo cancellation operation with an acoustic echo canceller." *Id.* at 20:31–57. Notably, ClearOne does not assert, and has not cited to any evidence supporting, that Shure or Biamp/QSC performs the "operably coupling" step, which *at least* involves connecting the MXA910 with the Biamp/QSC DSPs.[21] Thus, even if it were

---

[21] Shure maintains that it takes more than simply connecting the devices to "operably couple" a processor configured to conduct AEC to a beamforming microphone array. However, as this is Shure's motion, this issue must be viewed in a light most favorable to ClearOne, and ClearOne contends mere connection is sufficient. Thus, for purpose of this joint enterprise motion only, Shure considers "connection" sufficient.

assumed that a "joint enterprise" existed, the parties of the enterprise simply do not perform all of the claimed steps. *See Grecia,* 2018 U.S. Dist. LEXIS 224790, at *9.

ClearOne's allegation that Shure and Biamp/QSC actively promoted interoperability of devices cannot meet the claimed step of "operably coupling" the required components. *See Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1221 (Fed. Cir. 2014) ("Because the asserted claim is a method claim, [] the accused devices must also actually perform that method."); *Ricoh Co., Ltd. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1334 (Fed. Cir. 2008) ("[A] party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under § 271(a)"); *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 & n. 12 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use.").

In fact, ClearOne acknowledges that only third-parties allegedly perform the "operably coupling" step of the claims.[22] SOF, ¶143. And ClearOne has not alleged that customers who purchase and use Shure's and Biamp/QSC's devices are considered part of the purported joint enterprise. SOF, ¶117. Because no party of the alleged joint enterprise performs the step of "operably coupling" the devices, there cannot be direct infringement of the asserted method claims. *See Grecia*, 2018 U.S. Dist. LEXIS 224790, at *9 (dismissing infringement of method claim when a third party performing two of the claimed steps was not alleged to be a part of a joint enterprise).

---

[22] Indeed, this is consistent with the allegations in ClearOne's present summary judgment motion and its PI motion. R. 859 at 23 (asserting that Biamp promotes interoperability with MXA910, but it is Biamp's customers who combine them); R. 90 at 14 (arguing an agreement for a common purpose: "*enabling* Shure and Biamp's *customers to 'incorporate* the power of *Shure mics* with the power of [Biamp's] Tesira.") (emphasis added).

### B. ClearOne's Joint Enterprise Theory also Fails as an Indirect Infringement Allegation

To the extent ClearOne's "joint enterprise" theory may be viewed as an allegation of a joint enterprise for indirect infringement,[23] it would be legally and factually untenable and cannot be a reason to deny Shure's request for summary judgment of no "joint enterprise" liability. Joint enterprise is, as a matter of law, a direct liability theory, and thus *not* available as a basis for indirect infringement under 35 U.S.C. § 271(b) or (c). *See Akamai*, 797 F.3d at 1022 (explaining that joint enterprise is one of "two sets of circumstances" where the acts of one actor "are attributable to the other such that a single entity is responsible" for "*direct infringement under § 271(a)*"). This is grounded in the very purpose of the judicially-created doctrine of joint enterprise liability for patent infringement – to address circumstances where method claims are infringed by parties who perform different steps of the claims as a joint enterprise. *See Id.* at 1023 (discussing joint enterprise infringement in the context of *direct infringement under § 271(a)*).

Therefore, to the extent ClearOne asserts a joint enterprise theory for indirect liability, it would be contrary to the law. Indeed, as recognized by the original panel in *Akamai Techs., Inc. v. Limelight Networks, Inc.*, the 1952 Amendment of the Patent Act was intended to define the only grounds of indirect infringement, and it would be impermissible to use a judicially created doctrine, such as joint enterprise liability, to expand such statutory grounds. 786 F.3d 899, 905 (Fed. Cir. 2015) (reversed and remanded on other grounds) ("*Akamai* Panel"). Specifically, on remand from the Supreme Court, the Federal Circuit panel explained: "Presented with numerous conflicting theories of joint liability that existed in the common law prior to 1952, Congress enacted specific rules for inducement and contributory liability in §271(b) and (c), respectively...

---

[23] *See* R. 77 at 25-26 ("Similarly, Shure also induces, through these joint enterprises, its customers' direct infringement of the '186 Patent.").

[and] it is not our position to legislate or contravene Congress's choice." *Id.* Though the *Akamai* Panel was reversed, the basis of reversal related to the facts alleged for direct infringement and conduct considered directing or controlling the acts of another. The *Akamai* Panel's reasoning differentiating legal basis for direct or indirect infringement was undisturbed, and is a clear explanation of why Courts are unable to expand indirect infringement beyond what is prescribed by statute. Thus, an allegation of a "joint enterprise to induce infringement" would be improper because it would effectively expand joint enterprise theory recognized as a direct infringement under 271(a) to also encompass liability under §271(b) and (c). *See id.* at 907. ("Congress carefully crafted subsections (b) and (c) to expressly define the only ways in which individuals not completing an infringing act under § 271(a) could nevertheless be liable.").

### C. ClearOne's Joint Enterprise Theory is Factually Unsupported

While Shure maintains that summary judgment of no joint enterprise liability should be granted in its favor, Shure also opposes ClearOne's summary judgment motion because ClearOne's claim is factually unsupported or, at the very least, factual dispute precludes finding the existence of the alleged joint enterprise. Whether a joint enterprise exists is a fact-based determination, requiring: "(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members, and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Akamai*, 797 F.3d at 1023. ClearOne cannot show that each of these factors exist based on the facts alleged.

ClearOne has not presented any evidence of express or implied agreement between Shure and Biamp/QSC related to infringement of the asserted claims. Shure did not seek to jointly develop a product with Biamp/QSC. SOF, ¶127. Rather, Shure sought to implement compatibility with the accepted industry-wide standard of the Dante communication protocol. SOF, ¶135. Biamp

and QSC independently decided to do the same with its own products. SOF, ¶¶128, 134. The interoperability of Shure and Biamp/QSC devices simply resulted from each companies' independent decision to follow that industry-wide standard. ClearOne's allegations of "co-development" between Shure and Biamp/QSC are entirely unsupported and mischaracterize the actual conduct of Shure and of Biamp/QSC. RSOF, ¶¶57, 58. In reality, as is standard in the industry, Shure openly publishes to anyone its "control strings," which are simply codes for communicating with its devices for certain features. SOF, ¶¶ 133, 221. There was no concerted agreement between Shure and Biamp/QSC, implied or explicit, to do anything, much less support an allegation of formation of a joint enterprise. ███████████████████████████

███████████████████████████████. ███████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████. SOF, ¶¶123, 124; RSOF, ¶56. Contrary to ClearOne's argument, a joint press release, even if considered jointly prepared, is insufficient for finding an agreement for the alleged joint enterprise. RSOF, ¶56; SOF, ¶125.

ClearOne's allegations of an alleged common purpose suffer from the same flaws as its argument for an agreement between the parties. Shure sought to implement interoperability of its devices with the industry-wide accepted Dante communication protocol. SOF, ¶¶132, 135; RSOF, ¶62. And it was the desire of companies in the audio conferencing industry in adopting this standard that provided interoperability between Shure and Biamp/QSC devices. SOF, ¶132.

ClearOne's alleged factual support for finding a "common pecuniary interest" is based on out-of-context testimony and mischaracterization of the facts.[24] Further, Shure has since revised

---

[24] ClearOne cites to Mr. Wiggins' in support of its claim that "60% of all MXA910s are sold for use with Biamp and QSC accused products," but Mr. Wiggins prefaced this number with "approximately" and that approximation has even less bearing on usage since 2019 now that PMAEC is standard on all MXA910s.

the MXA910 in a way that is contrary to what ClearOne alleges as the common interest of such a joint enterprise. Shure's inclusion of PMAEC makes use with a DSP from Biamp/QSC undesirable. SOF, ¶130. Also, in early, 2019 Biamp released its own ceiling-mounted beamforming microphone array product in competition with the MXA910. SOF, ¶126. These changes by Shure and Biamp not only show the lack of an alleged joint enterprise, it shows that, to the extent one ever existed, it ceased to exist at least by 2019. This is bolstered by the fact that Shure has removed any links to the 2016 "joint press releases" from its Web site. SOF, ¶119.

Finally, regarding an alleged "equal right to a voice in the direction of the enterprise," the evidence does not support that Shure had any control over whether third parties downloaded Shure's freely-available control strings, if they developed software or linkages through the strings, or in turn removed such software or linkages. SOF, ¶133; SOF, ¶221; RSOF, ¶65. Instead, the facts show that Shure and Biamp/QSC did _not_ have an equal right or voice in the direction of such activities, but rather Shure and Biamp/QSC were acting independently and conducting their respective ordinary course of business. _Id._

Because genuine questions of facts exist as to whether Shure and Biamp/QSC meet the required elements of a joint enterprise, ClearOne's motion for summary judgment that Shure formed a joint enterprise with Biamp/QSC should be denied.

## VI.    <u>CROSS MOTION</u>: The MXA910's Substantial Non-Infringing Uses Require Dismissal of All Contributory Infringement Theories from this Case

As ClearOne acknowledges (R. 863 at 30), contributory infringement under 35 U.S.C. § 271(c) requires that an accused device has no substantial non-infringing uses. "Non-infringing uses are substantial when they are not unusual, far-fetched, illusory, impractical, occasional, aberrant,

---

RSOF, ¶64. ClearOne also mischaracterizes the facts it cites in support of "pecuniary interest," which are actually community interests by the industry as a whole for Dante compatibility. RSOF, ¶64.

or experimental." *Vita-Mix*, 581 F.3d at 1327-28 (existence of substantial non-infringing uses defeated claim for contributory infringement as a matter of law); *Grunenthal GmbH v. Alkem Labs, Ltd*., 919 F.3d 1333, 1340 (Fed. Cir. 2019) (affirming no contributory infringement where use of medication in non-infringing manner "would not be unusual."). The party claiming contributory infringement bears the burden to prove a lack of substantial non-infringing uses. *Toshiba Corp. v. Imation Corp*., 681 F.3d 1358, 1364 (Fed. Cir. 2012) (affirming summary judgment for defendant where patentee failed to do so).

One cannot dispute that each of the accused products have non-infringing uses. The accused DSPs can process and mix signals from nearly any microphone, regardless of whether the signals are beamformed. SOF, ¶140. The MXA910 can be and is used for sound recording and capture, such as in press briefing rooms, interrogation rooms, reality TV show recording, and to capture and broadcast sound at sporting events. *See* Ex. 170 at 229:21–231:2, 298:15–299:4, 308:23–309:12; Ex. 236, ¶29; R. 171 at ¶38. In these instances, there *is* no "far end," so there obviously is no echo cancellation. In other instances, the MXA910 can send just a single mixed signal to a separate device, such as a DSP or codec. SOF, ¶141. ClearOne does not, and cannot, contend such a combination infringes, because there is no "plurality" of signals to echo cancel. *Id*.

ClearOne has failed to show that these non-accused and obviously non-infringing uses are insubstantial, as is their burden to maintain a contributory infringement claim. As to the DSPs, ClearOne has ignored the fact that they can each work with essentially any microphone, instead focusing exclusively on their use with the MXA910. As to the MXA910, ClearOne has ignored its non-infringing uses throughout this case, and ClearOne's own evidence shows such uses are not insubstantial. ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████. Ex. 178 at 267:18–268:13; R. 171 at ¶¶ 1, 4, 38. Such use is hardly "unusual" or "far-fetched," and the amount has only grown with the increasing prevalence of software codecs such as Zoom and Teams for conferencing.

ClearOne does not allege contributory infringement of the '806 Patent. Obviously the three non-drop ceiling mounting configurations provide for substantial non-infringing uses. But ClearOne *does* allege contributory infringement of the '186 Patent, even including a short section on it in its Motion. In that section, ClearOne notes Shure's contention that use of the MXA910's automix output is substantial and non-infringing, but claims that Shure advises users not to use it. R. 863 at 31. The document ClearOne lists does not contain the quote ClearOne recites, and in any event, it is not true. In fact, directly after the "gold standard" comment ClearOne repeatedly cites from Shure's 2016 webinar, the speaker promotes the non-accused MXA910 single-channel automix out for situations where you "just want to plug this thing straight into a soft codec," which "seems to be the popular thing these days." SOF, ¶142. In any event, even ClearOne's CEO acknowledges that use of software-based codecs in conferencing, which would involve using a single audio output from an MXA910, is experiencing exponential growth. SOF, ¶138.

ClearOne has failed to show that the obviously non-infringing uses of the accused devices are insubstantial, as was their burden. In fact, the evidence ClearOne has brought forth shows the uses *are* substantial, which is supported by Shure's unrebutted testimony. As a result, ClearOne's theories of contributory infringement should be dropped from the case as a matter of law.

VII.    **Significant Questions of Fact Prevent a Summary Determination that Shure Infringes the '186 Patent Under Each of ClearOne's Various Theories**

By reviewing the limitations of claim 1 and mostly referring back to the Court's preliminary findings issued two and a half years ago, ClearOne attempts to wrap up the lengthy and complex dispute over alleged '186 Patent infringement in ten pages. Its case is not so strong as it would like the Court to believe. "Infringement…is a question of fact," and ClearOne's Motion must be denied so long as "a reasonable jury could return a verdict" of non-infringement. *Cook Biotech, Inc. v. Acell, Inc.*, 460 F.3d 1365, 1373 (Fed. Cir. 2006). Yes, on a preliminary record years ago, the Court's opinion was that ClearOne had "the better of the arguments" on '186 liability. R. 863 at 4; R. 278 at 49. But having the better of the arguments is not the standard at summary judgment. Now the Court must go beyond assessing a "reasonable likelihood" of infringement and "must draw all justifiable inferences" in Shure's favor. *Cook*, 460 F.3d at 1373. There are many such inferences to draw, and many reasonable bases on which a jury could justifiably find non-infringement.

A.    **ClearOne's '186 Patent Infringement Theories are Complex and Reliant on Factual Findings Far Beyond Whether the Claims are Practiced**

ClearOne's '186 Patent infringement case is hardly a cut-and-dry question for the jury. Indeed, it takes ClearOne half a page of single-space text just to identify the scope of its motion. R. 863 at 1. The motion excludes MXA910s sold after June, 2019, or that have been upgraded to 4.x firmware, because they lack "fixed beams." SOF, ¶163. It excludes MXA910s running earlier firmware, because they lack AEC. SOF, ¶146. Thus, all of ClearOne's '186 Patent infringement theories require pairing old MXA910s with another device - - but not just any device or in any manner. For example, as discussed *supra* §VII, ClearOne does not accuse the MXA910 of infringing the '186 Patent when the Automix output is sent to a soft codec. Ex. 149; Ex. 146 at 42-44; SOF, ¶152. Rather, ClearOne's motion as to the '186 is limited to instances where an MXA910

running old firmware sends multiple audio signals to one of three specific DSP devices, two of which have never been made or offered by Shure. SOF, ¶127.

To prove infringement against these specific combinations, ClearOne must resort to theories involving joint enterprise, contributory infringement, and inducement. Shure has already explained above how the first two of these theories should fail as a matter of law. *See supra* §§ V, VI. At a minimum, these sections show why summary judgment of infringement based on these theories would be improper. The third theory (inducement) requires specific intent – a difficult showing. Thus, ClearOne's summary judgment bid for '186 infringement is quickly diminished before even reaching the many questions of fact surrounding whether the accused combinations even practice the claims.

### B. Numerous Material Questions of Fact Remain as to Whether the Accused Combinations Practice any Asserted Claims.[25]

While it is clear that no single accused device infringes the '186 Patent, there remain serious questions for the jury as to whether the devices, even when combined together, practice any of the claims. In an attempt to address some of these questions, "ClearOne relies on the October 22, 2019" opinions of its expert (R. 863 at 6), and its Rule 56.1 statement, which is laced with attorney argument, and which Shure largely disputes. *See generally*, RSOF. Such "evidence" cannot extinguish material disputes of fact, or preclude the jury from hearing Shure's defenses, which are supported by plausible theories, facts and expert testimony. *See, e.g.*, *Weber-Stephen Prods. LLC v. Sears Holding Corp.*, 13-cv-1686, 2015 U.S. Dist. LEXIS 170989, at *51-52 (N.D. Ill. Dec. 22, 2015) (Chang, J.) (denying summary judgment due to a "battle of the experts," stating

---

[25] Shure focuses on questions of fact broadly applicable to most or all claims here. Yet, Shure notes that ClearOne oversteps its contentions by suggesting for the first time that NLP relates to the dependent noise filtering claims, and reserves the right to address this issue at an appropriate time. SOF, ¶145.

that "[t]he Court cannot, on summary judgment, resolve the conflict in this [expert] testimony. And without resolving that conflict, the Court cannot award summary judgment.").

### 1. ClearOne cannot convert questions of fact involving plain and ordinary terms into questions of law

ClearOne also cannot deny or avoid questions of fact by suggesting they are "belated attempt[s]" at claim construction. R. 863 at 7, 8, 14. Whether the MXA910's omni-directional microphones, which the lead '186 Patent inventor admits ███████████████████████

███████████████████████████████████ SOF, ¶147; R. 869-1 at 127 (206:4–16)█

███████████████████████████████████

██████). ClearOne has provided no evidence of anyone orienting them, or how they are supposedly oriented. Whether Shure, Biamp, or QSC provide a processor "operably coupled" to a beamforming microphone array that is configured to perform AEC is another question of fact. SOF ¶151. The jury should decide if, as Dr. LeBlanc contends, this requires the processor to "operate or otherwise communicate instructions to the beamforming microphone array" (Ex. 236 at ¶39), or, as Dr. Schonfeld contends, it is sufficient that the devices are simply plugged together. Ex. 205 at 176:4–177:18. These questions do not require claim construction. They involve simple terms that have no special meaning in the art, and that neither party saw a need to have construed. *See* Ex. 245; Ex. 165.[26] While the parties may now dispute their plain meaning, some terms simply require no construction, as this Court has noted in this case. *See, e.g.*, R. 613 at 14. The jury should be able to resolve these questions, applying its lay understanding of the terms to the facts presented.

---

[26] ClearOne cannot sidestep a defense by arguing Shure should have raised it at claim construction when ClearOne did nothing to identify a dispute. In the on-going concurrent case involving the parent '553 Patent (the -2421 case), ClearOne has again asserted that all terms other than "fixed beam" should "have their plain and ordinary meaning when read in the context of the patent," but does not explain what it believes those plain meanings are. *See* Ex. 166 (7/31/20 email from C. Rayburn). Meanwhile, ClearOne's contentions, which consist of cutting and pasting content in from Shure documents without explanation, do little if anything to ferret out where the claim disputes lie, leaving Shure to guess.

### 2. On the evidence available, a reasonable jury could find that the MXA910's beams are not "fixed" under the Court's construction

Though Shure maintains that the beam parameters of the '186 Patent's "fixed beams" should not be capable of adjustment for purposes of appeal, it accepts the Court's construction here: "a beam defined by parameters that remain fixed during a conference." R. 613 at 20. But, applying that construction, a reasonable jury could find it is not met by the MXA910 even prior to implementation of AutoFocus, given the evidence available for trial.

First, ClearOne cannot seriously dispute that the MXA910's beam parameters may change during a conference. SOF, ¶148. A user can change the look direction or elevation angle of a beam in seconds with a simple input to the user interface. *Id*. This can also be done automatically through use of control strings. *See* Ex. 187 at 172:11–173:16. ClearOne's snippets of Mr. Cerra's deposition testimony suggesting he did not know how someone would change beam parameters in a conference simply exposed his misunderstanding of the question, and the testimony was corrected. *See* RSOF, ¶23. Indeed, he submitted a declaration explaining how to do it. R. 169 at ¶¶13–15.

Second, ClearOne cannot seriously dispute that users have changed MXA910 beam parameters during conferences. SOF, ¶149. William Seifert, VP of Operations at a major integrator, testified that he has personally done so, and that CTSI does so for its clients. *Id*. ClearOne's speculation that "some might call them different conferences" (R. 862 at ¶25), or that these somehow are not "regular conference[s]" (R. 863 at 10), do not erase this testimony and underscores the factual inquiry required here. As with the other simple terms discussed above, the jury can decide what a conference is and when it is over.

And, while we know that the beam parameters of the MXA910 can and have been changed during conferences, ClearOne has produced no reliable proof that they have been held constant—

despite the Court having made clear this would be ClearOne's burden at the *Markman* Hearing. *See* Ex. 190 at 27:22–28:3. Instead, ClearOne relies on a handful of largely boilerplate declarations it obtained from companies in exchange for withdrawing deposition subpoenas. Aside from being inadmissible hearsay, the declarations fail to prove anything other than that, "to the best of [the declarants'] knowledge," their employers do not "reconfigure microphone arrays during conferences." . These statements lack foundation. Not one declarant said they are aware of a single conference where an MXA910's beam parameters were *not* adjusted. Not one declarant said they attend all of their company's conferences…or *any* of them for that matter. On this record, a reasonable jury could certainly conclude that the MXA910 does not meet the Court's construction of fixed beams.[27]

### 3. There is a material question of fact as to whether any of the accused DSPs "select" given the parameters set by ClearOne's own technical expert

Each of the '186 Patent claims require the signal selection module to *select one or more signals for transmission to the far end*. This is not just selection in a vacuum - - the selected signal(s) are those to be sent out. The only items ClearOne has identified as the claimed "signal selection module" are the gating automixers in each of the accused DSPs. SOF, ¶152. It is undisputed that these devices each receive multiple input signals, apply various levels of attenuation to the signals, and then mix the results together into a combined signal for transmission to the far end. SOF, ¶153.

On a preliminary record, this Court found that "selection by attenuation is an accepted method of signal selection." R. 278 at 13. And there is no dispute that an automixer can serve as a

---

[27] Also, ClearOne risks admitting invalidity with its final point that the MXA910 need only be "reasonably capable" of remaining fixed throughout a conference. R. 863 at 10. Certainly a product built in accordance with the teachings of K-01 would also be "reasonably capable" of doing so.

selector within the scope of the '186 Patent claims if it <u>completely</u> attenuates all but one input signal, because then the mixing process results in that same unattenuated input signal. *See, e.g.*, Ex. 236, ¶49. But that is not how the automixers in the accused devices work. They apply only modest levels of attenuation to the input signals, with an intent that each input contributes meaningfully to the mixed output. SOF, ¶154. Thus, the jury will have to decide whether the modest attenuation applied in the accused automixers is a selection within the scope of the '186 Patent claims. There is plenty of evidence to support such a conclusion. As Dr. LeBlanc explains, this is desired in audio conferencing so as to blend in the background noise at a reduced level, which leads to smooth transitions and avoids harsh "pops" associated with switching outputs, such as a multiplexor would do. *See* Ex. 236, ¶51; Ex. 112 at slide 9. Dr. LeBlanc provided test results along with his expert report that demonstrate how the default levels of attenuation applied by the accused automixers leave quite audible and substantial signals for mixing purposes. *See generally* Ex. 112. Thus, the question for the jury is whether this modest level of attenuation is enough to result in the claimed selection of one of the inputs, or whether the result is a mixed signal distinct from any input.

According to ClearOne's expert Dr. Schonfeld, the claimed "selection" must be of one or more of the discreet inputs – not a combination of them.

> "Even if you can have two output signals, ***if it would blend the two signals*** in both outputs, ***then it would not have selected***. The ***selection requires that the outputs reflect one of the signals of the inputs***, and therefore, you can have multiple outputs selected, but ***each of them has to be triggered by something where all are zero except for one or close to zero except for one of them***"

> …

> "So this is not one that will do selection. It will mix, but not in mix -- not according to a mixer which just chooses one, but it will mix in the sense that it will just combine them. There is no disclosure of using this with only -- by only selecting one of the input signals."

Ex. 179 (Schonfeld Tr.) at 153:11–18, 172:14–20 (emphasis added). When attempting to distinguish the prior art, ClearOne has also independently taken the position that producing a mix of the inputs is not "selection within the meaning of" Dr. Pandey's invention. SOF, ¶156. Thus, there is no dispute that an automixer *can* select through attenuation. But, even according to ClearOne and its technical expert, if the attenuation is not so drastic that the mixer essentially "just chooses one," then it is not selection "within the meaning of" the claims. Given the very modest attenuation levels of the accused automixers, and particularly in light of Dr. LeBlanc's test results, a reasonable jury could (and should) find that the accused automixers are not performing the required selection. At bottom, both parties would agree that there is some level of attenuation that is not selection. There is a dispute as to what that level is, and it is something the jury should determine after literally <u>hearing</u> the evidence.

### 4. Whether the "Last Mic On" feature practices limitation 6 is a heavily disputed question of fact

The Court has referred to limitation 6 as the "inhibit clause," and has determined that the "signal selection module" need not receive the far-end signal to practice it. R. 613 at 14. But the signal selection module still must "use the far end signal as information" to meet the limitation, which is required by each '186 Patent claim. The only feature ClearOne has alleged to perform the inhibit clause in the Biamp Tesira/TesiraForte and the QSC Q-Sys is their "Last Mic On" (LMO) feature. SOF, ¶157. This feature works the same way in all accused DSPs for all purposes relevant to limitation 6 (*Id.*), and all three companies deny that this age-old feature uses the far-end signal as information. Ex. 187 at 204:19-205:11 (Shure); Ex. 206 at 137:25-138:5 (QSC; *see also* Ex. 118 (showing LMO is part of Q-Sys automixer)); Ex. 176 at 102:21-103:5; R. 159 at ¶13 (Biamp); *see also* Ex. 79 at 4 (showing LMO is part of Tesira automixer). Indeed, in the accused devices, the far end has no effect on LMO functionality whatsoever.

45

LMO is a feature used to prevent gating changes based on small or insignificant sounds during periods where no one is talking. *See* R. 170 at ¶63; R. 169 at ¶11; R. 159 at ¶12. The concept is simple. If the signal strength on all channels falls below a set threshold (say 15 dB), the automixer will hold the last channel that was above that threshold in an unattenuated state until the signal strength of another channel exceeds it. *See* R. 169 at ¶11; Ex. 180 at 57:23–58:3. At that point, the automixer will unattenuate the channel that exceeded the threshold. *See Id.*, ¶¶11–12. If there were no threshold, the automixer would chase noise during non-speech periods by unattenuating channels in response to softer sounds such as paper shuffling, a pen clicking, etc. *See* R. 170 at ¶63; Ex. 175 at 138:1-141:4, 155:8-157:10. Alternatively if a threshold were used, and all channels with signal strength below it were attenuated, the output would give the perception of a dropped call or the end of a recording. *See* R. 169 at ¶11; R. 179 at ¶63. Thus, LMO provides a steady "comfort noise" during non-speech periods. Ex. 180 at 55:9–20; Ex. 236 at ¶62.

None of this has anything to do with the far end. Indeed, LMO works exactly the same when there is no far-end connection at all. For example, if a deposition were being recorded using the accused system, and everyone participating was present in the room such that there was no far-end connection, LMO would keep the automixer from chasing noise during non-speech periods in the exact same manner as described above. *See* Ex. 175 (LeBlanc Tr.) at 137:22–138:20. In cases where there *is* a far-end connection, the AEC removes it before it reaches the automixer where LMO resides.[28] As a result, LMO is nescient to far-end activity—it works exactly the same "when only the far end is active" as it does otherwise. It certainly does not "focus on the information provided by the far-end signal," as this Court has described to be the plain and ordinary meaning

---

[28] The AEC is not part of, and is claimed separately from, the "signal selection module," which is what must "use the far end as information" to inhibit selection. SOF, ¶144.

of "uses the far end as information." R. 613 at 14. Meanwhile, AEC does *not* remove noises created

on the near end. The only thing that matters to LMO function is the activity on the *near* end.

The Court made the following observation at the preliminary injunction stage:

> "*For last mic on to work properly, the selector must either be able to recognize the far-end signal as the far-end signal (to avoid treating it as a near-end talker), filter out the far-end signal to prevent it from being transmitted, or recognize that only the far-end is active and halt the signal selection process accordingly*."

R. 278 at 19–20. This misunderstanding of the function of LMO likely results from the fact that

the parties were more focused at preliminary injunction on the requirements of the inhibit clause

rather than on explaining how LMO actually works. While ClearOne is happy to cite this comment,

it is nevertheless inaccurate. The Biamp and QSC automixers, which ClearOne identifies as the

"selector," cannot and do not recognize the far-end signal because they do not receive a far-end

reference. They do not filter out the far-end signal – AEC does this before it reaches the automixer.

And they have no way to recognize if the far-end signal is active. Yet, LMO works in those devices

just fine. It does so because LMO has nothing to do with the far-end signal. The jury should have

the opportunity to hear how LMO really operates, as explained by the companies that employ it,

and make the determination as to whether it uses the far end as information to perform its task

based on the facts presented.

### C. The Jury Should be Allowed to Hear the Evidence Before Making Any Determination as to Alleged Inducement

As a precursor to inducement, ClearOne must establish direct infringement. *Limelight*

*Networks Inc. v. Akamai Techs, Inc*., 134 S. Ct. 2111 at 2117 (2014) ("Our case law leaves no

doubt that inducement liability may arise if, but only if, [there is] direct infringement."). If the

combination of accused devices do not practice each limitation of any '186 Patent claims, there is

no direct infringement, and thus, no inducement. It then stands to reason that if any of Shure's

arguments in the above Section B present material questions for the jury, they would also pose a material question as to alleged inducement.

ClearOne begins its argument by claiming Shure induces by "making, using, selling, offering to sell the '186 [] Accused Products…." R. 863 at 27. But Shure does NOT make, use, sell or offer the '186 Accused Products. Biamp sells the Tesira and QSC sells the Q-Sys. SOF, ¶127. ClearOne's direct infringement theory as to these products relies on joint enterprise, which cannot be a basis for inducement. *See* § V, *supra*. Meanwhile, ClearOne has failed to show that any third party has used the combination of '186 Accused Products in the manner that it alleges infringes the '186 Patent. ClearOne's evidence relating to use involves a number of hearsay declarations from persons that "are not aware" of their employers reconfiguring beams during conferences but also are seemingly not aware that they don't, and of a few companies that enable the LMO feature. R. 862 at ¶26; RSOF at ¶¶ 26, 36. A reasonable jury could reject inducement simply on a failure of proof as to direct infringement by the supposedly induced.

However, beyond direct infringement, ClearOne must also show Shure had "an affirmative intent to cause direct infringement," *i.e.*, that it "possessed specific intent to encourage another's infringement." *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc*). Obviously Shure could not have harbored such an intent if it had a reasonable belief that what it was encouraging does not constitute infringement. *See, e.g., Manville Sales Corp. v. Paramount Sys*., 917 F.2d 544, 553 (Fed. Cir. 1990) (reversing finding of inducement where defendant had a good faith belief of non-infringement). As explained in more detail in § VIII, *infra*, Shure has always held a reasonable belief that it does not infringe the '186 Patent, and still does today for at least the reasons discussed in the prior section. Indeed, it was Shure that filed this case initially,

because it did not believe ClearOne's allegations of infringement. R. 1. It thereafter obtained independent opinions of counsel explaining that it does not infringe, as discussed below.

Further, what Shure actually encourages is contrary to the '186 Patent's teachings. The MXA910 was designed to have adjustable beams, and Shure released it with a user interface and selectable templates encouraging such adjustment. SOF, ¶148; R. 169 at ¶¶13–15; Ex. 180 at 149:14–150:15, 212:5–21; Ex. 187 at 172:11–173:16. Through its default attenuation settings in the P300, Shure encourages users to maintain an audible volume level on all channels so that the sound from all directions is mixed together, rather than sound from a single channel being selected as required by the '186 Patent. *See* Ex. 127 at 23 (under gating automix mode: "Off-attenuation in this mode is fixed at -20 dB per channel, regardless of the number of open channels."). As to use with of the MXA910 with the Biamp Tesira or the QSC Q-Sys, ClearOne cannot prove Shure's intent by showing encouragement of such use by Biamp or QSC, as ClearOne attempts to do. *See, e.g.*, R. 862 at ¶67; R. 870-3 at 23–24; R. 869-1 at 136–39. ClearOne's evidence relating to *Shure* encouraging this use pre-dates the '186 Patent (SOF, ¶119) and is therefore ineffective. *Nat'l. Presto Indus. v. West Bend Co*., 76 F.3d 1185, 1196 (Fed. Cir. 1996) ("[W]hen no patent has issued at the time of the inducement, there cannot be a violation of §271(b).").

"Intent is a factual determination which is within the province of the trier of fact." *Fujifilm Corp. v. Benun*, 05-cv-1863, 2008 U.S. Dist. LEXIS 49719, *30-31 (D.N.J. June 30, 2008) (denying summary judgment of inducement where defendant took defensive measures) (*citing Water Techs. Corp. v. Calco, Ltd*., 85 F.2d 660, 668 (Fed. Cir. 1988); *see also Ecolab, Inc. v. FMC Corp*., 569 F.3d 1335, 1351 (Fed. Cir. 2009) (denying motion for JMOL of inducement where defendant produced evidence from which jury could have found defendant reasonably believed it

did not infringe). For the various reasons above and in the preceding sections, the question of whether Shure induced infringement as alleged by ClearOne should proceed to the jury.

## VIII. <u>CROSS MOTION</u>: ClearOne's Bid for Willful Infringement of the '186 Patent Should be Denied as a Matter of Law

As discussed in § V, *supra*, the bulk of ClearOne's '186 Patent infringement case should be denied as a matter of law for lack of a joint enterprise. The remainder of ClearOne's complicated theory of '186 Patent infringement, which requires coupling an old version of the MXA910 to specific DSP devices in a particular manner, involves significant questions of fact, as covered in § VII. But those questions do not include one of willful infringement.

Willfulness involves mudslinging. It would involve ClearOne attempting to paint Shure as "wanton, malicious, and [as acting in] bad-faith." *SRI*, 930 F.3d at 1309 (Fed. Cir. 2019) (finding insufficient evidence that the defendant's "conduct rose to the level of wanton, malicious, and bad-faith behavior required for willful infringement."). Such attempts typically prejudice the defendant in the underlying infringement case, causing willfulness to be bifurcated. *Mass. Inst. of Tech. v. Shire Pharms., Inc.*, 839 F.3d 1111, 1125-26 (Fed. Cir. 2016) (discussing the "increasing regularity" of district courts bifurcating willfulness) (O'Malley, J., concurring). But the complications associated with an attempt to show willfulness are unwarranted here because the evidence clearly shows Shure has never been a willful infringer of the '186 Patent. Because ClearOne cannot meet its burden in light of the evidence, even when viewed most favorable to ClearOne, the '186 Patent willfulness count should be dismissed as a matter of law.

### A. Shure Did Not Copy Anything from ClearOne in Designing the MXA910

Regardless of how ClearOne may want to present the story, this simply is not a case with facts "characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). ███████████████████████████████████████████

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] *See* Ex. 124 at 223–26. [REDACTED]

[REDACTED]

[REDACTED] *See* Ex. 122 at 1, 12.

By the time Shure obtained a ClearOne BMA for benchmarking purposes [REDACTED]

[REDACTED]. SOF, ¶112. And, as ClearOne's own inventors have testified, benchmarking a competitor's product is not copying. *See* Ex. 191 at 145:22–147:25 (Bathurst [REDACTED]

[REDACTED] Ex. 208 at 181:3–183:2 (Graham); Ex. 168 at 106:10–25 (same); Ex. 192 at 122:13–130:25 (Lambert). [REDACTED]

[REDACTED]. *See* R. 169, ¶7; Ex. 180 at 98:6–101:23.

[REDACTED]

[REDACTED]. Ex. 259 ClearOne's BMA and Shure's MXA910 look nothing alike, have completely different components, and very unique microphone layouts. SOF, ¶¶ 113, 114. [REDACTED]

[REDACTED]

[REDACTED] *See* R. 417 at ¶¶ 12, 23; R. 171 at ¶66; Ex. 185 at 20:15–24:13, 96:15–97:1; Ex. 254 at ¶¶ 9-11. There is simply no evidence on which a jury could rely to infer that Shure took anything from ClearOne's BMA.

Likewise, Shure took nothing from the '186 Patent. The Patent wasn't even *filed*, let alone issued, until several months after Shure launched the MXA910. SOF, ¶115. ClearOne did not reach

51

out to Shure about alleged infringement until March 10, 2017 (R. 1-1) - - after more than a year of MXA910 sales. See *SRI*, 930 F.3d at 1309 (no willfulness as a matter of law where notice letter came years after accused product was on sale); *Bioverativ*, 2020 U.S. Dist. LEXIS 49602 at *12-13 (summary judgment of no willful infringement where there was "no evidence of inappropriate deliberate copying of the commercial product...nor any evidence of the copying of the patented methods."). While copying is not a prerequisite to willfulness, its complete absence combined with the factors below make a finding of willful infringement unsupportable here.

### B. Shure Obtained Opinions of Counsel that Its Accused Products Do Not Infringe the '186 Patent, and that the Patent is Invalid.

There is no requirement that a company obtain an opinion of counsel when threatened with patent infringement. Indeed, the Patent Act prevents patentees from suggesting a company's failure to obtain an opinion is evidence of willful infringement. 35 U.S.C. §298. But where a company *does* obtain a reliable opinion of counsel, it is definitely evidence *against* a finding of willfulness. *Transmatic,* 53 F.3d at 1279 (no willfulness due to good faith reliance on counsel's opinion); *Braun*, 975 F.2d at 822-24 (reversing willfulness verdict based primarily on opinion of counsel defense); *Omega Patents, LLC v. CalAmp Corp.*, 920 F.3d 1337, 1353 (Fed. Cir. 2019) ("an accused infringer's reliance on an opinion of counsel regarding noninfringement or invalidity of the asserted patent remains relevant to the infringer's state of mind post-Halo.").

Shure has repeatedly consulted with an outside patent attorney named Paul Nykaza regarding the '186 Patent. Mr. Nykaza has spent an entire career prosecuting patents before the U.S. Patent and Trademark Office, and considering the validity and infringement of U.S. patents, issuing over a hundred opinions on such matters to clients. *See* Ex. 212 at 17:20–19:10. █████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

 *See* Ex. 115. ████████████████████

████████████████████████████

████████████ *Id.* ████████████████████

████████████████████████████

██████████████████████

On March 16, 2018, the Court issued its opinion denying ClearOne's request for preliminary injunction on the basis that the '186 Patent is not likely to "withstand Shure's validity challenge." R. 278 at 35. However, the opinion also preliminarily found that the combination of asserted products likely infringed the '186 Patent based on the evidence available at that time. As a result, ████████████████████████████

████████████████████. *See* Ex. 116 at 1. Ultimately, on

████████████████████████████

████████████████████████████

████████████████████████████

████████. *Id.* at 4–5. ████████████████

████████████████████████████

████████████████████████████

████████ Mr. Sullivan is not an attorney, and certainly not a patent attorney. It is reasonable for him to rely on an expert in the field of patent law such as Mr. Nykaza, particularly where Mr. Nykaza's opinions intersect with those on which Shure continues to rely in this hard-fought case.

## C. Shure has, at All Times, had a Strong Basis to Believe It Will Prevail in this Lawsuit

A finding of willful infringement cannot be based simply on the continuance of an allegedly infringing activity despite knowledge of the patent. *J&M Indus.*, 2020 U.S. Dist. LEXIS

76881 at *106 (summary judgment of no willful infringement where "[t]he decision to continue sales of its product and to litigate an allegation made by Plaintiff is hardly evidence of subjective bad faith."); *Universal Elecs.*, 2019 U.S. Dist. LEXIS 74623 at *40 ("knowledge and continued infringement alone are insufficient to state a claim for willful infringement."); *Intellectual Ventures I LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 612 (D. Del. 2017) (summary judgment of no willfulness where evidence only showed that the defendant continued to update, produce, and sell accused products following filing of the lawsuit). Yet, there really is nothing else credible that ClearOne could present to a jury beyond Shure's knowledge of the '186 Patent and its continued production and sale of the MXA910 and P300. That alone cannot prevail, and certainly not given Shure's opinion of counsel reliance and complete absence of copying discussed above.

In addition, at all times, it has been reasonable for Shure to continue it sales. Willfulness "turns on the subjective belief of the accused infringer, measured at the time of the challenged conduct." *Velocity Patent LLC v. FCA US LLC*, 319 F. Supp. 3d. 950, 971 (N.D. Ill. 2018). Even from when Shure received ClearOne's March 2017 letter, it did not believe ClearOne's claims had merit. The patent required AEC – the MXA910 had none. The patent required fixed beams – the MXA910's beams were adjustable. ClearOne's theory required combination with products made by other companies. The patent admits most of its disclosure is in the prior art, basically combining known beamforming methods with known per channel AEC. So, on the day the '186 Patent issued, Shure filed a lawsuit to clear the air, seeking a declaratory judgment to confirm Shure's position, and confident that this Court would find the '186 Patent invalid and/or not infringed. This is not the behavior of a willful infringer who lacks a subjective belief of good intent. Shure did not conceal anything. It took ClearOne's allegations head on, and has continued to do so.

A few months later, Shure served its Initial Non-infringement and Invalidity Contentions relative to the '186 Patent. Ex. 244. This was not a thread-bare document. It was over one hundred pages of reasons Shure should continue selling its products, including over 80 pages of detailed, single-spaced charts measured against the claim limitations of the '186 Patent. *Id*. In January of 2018, Shure voluntarily amended its contentions, in part to address its newly-released P300 that ClearOne had also then accused. This amended set of contentions swelled to nearly 200 pages, including eight separate detailed bases for prior art invalidity. Ex. 240. Admittedly, the Court preliminarily rejected some of Shure's non-infringement positions in its March 16, 2018 Order. But that Order also *denied* ClearOne preliminary injunction. "A court cannot fault an infringer, and punish it with enhanced damages, for continuing to sell its product in the absence of a preliminary injunction," and certainly not after having *denied* one. *Creative Compounds*, 2010 U.S. Dist. LEXIS 69795 at *21. Moreover, the Court's order specifically questioned the validity of the '186 Patent, simply reinforcing Shure's good faith belief that the patent was invalid.

Shure's invalidity case grew only more potent as discovery progressed, adding the Hamalainen reference (R. 854 at 30–33) and other combinations the Court has not yet considered. *See* Ex. 243. Meanwhile, with the release of its 4.x firmware in June of 2019, Shure's non-infringement case became essentially guaranteed. Indeed, both ClearOne's technical expert and its litigation counsel have admitted in writing and/or under oath that the current MXA910, regardless of whether it is used with a DSP or not, does not infringe the '186 Patent. *See* § IX, *infra*; Ex. 217 (10/30/19 Schonfeld Tr.) at 223:10–18 ("The MXA910 both before the new version and after do not infringe on the asserted claims of the '186 patent under my interpretation of the claims."). No competent jury could find *infringement* with such admissions – let alone willful infringement.

This has been a hard fought case. It should be sent forward on the meritorious issues that involve questions a reasonable jury could answer either way. Willful infringement of the '186 Patent is not one of those questions.

## IX. CROSS MOTION: The Court Should Grant Summary Judgment that the MXA910 with AutoFocus Does Not Infringe the '186 Patent, Regardless of Whether It Is Connected to a DSP

On June 12, 2019, Shure released the first 4.x version of firmware for its MXA910. SOF, ¶160. This firmware, and subsequent updates, have included a feature called AutoFocus, which operates to continuously track desired sound sources and optimize the beam parameters during conferences. *Id.*; *see also* R. 631 at ¶9; Ex. 213 at 17:13–20:14, 176:19–177:13, R. 629 at ¶¶ 8–16; Ex. 253. AutoFocus is a default feature that cannot be disabled, and is included in every MXA910 Shure has sold since June 12, 2019. SOF, ¶160. With Shure's active encouragement, most MXA910's operating in the United States that were sold prior to that date have been upgraded to 4.x firmware, and now include AutoFocus. *Id.*, ¶164.

Each of the '186 Patent claims require "fixed beams," construed as beams defined by parameters that remain fixed during a conference. *See* R. 28-1; R. 613 at 20. There is no question that the beams of an MXA910 equipped with AutoFocus do not meet this requirement. SOF, ¶161. While Dr. LeBlanc and Dr. Oxford have both explained how it is possible for an adaptive beamformer to meet this construction in situations where talkers are stationary (R. 509 at ¶¶ 34–35; Ex. 232 at ¶39), the MXA910's AutoFocus is very sensitive to changes in source direction and is always estimating the proper center point of a beam in three dimensions, even when the sound source is perfectly still. R. 629 at ¶8 (Dr. LeBlanc explaining how the AutoFocus beam in his testing shifted every few seconds even when the talking position was unchanged). ███████████

███████████████████████████████████████

███████████████████████████████

It is surprising that a cross-motion on this issue is even necessary. Conceding direct infringement, ClearOne put forth contentions accusing the MXA910 with AutoFocus of infringement under the doctrine of equivalents on August 5, 2019. R. 555-1. But ClearOne's contentions are stale and not defensible, as they were submitted before Dr. LeBlanc had provided his AutoFocus analysis (R. 629), before Dr. Schonfeld had tested the product, and before ClearOne took Shure's deposition on AutoFocus – a deposition Dr. Schonfeld attended. SOF, ¶162. ███

████████████████████████████████████████████████████████████████

█████████████████████████████████

      ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

    ████████████████████████████████████████████████

About two months after ClearOne served Dr. Schonfeld's report, but while its motion seeking leave to add AutoFocus infringement contentions was still pending, ██████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████. Shure had opposed ClearOne's then-pending motion because Shure recognized the frivolous nature of ClearOne's DOE contentions. *Id.* at 2. Shure was certainly not prepared to waive its right to oppose a motion to enter even more frivolous

"contingent" contentions.[29] ████████████████████████████████████

████████████████████████████████████████. *Id.* But ClearOne left the motion

in place, and the Court subsequently granted it without being informed that ClearOne no longer

supported the contentions the motion sought leave to enter. R. 686 at 4.

It is unfortunate that Shure has had to expend resources to overcome a theory that ClearOne

has clearly and admittedly abandoned. The Court should grant Shure's motion and issue a

declaration that the MXA910 operating with firmware 4.0.12 or higher does not infringe the '186

Patent, regardless of whether or not it is used in association with a separate DSP device.

## X.  CROSS MOTION: ClearOne is not Entitled to Lost Profits as a Matter of Law

The availability of lost profits is a question of law that may be resolved on summary

judgment.[30] The remedy of lost profits is only available upon the patent owner demonstrating that

such an award is appropriate.[31] ClearOne's damage expert presents two lost profit scenarios: one

analysis pursuant to *Panduit*[32] and a second analysis under *Mor-Flo*.[33] SOF, ¶167.[34] Both fail as a

matter of law.

---

[29] Shure need not address contingent theories outside of ClearOne's contentions, but maintains that ClearOne's position in this regard is wholly improper. A finding that K-01 can encompass "fixed beams" as construed, which would be completely appropriate (*see* R. 854 at 27–30), would not change the construction of "fixed beam" or affect whether the MXA910 with AutoFocus infringes. Rather, it would simply confirm what Shure has been saying all along – that both K-01 and the MXA910 *without* AutoFocus have the **ability** to update beam parameters, but (unlike the MXA910 *with* AutoFocus) may both be used without exercising that option.

[30] *See Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1365 (Fed. Cir. 2008) (availability of lost profits is a question of law); *see also Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1293 (Fed. Cir. 2007).

[31] *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995) (patent owner must show "but for" the infringement, he would have made additional profits); *Wechsler*, 486 F.3d at 1293–94 (reversing denial of JMOL of no lost profit damages where patent owner could not establish but-for causation).

[32] *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

[33] *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577-80 (Fed. Cir. 1989).

[34] For purposes of this motion, Shure removes the dispute of whether the "installed audio conferencing endpoints market" or IACE market (Ex. 226 (Bakewell Rpt.) at ¶65) is the appropriate market for ClearOne's BMA) line of products, and assumes that ClearOne's definition of the relevant market as the "installed audio conferencing endpoints market" is accurate.

### A. ClearOne is not Entitled to Lost Profits Under *Panduit*

Under *Panduit*, the patentee must show: "(1) demand for the patented product; (2) an absence of acceptable, non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profit that would have been made." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1380 (Fed. Cir. 2017). Although ClearOne's evidentiary offering on each of these factors is woefully insufficient, even when viewed in light most favorable to ClearOne, no reasonable jury could find a lack of acceptable non-infringing substitutes for ClearOne's BMA, or that ClearOne had the manufacturing and marketing capability to exploit the demand in the "but-for" world without the MXA910 in the market. As such, ClearOne is not entitled to lost profit damages for BMA sales it allegedly lost.

### 1. ClearOne cannot show the absence of non-infringing alternatives for the BMA as required for lost profit damages under *Panduit.*

A non-infringing alternative must be a (1) non-infringing product that (2) "would be acceptable compared to the patent owner's product." *Presidio*, 875 F.3d at 1381. To assess whether a particular product would be acceptable compared to the patent owner's product, inquiry into the "benefits of advantages of the patented invention" is appropriate.[35]

Lost profits "under *Panduit* are not easy to prove." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1285 (Fed. Cir. 2017). "The second factor, absence of acceptable non-infringing alternatives, often proves the most difficult obstacle for patent holders." *Id*. at 1286. "[I]f there is a noninfringing alternative which any given purchaser would have found acceptable and bought, then the patentee cannot obtain lost profits for that particular sale." *Id*. Instead, "[f]or sales in which the patentee cannot prove the elements necessary to establish entitlement to lost profits, the statute guarantees the patentee a reasonable royalty for those sales." *Id*. In this case,

---

[35] *See, e.g., United States Gypsum Co. v. Lafarge N. Am. Inc*., 670 F. Supp. 2d 748, 761 (N.D. Ill. 2009).

ClearOne cannot contest that the vast majority of the products Mr. Weinstein identifies as adequate substitutes do not infringe either the '186 or '806 Patent. SOF, ¶175. Nor can ClearOne contest that these products were available throughout the damages period. SOF, ¶176. Thus, ClearOne must prove that the alternative products in Mr. Weinstein's report would not be ***acceptable*** compared to the patent owner's product. Based on the breadth and commercial success of these products, and the evidence that the products are competitive with the accused products and ClearOne's BMA, no reasonable jury could conclude an absence of acceptable noninfringing alternative products as is required for lost profits under *Panduit*.

### a. The alleged benefits of the '186 invention are found in the non-infringing products

ClearOne alleges that the benefit of its product is improved audio quality and/or enabling positioning the audio product away from the talker and off the table. (R. 430 at 15.) With respect to "improved audio quality," ClearOne has failed to establish that its product has an improved audio quality over any other audio conferencing product. SOF, ¶168. Its own expert testified that "***the vast majority***" of the products in the installed audio conferencing endpoints (IAEC) market have enterprise-grade audio quality (*i.e.*, the audio quality necessary to compete with the BMA). SOF, ¶169. Not only has ClearOne failed to identify what products are, in fact, in the IAEC market (SOF, ¶202),[36] it has not even attempted, to show that any of those products have (or consumers believe these products have) non-enterprise grade or inferior audio quality. SOF, ¶168.

AVI Systems, Inc. (AVI), a major integrator, did submit testimony in this case regarding audio quality of the BMA product and stated that the actual audio quality is not that which ClearOne touts in its marketing materials. SOF, ¶185. AVI also tested the Sennheiser

---

[36] Mr. Waadevig identified that such products are typically used in a professional setting and are semi-permanently installed. Those criteria are met for the acceptable non-infringing substitutes identified here.

TeamConnect2 product and found its audio quality to be superior to that of the BMA. *Id.* The evidence shows that the BMA's inferior audio quality was also known to the market. For example, AVI received complaints that the BMA resulted in a hollow signal where the leading and trailing edges of speech were difficult to discern. SOF, ¶181, 185. Mr. Yandell of AVI agreed with Mr. Weinstein in that the Polycom HDX, ClearOne's Ceiling Microphone Array (CMA) and others were all acceptable substitutes for the BMA during all periods of the alleged infringement. SOF, ¶182. In the case of the Polycom HDX, Mr. Yandell did not merely offer an opinion as an expert as to the acceptability, he gave a concrete example of when AVI *replaced* BMA units with Polycom HDX microphones. *Id.* ███████████████████████████████████

████████████████████████████████████████████████████████

██████████████████

Mr. Schonfeld's opinion about the unsuitability of certain products is without basis as he failed to test or include any benchmark with respect to the BMA. SOF, ¶¶168, 178. As the inquiry is whether the consumer would find a product acceptable over *the patent owner's product*, Mr. Schonfeld's conclusion is based on erroneous methodology. *Presidio*, 875 F.3d at 1381 (noting the proper inquiry is between patent owner's product and other alleged substitutes). █████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

The only integrators and end-users who offered testimony in this case all agree that numerous non-infringing substitutes exist to ClearOne's BMA. SOF, ¶182-184. ██████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

For at least these reasons, any number of products identified by Mr. Weinstein, including at least Sennheiser's TeamConnect2, Shure's MXA910 without connection to a DSP, Polycom's HDX ceiling microphones, Biamp's Devio DCM-1, and ClearOne's CMA were all suitable non-infringing alternatives to ClearOne's BMA that offered enterprise grade audio quality, were unobtrusively ceiling-mounted, and were available at the time of the MXA910 release.

> **b.** **ClearOne's theory of lost profits damages is inconsistent with its assertions regarding non-infringing alternatives with respect to the '806 Patent**

ClearOne's damage expert asserts that many of Shure's MXA910 sales would have been made by ClearOne but for the infringement of the '806 Patent. Ex. 226 (Bakewell Rpt.) at internal exhibits 1.0 & 1.1. However, ClearOne did not sell a product that allegedly practiced the '806 Patent until February 2019. SOF, ¶195. The alleged benefit of the '806 Patent is "beamforming microphone array technology implemented in a ceiling tile form factor." (R. 369, p. 2.) The Sennheiser TeamConnect2 product, for example, comprised a beamforming microphone array in a ceiling tile form factor in 2016. SOF, ¶170. Like the BMA, numerous other microphone products sold during the period of alleged infringement included beamforming technology and were not located on a tabletop, which ClearOne acknowledged to be competitors before the damages period for the '806 Patent. SOF, ¶¶170-174, 177. Accordingly, ClearOne's position that it would have made certain MXA910 sales despite not practicing the '806 Patent, while also asserting that no acceptable non-infringing alternatives exist, cannot be reconciled. These facts demonstrate that ClearOne is not entitled to lost profit damages for alleged infringement of the '806 Patent, and *certainly* not prior to February 2019, when ClearOne first offered a product that allegedly practices and enjoys the benefits of the '806 Patent.

62

### c. The evidence shows that customers are choosing products other than ClearOne's BMA

In a patent infringement case where no preliminary injunction was issued, expert reconstruction of the market is required. However, in this case, the flush-mounted MXA910 was enjoined by this Court on August 5, 2019. R. 550. Thus, the customers of the MXA910 had to find a replacement for their audio conferencing needs. The evidence shows that customers are not choosing ClearOne's BMA when the flush-mounted MXA910 was removed as an option ██

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████). ██████████

██████████████████████████████████████████████████████

█████████████████████████████████

Furthermore, as the BMA was on sale prior to the MXA910, testimony on that period is particularly illuminating as it does not require a "but-for" reconstruction. Will Seifert, an integrator, testified that during the several years the BMA was on the market before the MXA910 was available, he instead would use a "cardioid or shotgun-type of cardioid microphone positioned strategically in the ceiling" when the customer required the table clear from microphones and needed control over what should and should not be heard in the room. SOF, ¶183.

It is ClearOne's burden to show a lack of non-infringing alternative existed in the marketplace to be entitled to lost profits. *Presidio*, 875 F.3d at 1380. With respect to both the '186

and '806 Patents, ClearOne has not submitted any evidence that an integrator (or any purchaser) would reject the numerous options to the BMA Mr. Weinstein identifies in his report.[37]

### 2. ClearOne cannot show the requisite capacity required by *Panduit*

ClearOne attempts to satisfy the capacity requirement in one paragraph in Mr. Bakewell's report, which is supported by a purported telephone call with certain ClearOne representatives. SOF, ¶188. Mr. Bakewell stated:



---

[37] See, e.g., *Slimfold Mfg. Co. v. Kinkead Indus.*, 932 F.2d 1453, 1458 (Fed. Cir. 1991) (affirming denial of lost profits damages where patentee failed to show consumers desired a product containing the patented features over the noninfringing alternative); *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 09-cv-80, 2013 U.S. Dist. LEXIS 70745, *39 (D. Del. May 20, 2013) (excluding expert testimony regarding acceptable non-infringing alternatives for customers where he testified he never specifically spoke to any customers who used the technology in question) (*objections overruled* by 62 F. Supp. 3d 368, 389 (D. Del. 2014)); *Fractus, S.A. v. Samsung*, 09-cv-203, 2011 U.S. Dist. LEXIS 154697, *14, n1 (E.D. Tex. Apr. 29, 2011) (consumer survey data may be persuasive evidence of acceptability of non-infringing alternative).

[38] *Innovention Toys, Inc. v. MGA Entm't, Inc.*, 07-cv-6510, 2011 U.S. Dist. LEXIS 163631 (E.D. La. February 3, 2011) (summary judgment of no lost profits where evidence relied on was hearsay); see also, *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1031 (Fed. Cir. 1996) (projections of lost profits cannot be based on speculative proof or guesswork).

[39] *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1551-52 (Fed. Cir. 1991) (patentee's contention that it "had the capacity to manufacture, market, and sell" the products was unsupported by the record); *Go Med. Indus. Pty, Ltd. v. Inmed Corp.*, 300 F. Supp. 2d 1297, 1317 (N.D. Ga. 2003) (*Panduit* capacity prong not satisfied when assumptions were made on the "guesses of others").

The evidence in this case shows that ███████ had a manufacturing capacity of ███ per year (███████ ███████████). SOF, ¶189. ███████████████████████████████████. 226 at internal exhibit 8.0, p. 149; R. 96, pp. 29–30. ████████████████████



No reasonable jury could conclude, based on the evidence, that ███████████████████████ ████████████████████████████████████████ capture the sales Mr. Bakewell indicates are ClearOne "lost sales." Accordingly, lost profits under *Panduit* is not available to ClearOne as a remedy for any alleged infringement of the '186 and '806 Patents.

---

[40] *See, e.g.*, *Gargoyles, Inc. v. U.S.*, 113 F.3d 1572, 1577 (Fed. Cir. 1997) (affirming judgment of no lost profits where patentee presented no evidence of the capacity or willingness of its suppliers); *Deere & Co. v. Int'l Harvester Co.*, 76-cv-20, 1982 U.S. Dist. LEXIS 10155 (C.D. Ill. Oct. 8, 1982) (denying lost profits award because patentee's manufacturing ability was "at or near capacity") *aff'd in relevant part*, 710 F.2d 1551 (Fed. Cir. 1983).

**B.**     **ClearOne is not Entitled to Lost Profits Under *Mor-Flo***

The analysis under *Mor-Flo* is the same as under *Panduit* except that factor 2 (the requirement of a lack of non-infringing substitutes) is substituted with a market share calculation. *State Indus.,* 883 F.2d at 1578. If the patentee is unable to show the other three factors are satisfied, then lost profits are not available. Further, the patentee must provide reliable market share information from which to extrapolate. *Id.* at 1578–79.

**1.**     **ClearOne cannot satisfy the relevant *Panduit* factors**

As noted above, ClearOne cannot establish the requisite capacity to exploit the increased demand in a "but-for" world as Mr. Bakewell has reconstructed the market. However, the assumptions in a *Mor-Flo* context are even more incredible. Under Mr. Bakewell's "conservative" *Mor-Flo* analysis, he concludes that in 2018, for example, ███████████████████. *See* Ex. 226 at internal exhibit 2.2, p. 127. To recover lost profits for 2018 under Mr. Bakewell's *Mor-Flo* theory, ████████████████████████████████████ ████████████████████████████████████████████ ███████████████████ ClearOne cannot point to any evidence of record to support such a drastic increase in capacity and, thus, lost profits are not an available remedy to ClearOne under a *Mor-Flo* analysis.

**2.**     **ClearOne fails to provide reliable market share data as required for Lost Profits under *Mor-Flo***

As noted above, for purposes of this motion Shure adopts Mr. Waadevig's IAEC market as the appropriate market. Yet, ClearOne has failed to present sound economic proof of its market share in that market. The only evidence of market share presented in this case are Frost & Sullivan reports. SOF, ¶198. ClearOne's market expert shockingly testified that the BMA sales were not reflected in the Frost & Sullivan market figures despite the BMA being on the market for four

years. SOF, ¶199. Because the BMA is not reflected in these figures, ClearOne has presented **no** evidence of market share related to the alleged Practicing Product – the BMA. SOF, ¶200; *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1125 (Fed. Cir. 2003) (it is improper for the lost profit market to exclude the patented product). Consequently, the market share percentage relied upon by ClearOne cannot form the basis for a lost profits award based on market share allocation. *Oiness*, 88 F.3d at 1029-30 (reversing a lost-profits award after concluding that plaintiff's evidence added "vague estimation and gross extrapolation to unsupported presumption").

### C. ClearOne is Not Entitled to Lost Profits for Converge Pro Sales

ClearOne's damages expert, Mr. Bakewell, improperly nearly **doubles** the proposed lost profits damages award by including the alleged lost sales of Converge Pro DSPs. Ex. 226 at internal exhibits 2.0 and 1.1. By law, ClearOne is not entitled to Converge Pro lost sales damages. Crucially, the BMA alone allegedly practices the claims of the '186 and '806 Patents. SOF, ¶¶ 192-193. While Shure's MXA910 and ClearOne's BMA are both beamforming microphone arrays, the digital signal processing onboard significantly differs. The MXA910 is accused of infringing the '186 Patent only when combined with a DSP. SOF, ¶143. In stark contrast, as explained by ClearOne, the BMA has all the signal processing onboard to practice the claims of the '186 Patent. ClearOne, through its expert Mr. Bakewell, attempts to have this Court remedy ClearOne's obvious business decision error – *i.e.*, requiring a proprietary communication protocol between the BMA and Converge Pro – which is totally divorced from the alleged infringement.

Lost profits are not recoverable for sales of the Converge Pro when those sales are not proper convoyed sales, and the BMA alone allegedly practices the '186 and '806 Patents.

### 1. ClearOne is not entitled to Lost Profits based on convoyed sales

Mr. Bakewell's lost profit analysis offered on behalf of ClearOne does not include a discussion of convoyed or collateral sales. SOF, ¶203. Nor would he have had any factual basis

for doing so. Further, no evidence of record allows ClearOne to advance a convoyed sales theory at this stage of litigation, and summary judgment is appropriate on this basis alone. For example, ClearOne's response to Shure's interrogatory seeking an explanation of damages fail to assert a theory of convoyed sales. SOF, ¶204.

Mr. Bakewell does assert that "a customer is required to buy a compatible CONVERGE Pro product, and that ClearOne's BMA is not able to operate with any DSP device other than the CONVERGE Pro platform." Ex. 226 at ¶150. To the extent ClearOne argues his language regarding "operability" relates to an unarticulated theory of convoyed sales, such argument is factually unsupported and legally insufficient. Convoyed sales are appropriate when, *inter alia*, the patented and unpatented articles are combined to form a "functional unit." *Rite-Hite*, 56 F.3d at 1550. Mr. Bakewell neither addresses nor establishes that a combination of a Converge Pro product and a BMA satisfies the "functional unit" test. SOF, ¶205. Although it is undisputed that the BMA and Converge Pro are connected in many conferencing applications, the Converge Pro with the BMA are not a "functional unit."

### a. Any functional relationship between the BMA and Converge Pro is artificial and created for business advantage

"Being sold together merely for 'convenience or business advantage' is not enough" to create a functional unit. *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1375 (Fed. Cir. 2015), *vacated on other grounds sub nom. Medtronic Sofamor Danek USA, Inc. v. NuVasive, Inc.*, 136 S. Ct. 893 (2016). The evidence shows (1) not all BMA products have required a Converge Pro to function as a conferencing apparatus (SOF, ¶¶207-209); (2) ████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████



¶¶207-208. The G-link proprietary signal from the BMA1 is converted into a USB signal by a device called a Converge USB.[41] SOF, ¶209. Beginning in 2014, ClearOne offered a product that allowed the Converge USB to convert the BMA1 G-link signal without a Converge Pro DSP. *Id.*

*. Id.*

. ClearOne makes it BMA products compatible with non-ClearOne products (*i.e.*, offers a converter for its proprietary signal) when it suits their business strategy. SOF, ¶¶211-212. As such, any functional relationship between the BMA and Converge Pro DSP is an artificial construct erected to increase revenue.

### b. Converge Pro DSPs serve a useful purpose independent of the patented product

"If the convoyed sale has a use independent of the patented device, that suggests a non-functional relationship." *Warsaw,* 778 F.3d at 1375. The uncontroverted evidence shows that

---

[41] ClearOne designed its BMA1 with a "G-link" connection to its Converge Pro, and designed its BMA2 to connect to the Converge Pro2 with a "P-link" connection. SOF, ¶194. ClearOne continued the P-link requirement with its BMA-CT product, though each of these BMA products independently allegedly practice the '186 Patent claims. *Id.*

Converge Pro DSPs command a market value, are covered by different patents, and serve a useful purpose independent of the BMA. SOF, ¶¶201, 214-215. Therefore, convoyed sales are not appropriate.[42]

### 2. The BMA Products alone allegedly practice the claims of the '186 and '806 Patent

ClearOne asserts that only the BMA-CT and BMA-CTH practice the '806 Patent. SOF, ¶216. Thus, lost profit damages relating to the Converge Pro with respect to the '806 Patent can only be grounded in a convoyed sales theory, which is shown to be inappropriate above. Regarding the '186 Patent, ClearOne asserts that a BMA alone practices the Asserted Claims. SOF, ¶192. The BMA is the only product marked with the '186 Patent (SOF, ¶217) and the only basis for ClearOne's secondary considerations of non-obviousness. SOF, ¶¶212-213. Further, ClearOne's Head of Engineering, Derek Graham, testified that the output of a ████████████████████ ███████████████ SOF, ¶196. Thus, the Converge Pro does not practice the claim limitations of the '186 Patent. SOF, ¶197.

## XI. <u>Conclusion</u>

For the reasons stated above, this Court should grant Shure's Cross Motions and deny ClearOne's Opening Motions for Summary Judgment.

---

[42] *See Am. Seating Co. v. USSC Group, Inc*., 514 F.3d 1262, 1269 (Fed. Cir. 2008); *Rite-Hite*, 56 F.3d at 1550 (indicating that lost profit damages are properly granted for collateral products that have no useful purpose or market value independent of the patented product); *Bioverativ Inc. v. CSL Behring LLC*, Case No. 17-194-RGA, 2020 U.S. Dist. LEXIS 37272, at *12 (D. Del. March 4, 2020) (declining to entertain a lost profit damages award for non-practicing uses as convoyed sales when the infringing and non-infringing uses where "each [] functionally distinct in its operation.").

Dated: August 12, 2020                    Respectfully Submitted,
By: _/s/ Bradley F. Rademaker_
One of the Attorneys for Plaintiff,
SHURE INCORPORATED

Bradley F. Rademaker
Mike R. Turner
Thomas J. Campbell, Jr.
Tanvi Patel
Charles Shih
Kara C. Smith
Andrew Wood
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Suite 1700
Chicago, Illinois 60602
Telephone: (312) 269-8000

Vladimir I Arezina
VIA LEGAL, LLC
1237 W. Madison
Chicago, IL 60607
Telephone: (312) 574-3050

Email: Shure_ClearOneLit@nge.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2020, the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issued through the Court's Electronic Case Filing System on this date.


By: */s/ Charles Shih*